John P. Schnurer, Bar No. 185725
JSchnurer@perkinscoie.com
Joseph P. Reid, Bar No. 211082
JReid@perkinscoie.com
Michael J. Engle, Bar No. 259476
MEngle@perkinscoie.com
PERKINS COIE LLP
11988 El Camino Real, Suite 350
San Diego, CA  92130-2594
Telephone:  858.720.5700
Facsimile:  858.720.5799

Attorneys for Plaintiff Largan Precision Co., Ltd.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARGAN PRECISION CO., LTD., | Case No. CV-13-2502-WHO |
| Plaintiff, | **PLAINTIFF LARGAN PRECISION CO., LTD.'S OPENING CLAIM CONSTRUCTION BRIEF** |
| v. | |
| GENIUS ELECTRONIC OPTICAL CO., LTD., | Date:   May 30, 2014 |
| | Time:  9:00 a.m. |
| Defendant. | Place:  Courtroom 2, 17th Floor |
| | Hon. William H. Orrick |

09075-0006/LEGAL120269922.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

                                                                                                          **Page**

I.      Introduction ............................................................................................................... 1

II.     Background of the Technology .................................................................................. 1

        A.      Introduction to Imaging Lenses ..................................................................... 1

        B.      The Patents-in-Suit ........................................................................................ 5

III.    Legal Standards for Claim Construction ................................................................... 6

        A.      The Purpose of Claim Construction ............................................................... 6

        B.      Terms Should Be Given Their Plain and Ordinary Meaning ........................ 6

        C.      Not Every Term Requires Construction .......................................................... 6

        D.      The Best Guide Is the Intrinsic Evidence ...................................................... 8

        E.      Extrinsic Evidence Cannot Contradict the Intrinsic Evidence ..................... 9

IV.     Disputed Terms ......................................................................................................... 9

        A.      "Aspheric" ....................................................................................................... 9

        B.      "Maximum Image Height" ........................................................................... 11

        C.      "Convex" and "Concave" Terms .................................................................. 11

        D.      "Radius of Curvature" Terms ....................................................................... 15

        E.      "Refractive Power" / "Positive Refractive Power" / "Negative Refractive
                Power" / "Positive or Negative Refractive Power" ...................................... 17

        F.      "Inflection Point" ......................................................................................... 20

        G.      "Meniscus in Shape" .................................................................................... 20

        H.      "Aperture Stop" and "Stop" ......................................................................... 22

        I.      "On The Optical Axis" and "On-Axis" ........................................................ 22

        J.      "Focal Length" Terms .................................................................................. 23

        K.      "Image Plane" ............................................................................................... 24

V.      Conclusion ............................................................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

CASES

*3M Innovative Properties Co. v. Tredegar Corp.*,
   725 F.3d 1315 (Fed. Cir. 2013)...................................................................................... 6

*ActiveVideo Networks, Inc. v. Verizon Communications, Inc.*,
   694 F.3d 1312 (Fed. Cir. 2012)...................................................................................... 7

*Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*,
   616 F. 3d 1283 (Fed. Cir. 2010).................................................................................. 15

*Apple, Inc. v. Samsung Elecs. Co.*,
   No. 11-cv-1846-LHK, 2012 WL 2993856 (N.D. Cal. July 20, 2012) .................................... 7

*Bd. of Trustees of Leland Stanford Jr. Univ. v. Roche Molecular Sys., Inc.*,
   528 F. Supp. 2d 967 (N.D. Cal. 2007) ..................................................................... 7, 19

*Biotec Biologische Naturver. GmbH v. Biocorp, Inc.*,
   249 F.3d 1341 (Fed. Cir. 2001)...................................................................................... 8

*Broadcast Innovation, L.L.C. v. Charter Commc'ns, Inc.*,
   420 F.3d 1364 (Fed. Cir. 2005).................................................................................... 10

*Broadcom Corp. v. Emulex Corp.*,
   732 F.3d 1325 (Fed. Cir. 2013).................................................................................... 21

*CNET Networks, Inc. v. Etilize, Inc.*,
   547 F. Supp. 2d 1055 (N.D. Cal. 2008) .................................................................. 7, 19

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,
   381 F.3d 1111 (Fed. Cir. 2004)................................................................................. 6, 8

*Interactive Gift Express, Inc. v. Compuserve Inc.*,
   256 F.3d 1323 (Fed. Cir. 2001)...................................................................................... 9

*Jang v. Boston Sci. Corp.*,
   532 F.3d 1330 (Fed. Cir. 2008)................................................................... 10, 11, 16, 20

*Kara Tech. Inc. v. Stamps.com Inc.*,
   582 F.3d 1341 (Fed. Cir. 2009)...................................................................................... 6

*Markman v. Westview Instruments, Inc.*,
   517 U.S. 370 (1996)...................................................................................................... 6

*Mentor H/S, Inc. v. Med. Device Alliance, Inc.*,
   244 F.3d 1365 (Fed. Cir. 2001)...................................................................................... 8

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

*Merck & Co. v. Teva Pharms. USA, Inc.*,
    347 F.3d 1367 (Fed. Cir. 2003) ............................................................................. 14

4

5

*Nat'l Oilwell Varco, L.P. v. Auto-Dril, Inc.*,
    No. 09-85, 2011 WL 3648532 (E.D. Tex. Aug. 16, 2011) .................................... 10

6

*Netflix, Inc. v. Blockbuster, Inc.*,
    477 F. Supp. 2d 1063 (N.D. Cal. 2007) ............................................................ 7, 19

7

8

*NTP, Inc. v. Research In Motion, Ltd.*,
    418 F.3d 1282 (Fed. Cir. 2005) ......................................................................... 15, 20

9

10

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
    521 F.3d 1351 (Fed. Cir. 2008) ................................................................................ 7

11

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) .................................................................. 6, 7, 8, 9

12

13

*Power Integrations, Inc. v. Fairchild Semicon. Int'l, Inc.*,
    711 F.3d 1348 (Fed. Cir. 2013) ........................................................................... 8, 9

14

15

*ProconGPS, Inc. v. Skypatrol, LLC*,
    No. 11-03975-SI, 2012 WL 3276977 (N.D. Cal. Aug. 9, 2012) .................... 7, 11, 19

16

*Raytheon Co. v. Roper Corp.*,
    724 F.2d 951 (Fed. Cir. 1983) ................................................................................. 8

17

18

*Sciele Pharma Inc. v. Lupin Ltd.*,
    No. 09-0037 (RBK/JS), 2011 WL 4351672 (D. Del. Sept. 15, 2011) .................... 10

19

20

*Spireon, Inc. v. CallPass Tech, LLC*,
    No. 12-01903, 2013 WL 706867 (N.D. Cal. Feb. 26, 2013) ............................. 7, 16

21

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*,
    655 F.3d 1364 (Fed. Cir. 2011) .............................................................................. 13

22

23

*SynQor, Inc. v. Artesyn Techs., Inc.*,
    709 F.3d 1365 (Fed. Cir. 2013) .............................................................................. 21

24

25

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
    299 F.3d 1313 (Fed. Cir. 2002) ........................................................................... 6, 8

26

*Union Oil Co. v. Atl. Richfield Co.*,
    208 F.3d 989 (Fed. Cir. 2000) ................................................................................ 24

27

28

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

*Vitronics Corp. v. Conceptronic, Inc.*,

4

    90 F.3d 1576 (Fed. Cir. 1996) ............................................................................................ 14

5

*Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*,

    200 F.3d 795 (Fed. Cir. 1999) ...................................................................................... passim

6

*Warner Chilcott Co., LLC v. Mylan Inc.*,

7

    No. 11-6844 (JAP), 2013 WL 3336872 (D.N.J. July 2, 2013) ................................. 10

8

*Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*,

9

    442 F.3d 1322 (Fed. Cir. 2006) ............................................................................................ 10

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.      INTRODUCTION

The parties' disputes over various terms in U.S. Patent Nos. 7,826,151 ("'151 Patent"); 7,864,454 ("'454 Patent"); 8,233,224 ("'224 Patent"); 8,310,768 ("'768 Patent"); and 8,395,691 ("'691 Patent") (collectively "the Patents-in-Suit") reduce to two basic questions: (1) whether the Court must explicitly define words and phrases whose plain and ordinary meaning would be understood perfectly well by a person of ordinary skill in the art at the time of the invention, and (2) if any such explicit constructions are necessary, whether they should be based on imprecise and litigation-inspired extrinsic evidence or rather on the mathematical precision of the intrinsic evidence.  Fortunately, both of these questions have already been answered by controlling Federal Circuit precedent, which favors ordinary meaning and intrinsic evidence as a way to yield the simplest, most accurate explanations for disputed terms.

Here, because Largan has followed the Federal Circuit's tenets and proposed constructions based on plain and ordinary meaning and the intrinsic record, the Court should adopt Largan's constructions over the result-oriented versions submitted by Defendant. Moreover, because the vast majority of terms proposed by Genius do not actually give rise to any non-infringement or invalidity dispute, the Court need not even reach most of Genius's terms.

## II.     BACKGROUND OF THE TECHNOLOGY

### A.      Introduction to Imaging Lenses

The five Patents-in-Suit all relate to what is known as an "imaging lens," *i.e.*, the small lenses found in the cameras of mobile phones, tablets, webcams, and even automobiles.  Each "imaging lens" may consist of multiple individual lenses, each of which is referred to as a "lens element."  The Patents-in-Suit generally relate to imaging lenses having either four lens elements (the '691 Patent) or five lens elements (the '151, '454, '224, and '768 Patents).[1]  Figure 1A from the '151 Patent, reproduced below, shows a schematic view of a five lens element system:

---

[1] *E.g.*, '151 Patent at 1:40-45, FIG. 1; '454 Patent at Abstract, FIG. 1; '224 Patent at Abstract, FIG. 1; '768 Patent at 1:62-64, FIG. 1A; '691 Patent at Abstract, FIG. 1A.

PLAINTIFF'S OPENING CLAIM
CONSTRUCTION BRIEF
CV-13-2502-WHO



FIG. 1A

While Figure 1A may look complex at first blush, it is important to recognize the concepts and principles of optics remain the same whether one is talking about these kinds of lens elements or the larger lenses most people are familiar with from everyday life, such as a magnifying glass, eyeglasses, or the lenses used in traditional cameras.  If one thinks of the series of lens elements in Figure 1A as individual eyeglasses arranged in a line, Figure 1A may not seem as daunting and the descriptions of what is happening at each lens element may make more sense.

The individual lens elements (labeled 10, 20, 30, 40, and 50 in Figure 1A above) are arranged and numbered such that the first lens element (on the left) is always closest to the object being photographed while the final lens element is closest to the image plane (labeled number 80 in the figure above), where a sensor captures the image.[2]  Frequently, a sheet of flat glass or plastic (called an "infrared cut filter," "IR cut filter," or "IR filter," and labeled number 70 in the figure above) is placed between the last lens element and the image plane (labeled 80) to block infrared light while allowing visible light to pass through it.

---

[2] *E.g.*, '151 Patent at 5:21-59, FIG. 1A.

Each lens element has two surfaces: the surface closest to the object being photographed (called the "object-side surface") and the surface closest to the sensor capturing the image (called the "image-side surface"). By convention, the object side is generally on the left while the image side is on the right. In Figure 1A of the '151 Patent above, for example, the object-side surface of lens element 30 (the middle lens element) is labeled 31, and the image-side surface is labeled 32.

Each surface of a lens element can have its own unique shape. However, as one can see in Figure 1A above, when viewed in cross-section, the top half of each lens element is identical to its bottom half. This is because each lens element is symmetrical around a line extending through the very center of the lens, called the "optical axis." In Figure 1A above, the optical axis is represented by the dotted line drawn from left to right through the center of each lens element.

The shape of a surface may change significantly over the course of the entire surface. When describing the curves in these lenses, those in the industry often use the very same adjectives as those familiar with the lenses used in eyeglasses: curving outward is "convex," while curving inward is "concave." Again using the third lens element 30 from Figure 1A of the '151 Patent above as an example, the object-side surface 31 generally curves inward, *i.e.*, is concave, while the image-side surface 32 generally curves outward, *i.e.*, is convex. In contrast, switching to the fifth lens element 50 from Figure 1A above as an example, the image-side surface 52 is concave at the center of the lens element yet becomes convex when looking above or below the center. These different shapes bend light in different ways. In Figure 1A above, the solid lines going through the imaging lens represent rays of light and how they would be bent by the imaging lens, ultimately being focused on the image plane 80.

As products such as mobile phones have shrunk and their users have required higher performance cameras, the demand for small, high quality imaging lenses has similarly skyrocketed. Today, imaging lenses are only a few millimeters thick: the imaging lens shown in Figure 1A above measures only 7.467 millimeters at the optical axis.[3] Because of their extremely small size, precision in the design and manufacture of an imaging lens is very important. As such, imaging lenses are defined and constructed according to extremely precise mathematical

---

[3] *See* '151 Patent at Table 1 (summing the "thickness" of each lens element).

values.  The Patents-in-Suit provide these mathematical values in tables such as Tables 1 and 2 from the '151 Patent, reproduced below:

**TABLE 1**

*(Embodiment 1)*
f (focal length) = 6.17 mm, Fno = 2.8, HFOV (half of field of view) = 32.9 deg.

| Surface # | | Curvature Radius | Thickness | Material | Index | Abbe # | Focal length |
|---|---|---|---|---|---|---|---|
| 0 | Object | Plano | Infinity | | | | |
| 1 | Aperture Stop | Plano | −0.259 | | | | |
| 2 | Lens 1 | 2.37429(ASP) | 0.644 | Plastic | 1.544 | 55.9 | 4.56 |
| 3 | | 50.00000(ASP) | 0.232 | | | | |
| 4 | Lens 2 | 7.36880(ASP) | 0.432 | Plastic | 1.632 | 23.4 | −6.96 |
| 5 | | 2.69229(ASP) | 0.908 | | | | |
| 6 | Lens 3 | −13.41500(ASP) | 1.341 | Plastic | 1.544 | 55.9 | 12.25 |
| 7 | | −4.61080(ASP) | 0.900 | | | | |
| 8 | Lens 4 | 6.26220(ASP) | 0.550 | Plastic | 1.544 | 55.9 | 12.25 |
| 9 | | 100.00000(ASP) | 0.444 | | | | |
| 10 | Lens 5 | 3.22820(ASP) | 0.550 | Plastic | 1.544 | 55.9 | −5.8 |
| 11 | | 1.49953(ASP) | 1.000 | | | | |
| 12 | IR–filter | Plano | 0.300 | Glass | 1.517 | 64.2 | |
| 13 | | Plano | 0.166 | | | | |
| 14 | Image | Plano | | | | | |

**TABLE 2**

Aspheric Coefficients

| | Surface # | | | | |
|---|---|---|---|---|---|
| | 2 | 3 | 4 | 5 | 6 |
| k = | 3.40090E-02 | −1.00000E+00 | −2.00000E+01 | −4.45409E+00 | −1.00000E+00 |
| A4 = | 2.50978E-03 | −9.81798E-03 | −3.58117E-02 | −1.98788E-03 | −2.41609E-02 |
| A6 = | 2.31356E-03 | 1.23680E-02 | 2.27808E-02 | 1.86376E-02 | 2.78124E-03 |
| A8 = | −1.13159E-03 | −5.75426E-03 | −7.30419E-03 | −5.58513E-03 | −3.13369E-03 |
| A10 = | −1.00178E-03 | 2.00255E-03 | 6.73836E-04 | 1.34068E-03 | 9.15396E-04 |
| A12 = | 6.22089E-06 | | | | −3.87372E-06 |
| A14 = | | | | | −8.79048E-05 |
| A16 = | | | | | 2.24027E-05 |

| | Surface # | | | | |
|---|---|---|---|---|---|
| | 7 | 8 | 9 | 10 | 11 |
| k = | 3.10292E+02 | −1.98506E+00 | −1.00000E+00 | −2.00000E+01 | −4.75840E+00 |
| A4 = | −2.60898E-02 | −1.67843E-03 | 2.94138E-02 | −4.33989E-02 | −2.99692E-02 |
| A6 = | 5.44466E-03 | −1.65151E-03 | −7.08821E-03 | 6.34038E-03 | 4.66959E-03 |
| A8 = | −1.21992E-03 | −1.33350E-04 | 5.71459E-04 | −3.53977E-04 | −5.27592E-04 |
| A10 = | 1.18896E-04 | 7.52355E-07 | −1.52177E-05 | 7.34318E-06 | 2.14947E-05 |
| A12 = | | 1.66254E-06 | −1.86400E-07 | | 8.04115E-07 |
| A14 = | | | | | −5.49145E-08 |

Tables such as these are conventional and commonplace in the lens industry.  For example, Genius's own patents use tables that are nearly identical to those above.[4]

---

[4] *E.g.*, Exh. 1, U.S. Patent No. 8,072,695 at Table 1 (showing radius of curvature, thickness, refractive index, and Abbe number), Table 13 (showing focal lengths), Tables 2-3 (showing aspheric data); Exh. 3, U.S. Patent Publication No. 2013/258,164, at FIGs. 3-4 (same).  Unless otherwise noted, all exhibits are attached to the declaration of Michael J. Engle filed herewith.

09075-0006/LEGAL120269922.1

1   Tables 1 and 2 explain with numbers the exact shape, thickness, and material of each lens

2   element shown in Figure 1A, amongst other information.  As the Court will appreciate from

3   looking at Figure 1A, while the "Material" column in Table 1—which describes whether the lens

4   is made of plastic or glass—remains constant for the entire lens, many of the other variables and

5   measurements can vary depending where on the lens one is referencing.  For example, looking at

6   lens element 50 of Figure 1A, one can see that both the thickness and curvature vary greatly

7   depending whether one is measuring at the top, middle, or bottom of the lens.  For this reason,

8   unless some other particular reference point is expressly mentioned, industry convention is to

9   discuss these variables with respect to their measurement at the optical axis.  Again using Table 1

10  and lens element 50 of Figure 1A as an example, the thickness (*i.e.*, 0.550), focal length (*i.e.*, -

11  5.8), and curvature radius (*i.e.*, 3.22820 for the object side, and 1.49953 for the image side) are all

12  measured at the optical axis.

13  The curvature radius (also called the "radius of curvature") is a numerical value

14  representing the steepness of the curve at a given point, in this case the optical axis.[5]  By

15  convention, the sign of the radius of curvature on the object side usually is opposite that of the

16  image side.  For example, a convex radius of curvature will be positive on the object side yet

17  negative if on the image side.  Similarly, a concave radius of curvature will be negative on the

18  object side yet positive if on the image side.  Put another way, anything that curves towards the

19  object side will be positive, which is why a convex surface on the object side and a concave

20  surface on the image side both have a positive radius of curvature.

21      **B.      The Patents-in-Suit**

22  The Patents-in-Suit claim specific lens properties, such as surface shapes, powers, and

23  mathematical formulae, that allow today's imaging lens designers to achieve the compact size and

24  high performance demanded by consumers.[6]  A summary of the asserted claims and foreign

25  priority dates of each Patent-in-Suit is provided in the table below.

26

27      [5] To be precise, "curvature" measures the steepness, and the "radius of curvature" is the reciprocal
of curvature (*i.e.*, one divided by the curvature).

28      [6] *E.g.*, '151 Patent at 1:40-45, Claims 1-5.

PLAINTIFF'S OPENING CLAIM
CONSTRUCTION BRIEF
CV-13-2502-WHO

09075-0006/LEGAL120269922.1

| Patent | Asserted Claims | Priority Date |
|--------|-----------------|---------------|
| 7,826,151 | 2, 3, 4, 5 | Dec. 1, 2008 |
| 7,864,454 | 1, 9, 11, 13, 16, 17, 18 | Aug. 11, 2009 |
| 8,233,224 | 1, 4, 6, 8, 9, 10, 11, 12, 13, 14 | July 14, 2009 |
| 8,310,768 | 1, 3, 4, 5, 8, 9, 10, 11 | Sept. 16, 2010 |
| 8,395,691 | 21, 23, 25 | Aug. 20, 2010 |

## III.   LEGAL STANDARDS FOR CLAIM CONSTRUCTION

### A.   The Purpose of Claim Construction

The claims of a patent define the scope of the invention. *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002). They provide the "metes and bounds" of the patentee's right to exclude. *Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1347 (Fed. Cir. 2009). The purpose of claim construction is to resolve the meaning and technical scope of claim terms. *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004). Accordingly, claim construction "must begin and remain centered on the claim language itself." *Id.* at 1116. Claim construction is a matter of law. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996).

### B.   Terms Should Be Given Their Plain and Ordinary Meaning

Claim terms are normally given their "ordinary and customary meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005). Generally, "the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id* at 1313. "It is axiomatic that we will not narrow a claim term beyond its plain and ordinary meaning unless there is support for the limitation in the words of the claim, the specification, or the prosecution history." *3M Innovative Properties Co. v. Tredegar Corp.*, 725 F.3d 1315, 1333 (Fed. Cir. 2013).

### C.   Not Every Term Requires Construction

Not every claim term requires an explicit construction, however. If commonly understood words are used in the claims, then the "ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314. Thus, "district courts are not (and should not be)

required to construe every limitation present in a patent's asserted claims." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).

Consistent with this precedent, the Northern District of California has often exercised such restraint, refusing to explicitly construe words and phrases whose plain and ordinary meaning are obvious from the context of the claims. *E.g.*, *Bd. of Trustees of Leland Stanford Jr. Univ. v. Roche Molecular Sys., Inc.*, 528 F. Supp. 2d 967, 976 (N.D. Cal. 2007) ("The terms 'therapeutically effective' or 'therapeutically ineffective' are commonplace—a juror can easily use these terms in her infringement fact-finding without further direction from the court. These terms do not need to be construed because they are neither unfamiliar to the jury, confusing to the jury, nor affected by the specification or prosecution history."); *CNET Networks, Inc. v. Etilize, Inc.*, 547 F. Supp. 2d 1055, 1065-66 (N.D. Cal. 2008) (same for "electronically"); *Netflix, Inc. v. Blockbuster, Inc.*, 477 F. Supp. 2d 1063, 1068 (N.D. Cal. 2007) ("As [the terms 'item rental queue' and 'movie rental queue'] are commonly-understood English words, they need no clarification."); *ProconGPS, Inc. v. Skypatrol, LLC*, No. 11-03975-SI, 2012 WL 3276977, at *4-5 (N.D. Cal. Aug. 9, 2012) (finding "the term 'loan' does not require construction" because it was "'as common a word as one could possibly encounter in a patent case'"); *Spireon, Inc. v. CallPass Tech, LLC*, No. 12-01903, 2013 WL 706867, at *8 (N.D. Cal. Feb. 26, 2013) ("Because CallPass does not offer sufficient evidence to require the construction of this term [*i.e.*, 'signal representative of the loan status being in a default condition'] and the proposed definition does not add clarity to its plain meaning, the Court again declines to construe the term unnecessarily."); *Apple, Inc. v. Samsung Elecs. Co.*, No. 11-cv-1846-LHK, 2012 WL 2993856, at *6 (N.D. Cal. July 20, 2012) (refusing to construe the term "structured electronic document").

The Federal Circuit similarly has a long history of affirming district courts finding that no construction was necessary for certain terms, even when one party vigorously demanded a construction. *E.g.*, *ActiveVideo Networks, Inc. v. Verizon Communications, Inc.*, 694 F.3d 1312, 1325-26 (Fed. Cir. 2012) ("The district court did not err in concluding that these terms [*i.e.*, "superimposing the first indication over the display of the first anchor channel" and "including with the first indication a second indication"] have plain meanings that do not require additional

1   construction.  ActiveVideo's proposed construction erroneously reads limitations into the claims
2   and the district court properly rejected that construction."); *Biotec Biologische Naturver. GmbH v.*
3   *Biocorp, Inc.*, 249 F.3d 1341, 1349 (Fed. Cir. 2001) ("the meaning of 'melting' does not appear to
4   have required 'construction,' or to depart from its ordinary meaning"); *Mentor H/S, Inc. v. Med.*
5   *Device Alliance, Inc.*, 244 F.3d 1365, 1380 (Fed. Cir. 2001) (affirming the district court "refusing
6   to construe the claim terms 'irrigating' and 'frictional heat'").

### D.      The Best Guide Is the Intrinsic Evidence

8          To determine the proper meaning of a disputed term, the best guide is a patent's intrinsic
9   evidence, which consists of the patent's specification (including the claims) and prosecution
10  history.  *Teleflex*, 299 F.3d at 1325.  Construction begins with the language of the claim, and the
11  court should "presume that the terms in the claim mean what they say."  *Power Integrations, Inc.*
12  *v. Fairchild Semicon. Int'l, Inc.*, 711 F.3d 1348, 1360 (Fed. Cir. 2013) (citing *Phillips*, 415 F.3d
13  at 1312 ("the claims are of primary importance, in the effort to ascertain precisely what it is that is
14  patented")).  In addition, "the context in which a term is used in the asserted claim can be highly
15  instructive."  *Phillips*, 415 F.3d at 1314.  For example, "[d]ifferences among claims can…be a
16  useful guide in understanding the meaning of particular claim terms."  *Id.*

17         In addition to the claims, the specification's written description is an important
18  consideration during the claim construction process.  "[T]he specification 'is always highly
19  relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to
20  the meaning of a disputed term.'"  *Phillips*, 415 F.3d at 1315 (quoting *Vitronics Corp. v.*
21  *Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).  Care must be taken, however, to avoid
22  unnecessarily reading limitations from the specification into the claims. *Teleflex*, 299 F.3d at
23  1326; *Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 957 (Fed. Cir. 1983) ("That claims are
24  interpreted in light of the specification does not mean that everything expressed in the
25  specification must be read into all the claims.").  "[P]articular embodiments appearing in the
26  written description will not be used to limit claim language that has broader effect."  *Innova/Pure*
27  *Water*, 381 F.3d at 1117; *Phillips*, 415 F.3d at 1323 ("although the specification often describes
28  very specific embodiments of the invention, we have repeatedly warned against confining the

claims to those embodiments").

The prosecution history is also part of the intrinsic evidence. *Phillips*, 415 F.3d at 1317. It "consists of the complete record of the proceedings before the PTO and includes the prior art cited during the examination of the patent." *Id.*

### E.   Extrinsic Evidence Cannot Contradict the Intrinsic Evidence

If the intrinsic record is ambiguous, the court may rely on extrinsic evidence—*i.e.*, everything external to the patent and prosecution history, such as expert and inventor testimony, dictionaries, and learned treatises—to aid with understanding the meaning of claim terms. *Power Integrations*, 711 F.3d at 1360.  Extrinsic evidence, however, is generally less useful or reliable than intrinsic evidence. *Phillips*, 415 F.3d at 1317.  Most importantly, extrinsic evidence "may never be used" to vary or contradict the intrinsic evidence. *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1332 (Fed. Cir. 2001).

## IV.   DISPUTED TERMS

### A.   "Aspheric"

| Term | Asserted Claims | Largan's Construction | Genius's Construction |
|------|-----------------|-----------------------|-----------------------|
| "aspheric" | '454 Patent: 1, 15<br>'768 Patent: 1, 2<br>'691 Patent: 21 | Plain and ordinary meaning | "not portions of a sphere or cylinder" |

The dispute over how to construe "aspheric" typifies the disputes the parties have with respect to terms in the Patents-in-Suit.  "Aspheric" does not need a construction and should be given its plain and ordinary meaning.  A person of ordinary skill in the art at the time of the invention would certainly have understood what the word "aspheric" means, and most lay jurors will have no trouble understanding it either.  Accordingly, no express construction is instructive or necessary.

During the claim construction exchanges mandated by the Local Rules, Largan repeatedly asked Genius to drop this and other equally obvious terms, both to save the Court's time and resources as well as to follow the Federal Circuit's tenets by overcomplicating the jury's work unnecessarily. *E.g.*, Exh. 4, Email fr. Engle to Genius (Jan. 14, 2014).  Genius would not relent on "aspheric," yet Largan cannot understand why.  None of Genius's non-infringement arguments

PLAINTIFF'S OPENING CLAIM
CONSTRUCTION BRIEF
CV-13-2502-WHO

appear to depend upon this term.  *See* Exh. 5, Genius 1st Supp. Resp. to Interrogatory No. 3, at 12-14 (Jan. 2, 2014).  Largan also is not currently aware of any validity or enforceability dispute over this term.  Although the lack of an actual controversy also weighs against construction, *e.g.*, *Vivid Techs.*, 200 F.3d at 803 ("only those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy"),[7] ultimately, Genius never articulated to Largan why it was so insistent on construing "aspheric."[8]

The problem with Genius's proposed construction of "aspheric"—indeed, the problem plaguing nearly all of Genius's constructions—is that, by attempting to apply words to something that is inherently understandable, Genius's proposal introduces more ambiguity than it resolves.  For example, Largan is unclear why Genius introduces a "cylinder" into a term about "spheres."

In case there were any lingering doubt regarding the clarity of "aspheric," Genius itself uses the identical term "aspheric" in its own patents.  *E.g.*, Exh. 1, U.S. Patent No. 8,072,695 at 4:24-41.  As such, Genius can hardly maintain that "aspheric" is not understandable to one of ordinary skill or requires an express construction.  Accordingly, the Court should follow precedent and merely give this term its plain and ordinary meaning.

**B.    "Maximum Image Height"**

| Term | Asserted Claims | Largan's Construction | Genius's Construction |
|---|---|---|---|
| "maximum image height" | '151 patent: 4 | Plain and ordinary meaning | "maximum height of the image projected on |

---

[7] *See also Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1326 (Fed. Cir. 2006) ("This court reviews claim construction only as necessary to reach that final judgment on an infringement cause of action."); *Broadcast Innovation, L.L.C. v. Charter Commc'ns, Inc.*, 420 F.3d 1364, 1368 (Fed. Cir. 2005) (refusing to consider claim construction arguments on appeal since claim construction was not necessary to resolve the invalidity issue before the court); *Jang v. Boston Sci. Corp.*, 532 F.3d 1330, 1336 (Fed. Cir. 2008) ("The Supreme Court has explicitly held that Article III does not permit the courts to resolve issues when it is not clear that the resolution of the question will resolve a concrete controversy between interested parties.").

[8] *See also Nat'l Oilwell Varco, L.P. v. Auto-Dril, Inc.*, No. 09-85, 2011 WL 3648532, at *6 (E.D. Tex. Aug. 16, 2011) ("While it is a district court's duty to construe the claims, part of this duty is to determine the extent to which construction is even necessary."); *Sciele Pharma Inc. v. Lupin Ltd.*, No. 09-0037 (RBK/JS), 2011 WL 4351672, at *10 (D. Del. Sept. 15, 2011) (refusing to construe claim terms because there was no "live controversy" and "Plaintiffs point out that the terms are either 'immaterial to determining infringement' or contained in 'unasserted claims of the patents-in-suit'"); *Warner Chilcott Co., LLC v. Mylan Inc.*, No. 11-6844 (JAP), 2013 WL 3336872, at *3 (D.N.J. July 2, 2013) ("A court is not required to construe a claim term where there is not an actual dispute with respect to that term.  A threshold question to be addressed as part of a court's duty to undertake claim construction is whether and to what extent construction is even necessary.") (citations omitted).

| Term | Asserted Claims | Largan's Construction | Genius's Construction |
|------|----------------|----------------------|----------------------|
| | | | the electronic imaging sensor" |

As with "aspheric," Largan is confused why Genius believes this term needs any express construction. The words "maximum image height" are plain English, and clearly understandable to one of ordinary skill in the art. None of Genius's non-infringement arguments depend upon this term, *see* Exh. 5, Genius 1st Supp. Resp. to Interrogatory No. 3, at 12-14 (Jan. 2, 2014), and Largan is unaware of any validity or enforceability disputes that concern this term. Thus, there is no need (and quite possibly no Constitutional authority) to construe it. *E.g.*, *Vivid Techs.*, 200 F.3d at 803 ("only those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy"); *Jang*, 532 F.3d at 1336 ("The Supreme Court has explicitly held that Article III does not permit the courts to resolve issues when it is not clear that the resolution of the question will resolve a concrete controversy between interested parties.").

Moreover, Genius's proposal once again seeks to introduce limitations into the term that are not inherently present in its plain and ordinary meaning. Here, the claim as written contains no limitation requiring that an image actually be "projected," and so inserting that would be improper. "The Federal Circuit has long admonished courts not to make constructions that 'contribute nothing but meaningless verbiage to the definition of the claimed invention.'" *ProconGPS*, 2012 WL 3276977, at *7 (quotation omitted). A person of ordinary skill in the art gains nothing from rearranging the words of "maximum image height" to "maximum height of the image." As such, Genius's proposal should be rejected, and the Court should adopt the plain and ordinary meaning of "maximum image height."

### C.   "Convex" and "Concave" Terms

| Term | Asserted Claims | Largan's Construction | Genius's Construction |
|------|----------------|----------------------|----------------------|
| "convex object-side surface" | '151 Patent: 1<br>'454 Patent: 1<br>'224 Patent: 1, 3<br>'768 Patent: 1<br>'691 Patent: 21 | Plain and ordinary meaning | "object-side surface that is curved or rounded outward toward the object to be imaged like the exterior of a sphere or circle" |
| "wherein an object-side surface | '151 Patent: 3 | Plain and ordinary meaning | *See above* |

| Term | Asserted Claims | Largan's Construction | Genius's Construction |
|---|---|---|---|
| . . . is convex" | | | |
| "concave object-side surface" | '151 Patent: 1<br>'454 Patent: 1<br>'224 Patent: 3<br>'768 Patent: 2<br>'691 Patent: 22 | Plain and ordinary meaning | "concave [object-side / image-side] surface": "[object-side / image-side] surface that is hollowed or rounded inward like the inside of a bowl" |
| "convex image-side surface" | '151 Patent: 1<br>'224 Patent: 3<br>'768 Patent: 1<br>'691 Patent: 22 | Plain and ordinary meaning | "image-side surface that is curved or rounded outward toward the image plane like the exterior of a sphere or circle" |
| "concave image-side surface" | '454 Patent: 9<br>'224 Patent: 1, 2<br>'768 Patent: 1, 7<br>'691 Patent: 21, 22 | Plain and ordinary meaning | "concave [object-side / image-side] surface": "[object-side / image-side] surface that is hollowed or rounded inward like the inside of a bowl" |
| "wherein an image-side surface . . . is concave" | None | No construction necessary | *See above* |

As an initial matter, in its Invalidity Contentions, Genius suggested it would be arguing that the phrases "lens element having a convex surface" and "lens element having a concave surface" were indefinite—and claims containing them were therefore invalid—because "the specifications do not indicate whether the entire surface should be considered or only a portion of the surface to determine the convex or concave nature of the lens. If only a portion of the surface, the specifications are silent as to what portion is to be considered." Exh. 6, Genius Invalidity Contentions at 12 (Dec. 9, 2013).

Given that Largan is filing its claim construction brief first, Largan is not certain whether Genius actually plans to maintain this indefiniteness argument or not, especially given that Genius did not propose these larger phrases for construction. However, the Federal Circuit "only finds claims 'not amenable to construction' or 'insolubly ambiguous' to be indefinite." *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co*., 655 F.3d 1364, 1373 (Fed. Cir. 2011). Indeed, "a claim term may be definite even when discerning the meaning is a formidable task and the

conclusion may be one over which reasonable persons will disagree." *Id.* (quotation omitted). Here, fortunately, neither of these terms is "insolubly ambiguous," as Genius seems to have implicitly conceded by seeking to construe all of the other "concave" and "convex" terms above.

Genius's apparent reversal on this issue may be due to many things. First, Genius may finally be acknowledging that terms like "concave" and "convex" are commonplace English words with an established meaning understood not just by those of ordinary skill in the art, but even by lay jurors. "Concave" and "convex" lenses are discussed in high school level physics classes and are likely understood anyone who wears eyeglasses or has used a traditional camera.

Alternatively, Genius's counsel may have realized its indefiniteness argument is untenable. After all, given the industry conventions Largan explained above regarding the measurement of variables taking place at the optical axis, Genius's own patents present and claim radius of curvature data in a fashion similar to Largan's Patents-in-Suit. *E.g.*, Exh. 1, U.S. Patent No. 8,072,695, at Table 1, Claim 1. If Largan's patents are indefinite for claiming their lenses that way, so are Genius's.

Finally, another possible reason for the apparent inconsistency between Genius's Invalidity Contentions and its claim construction positions is that Genius may not have reviewed the specifications of the Patents-in-Suit. The specifications expressly and unambiguously state, "In the present optical imaging lens system, if a lens element has a convex surface, it means ***the portion of the surface in proximity to the optical axis*** is convex; if a lens element has a concave surface, it means ***the portion of the surface in proximity to the optical axis*** is concave."[9] Thus, the specifications expressly answer the very question Genius said was unknown.

Irrespective of the reason, assuming Genius is abandoning its indefiniteness argument in light of this record, Largan will focus on the flaws in Genius's proposed constructions for the "concave" and "convex" terms. One has already been discussed above, namely that, by ignoring the optical axis as the place where the radius of curvature is measured, Genius's proposal directly contradicts the express teachings of the specifications of the patents themselves, which in turn

---

[9] '768 Patent at 6:63-67 (emphasis added); '454 Patent at 6:47-51; '224 Patent at 6:38-42; '691 Patent at 10:1-5.

PLAINTIFF'S OPENING CLAIM
CONSTRUCTION BRIEF
CV-13-2502-WHO

1   embody well-known industry custom.  By definition, then, Genius's proposals ignore the "best

2   guide" to the meaning of the terms and contort the claim construction inquiry away from what the

3   terms would have meant to one of ordinary skill in the art.[10]  *E.g.*, *Vitronics*, 90 F.3d at 1582

4   ("Thus, the specification is always highly relevant to the claim construction analysis.  Usually, it

5   is dispositive; it is the single best guide to the meaning of a disputed term."); *Merck & Co. v.*

6   *Teva Pharms. USA, Inc.*, 347 F.3d 1367, 1370 (Fed. Cir. 2003) ("In construing patent claims, the

7   court must apply the same understanding as that of persons knowledgeable in the field of the

8   invention.  Patents are written not for laymen, but for and by persons experienced in the field of

9   the invention.") (quotation omitted).

10        Making matters worse, Genius's theory

11  reads out the preferred embodiments by further

12  contradicting the claims and specifications of the

13  Patents-in-Suit.  Using the '224 Patent as an

14  example, *all* the embodiments are shown as

15  having a fifth lens element with an image side

16  surface that is concave at the optical axis and

17  convex in other areas.  *E.g.*, '224 Patent at FIGs.

18  1, 3, 5.  Despite the surface having other parts

19  that are convex, the fifth lens element is

20  nevertheless described as "a plastic fifth lens



21  element 140 with…a concave image-side surface 142."  *Id.* at 6:66-7:4.  Thus, just as the

22  specification said, the only portion of the surface that matters for determining whether "a lens

23  element has a concave surface" is the optical axis.  *Id.* at 6:38-42.

24

25

26

27        [10] Tellingly, Genius' own patents claim lenses using nearly identical language, such as "said
     object-side surface of said first lens element is a convex surface" and "said imaging-side surface of said
     second lens element is a concave surface."  Exh. 1, U.S. Patent No. 8,072,695, at Claim 1.  Accordingly,
28   Genius' claim that a person having ordinary skill would not understand these terms rings hollow.

1  This is further confirmed by the mathematical values for the embodiments, such as Table 1 on the right which shows that the radius of curvature of the image side of the fifth lens element at the optical axis is positive (1.73617), meaning that it is a concave surface.  Given that a "claim construction that excludes the preferred embodiment is rarely, if ever, correct and would require highly persuasive evidentiary support," Genius's proposed constructions should be rejected.  *Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*, 616 F. 3d 1283, 1290 (Fed. Cir. 2010).

| TABLE 1 | | | | | | | |
|---|---|---|---|---|---|---|---|
| (Embodiment 1) | | | | | | | |
| f = 5.44 mm, Fno = 2.9, HFOV = 33.0 deg. | | | | | | | |
| Surface # | | Curvature Radius | Thickness | Material | Index | Abbe # | Focal length |
| 0 | Object | Plano | Infinity | | | | |
| 1 | Ape. Stop | Plano | -0.295 | | | | |
| 2 | Lens 1 | 1.54469 (ASP) | 0.544 | Plastic | 1.544 | 55.9 | 3.85 |
| 3 | | 5.13230 (ASP) | 0.070 | | | | |
| 4 | Lens 2 | 285.35120 (ASP) | 0.300 | Plastic | 1.632 | 23.4 | -8.18 |
| 5 | | 5.07630 (ASP) | 0.408 | | | | |
| 6 | Lens 3 | 2.37564 (ASP) | 0.277 | Plastic | 1.544 | 55.9 | -97.98 |
| 7 | | 2.18085 (ASP) | 0.861 | | | | |
| 8 | Lens4 | -1.60878 (ASP) | 0.492 | Plastic | 1.544 | 55.9 | 7.29 |
| 9 | | -1.26807 (ASP) | 0.100 | | | | |
| 10 | Lens5 | 3.00470 (ASP) | 0.644 | Plastic | 1.544 | 55.9 | -9.2 |
| 11 | | 1.73617 (ASP) | 1.000 | | | | |
| 12 | IR-filter | Plano | 0.300 | Glass | 1.517 | 64.2 | - |
| 13 | | Plano | 0.975 | | | | |
| 14 | Image | Plano | | | | | |

Finally, Genius takes the unique and novel tack of proposing a term for construction that does not appear in any of the asserted claims: "wherein an image-side surface…is concave." Obviously, since no claim involving that term is at issue, there is no reason for the Court to construe it.  *See NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1311 (Fed. Cir. 2005) ("Terms not used in claims in controversy on appeal need not be construed."); *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999).

**D.     The "Radius of Curvature" Terms**

| Term | Asserted Claims | Largan's Construction | Genius's Construction |
|---|---|---|---|
| "curvature radius of the … surface of the … lens element" | '454 Patent: 13 | Plain and ordinary meaning | "radius of the osculating circle at the point where the . . . surface of the . . . lens element intersects the optical axis" |
| "radius of curvature of [a/the] … surface of the … lens element" | '224 Patent: 11, 12 '768 Patent: 10 | *See above* | *See above* |

The "curvature" is simply a measure of how curved, *i.e.*, how "concave" or how "convex"

a lens is.  The "radius of curvature" is simply the reciprocal of curvature (*i.e.*, one divided by curvature).  Whereas Genius originally contended phrases containing the simple words "concave" and "convex" were indefinite (before apparently reversing itself as discussed above), Genius contends "radius of curvature" must be construed as a complex, nineteen word phrase involving an "osculating circle."  To Largan, this is the epitome of needless verbiage that is not required and does not add clarity.  *E.g.*, *Spireon*, 2013 WL 706867, at *8.

Largan generally agrees that "radius of curvature" and "curvature radius" mean the same thing, and that as used in the asserted claims, both apply at the optical axis.  However, Largan does not understand why Genius believes these terms require any express construction.  They are both obvious terms to one of ordinary skill in the art.[11]

Yet, despite this clarity, Genius's proposal here introduces more ambiguity than it resolves and would necessitate "construing the construction" to explain terms like "radius of the osculating circle."  Claim construction is meant to assist the jury, not make their job harder.  The fact that Genius itself uses "radius of curvature" in its own patents demonstrates a person of ordinary skill needs no construction for these terms.  *E.g.*, Exh. 1, U.S. Patent No. 8,072,695, at Table 1.

Moreover, none of Genius's non-infringement arguments depend upon these terms, *see* Exh. 5, Genius 1st Supp. Resp. to Interrogatory No. 3, at 12-14 (Jan. 2, 2014), and Largan is unaware of any validity or enforceability dispute that concern them.  Thus, there is no need (and quite possibly no Constitutional authority) to construe these terms.  *E.g.*, *Vivid Techs.*, 200 F.3d at 803 ("only those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy"); *Jang*, 532 F.3d at 1336 ("The Supreme Court has explicitly held that Article III does not permit the courts to resolve issues when it is not clear that the resolution of

---

[11] Although extrinsic evidence is considered less reliable than the intrinsic record of the specification and file history, and extrinsic evidence may only be used when the intrinsic record is ambiguous, Genius has produced and indicated it will rely upon excerpts from several textbooks and dictionaries as support for its constructions.  Largan disagrees with this practice, contending that nothing of the sort is necessary here.  But, as a general matter, Largan notes that many of the terms Genius is looking to construe here—such as "radius of curvature"—are referenced in the early portions of those books, under topics like "General Principles," "First Order Optics," and "Basic Optics."  *E.g.*, Exh. 7, *Modern Optical Engineering*, at GSEO00013462, GSEO00013475; Exh. 8, *Optical System Design*, at GSEO00013742; Exh. 9, *The Art and Science of Optical Design*, at GSEO00014038.

09075-0006/LEGAL120269922.1

the question will resolve a concrete controversy between interested parties.").

**E.    "Refractive Power"**
**"Positive Refractive Power"**
**"Negative Refractive Power"**
**"Positive or Negative Refractive Power"**

| Term | Asserted Claims | Largan's Construction | Genius's Construction |
|------|-----------------|-----------------------|-----------------------|
| "refractive power" | '151Patent: 1, 5<br>'454 Patent: 1, 8, 16<br>'224 Patent: 1, 4, 9<br>'768 Patent: 1<br>'691 Patent: 21, 23 | Plain and ordinary meaning | "the attribute of converging or diverging light" |
| "positive refractive power" | '151 Patent: 1<br>'454 Patent: 1<br>'224 Patent: 1, 4<br>'768 Patent: 1<br>'691 Patent: 21, 23 | Plain and ordinary meaning | "refractive power that bends the ray toward the optical axis, i.e. converges light" |
| "negative refractive power" | '151 Patent: 1, 5<br>'454 Patent: 1, 8<br>'224 Patent: 1<br>'768 Patent: 1<br>'691 Patent: 21, 23 | Plain and ordinary meaning | "refractive power that bends the ray away from the optical axis, i.e. diverges light" |
| "positive or negative refractive power" | None | No asserted claim contains this term | *See above* |

Genius's tack with respect to "refractive power" is much the same as it was for "convex" and "concave": construing the overarching term "refractive power," while contending larger phrases using that term are simultaneously indefinite yet amenable to self-serving constructions. And once again, Genius even nominated a term for construction that does not exist within any asserted claim. Accordingly, for all the same reasons, Genius's approach should be rejected.

Like the radius of curvature, refractive power is a simple mathematical value regarding a lens that describes which way, and to what degree, light is bent as it passes through the lens. The refractive power can be positive, zero, or negative.[12] Although this is an extremely basic term covered in high school physics, Genius contends it must be expressly defined here for one of ordinary skill in the art, and even then using imprecise terms. Such an express construction is unnecessary, and will only serve to complicate matters rather than simplify them, as one of

---

[12] For example, unlike the four to five lens elements that have positive or negative refractive power, the IR cut filter has zero refractive power and hence has no influence on the focal length of the system. *See, e.g.*, '151 Patent at 5:56-58.

PLAINTIFF'S OPENING CLAIM
CONSTRUCTION BRIEF
CV-13-2502-WHO

ordinary skill would understand that "refractive power" is a precise mathematical property of a lens, not some vague "attribute."

To the extent there could be any dispute over the "refractive power" terms, it should concern *where* on the surface the refractive power is measured.   But, just as with "convex" and "concave," all evidence demonstrates the measurement is conducted at the optical axis.  To begin, the specifications are once again expressly clear on this point.



Using Figure 1 of the '691 Patent as an example (reproduced above), the object-side surface 141 of the fourth lens element 140 is relatively flat, but the image-side surface 142 changes from concave at the optical axis to convex further away.  Despite the refractive power varying from negative at the optical axis to positive elsewhere on this lens, the system is expressly described as having "a plastic fourth lens element 140 *with negative refractive power*."  '691 Patent at 10:25-26 (emphasis added).  Accordingly, just as with "convex" and "concave," as these terms are used in the claims, only the refractive power at the optical axis matters.

This intrinsic evidence alone should be dispositive, yet Genius's own extrinsic evidence further corroborates Largan's interpretation.  For example, the refractive power (or optical power) of a simple lens element equals one divided by the focal length *f* of the lens element.  *E.g.*, Exh. 8, *Optical System Design*, at GSEO00013742.  Because Genius itself agrees that "focal length" is measured "along the optical axis," D.I. 35-1 at 13, the refractive power must also be measured

1   along the optical axis.[13]

2       While Genius admits the terms "positive refractive power" and "negative refractive

3   power" by themselves are amenable to construction, it claimed in its Invalidity Contentions that a

4   "lens element having [positive / negative] refractive power" was indefinite.  Exh. 6, Genius Inv.

5   Contentions, at 12 (Dec. 9, 2013).  As with the "concave" and "convex" terms, however, Genius

6   appears to have abandoned that position in its claim construction disclosures by not proposing

7   those larger terms for claim construction.  *Compare id.*, *with* D.I. 35-1 at 7, 1.  That should not

8   come as a surprise: there is no ambiguity in "positive" and "negative," a layperson knows what

9   those words mean, and nothing in the prosecution history or specification alters their meaning.

10  *Bd. of Trustees*, 528 F. Supp. 2d at 976 ("These terms do not need to be construed because they

11  are neither unfamiliar to the jury, confusing to the jury, nor affected by the specification or

12  prosecution history."); *CNET*, 547 F. Supp. 2d at 1065-66 (same); *Netflix*, 477 F. Supp. 2d at

13  1068 ("As these are commonly-understood English words, they need no clarification.");

14  *ProconGPS*, 2012 WL 3276977, at *4-5 (finding "the term 'loan' does not require construction"

15  because it was "'as common a word as one could possibly encounter in a patent case'").

16      Genius's feigned ignorance of the definiteness of the "refractive power" terms and how a

17  person of ordinary skill in the art would understand them is further undercut by the fact that

18  Genius's own patents use the *identical* terms.  Exh. 3, U.S. Patent Pub. No. 2013/258,164, at

19  Claim 1 ("a first lens element with positive refractive power" and "a second lens element with

20  negative refractive power"); Exh. 2, U.S. Patent No. 7,586,694, at Claim 1 ("a first lens with

21  positive refractive power" and "said second lens…having positive refractive power"); *see also*

22  Exh. 1, U.S. Patent No. 8,072,695, at Claim 1 ("said first lens element has a positive focusing

23  power" and "said second lens element has a negative focusing power").

---

24

25  [13] The inverse relationship of refractive power and focal length is further confirmed by the
specifications of the patents-in-suit, in which all the lens elements having a "positive refractive power"
26  have a positive focal length at the optical axis while all the lens elements having a "negative refractive
power" have a negative focal length at the optical axis.  For example, using Figure 1A and Table 1 of the
27  '691 Patent as an example, the focal length of the four lens elements at the optical axis are positive,
negative, positive, and negative (1.84, -3.51, 0.71, -0.77).  This means the refractive power of the four lens
28  elements necessarily must be positive, negative, positive, and negative, which is exactly what the
specification says.  '691 Patent at 10:9-30.

PLAINTIFF'S OPENING CLAIM
CONSTRUCTION BRIEF
CV-13-2502-WHO

Genius's assertion that the phrase "positive or negative" needs construction is particularly odd because this term does not appear in any asserted claim.  Thus, this term is not in controversy and need not be construed.  *See NTP*, 418 F.3d at 1311 ("Terms not used in claims in controversy on appeal need not be construed."); *Vivid Techs.*, 200 F.3d at 803 ("only those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy").  To the extent the Court even considers this term, even a layperson can understand that "positive or negative" simply means not zero and therefore this term needs no construction.

### F.      "Inflection Point"

| Term | Asserted Claims | Largan's Construction | Genius's Construction |
|---|---|---|---|
| "inflection point" | '454 Patent: 1<br>'224 Patent: 1<br>'768 Patent: 1, 6<br>'691 Patent: 21 | Plain and ordinary meaning | "point at which the concavity of the surface changes from concave to convex or vice versa" |

As with many of Genius's other terms, Largan is unclear why Genius believes this term needs any express construction.  The term is easily understood to one of ordinary skill in the art.  Moreover, as with many of the other terms, none of Genius's non-infringement arguments depend upon this term,  *see* Exh. 5, Genius 1st Supp. Resp. to Interrogatory No. 3, at 12-14 (Jan. 2, 2014), and Largan is unaware of any validity or enforceability dispute concerning it.  Accordingly, there is no need (and quite possibly no Constitutional authority) to construe "inflection point."  *E.g.*, *Vivid Techs.*, 200 F.3d at 803 ("only those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy"); *Jang*, 532 F.3d at 1336 ("The Supreme Court has explicitly held that Article III does not permit the courts to resolve issues when it is not clear that the resolution of the question will resolve a concrete controversy between interested parties.").

### G.      "Meniscus in Shape"

| Term | Asserted Claims | Largan's Construction | Genius's Construction |
|---|---|---|---|
| "meniscus in shape" | '224 Patent: 11 | Plain and ordinary meaning | "convex on one surface and concave on the opposite surface and has no inflection points on either surface" |

PLAINTIFF'S OPENING CLAIM
CONSTRUCTION BRIEF
CV-13-2502-WHO

1      Genius's litigation-inspired construction adds extraneous limitations that improperly read

2 out *all* the embodiments disclosed in the Patents-in-Suit and violate the express language of the

3 specification.  While construing the term this way will certainly assist Genius's non-infringement

4 defense, not surprisingly doing so directly contradicts Federal Circuit precedent.

5      The key issue here is Genius's attempt to add the limitation of "no inflection points on

6 either surface" to the meaning of "meniscus."  The '224 Patent teaches, however, that the fifth

7 lens element in *all* the disclosed embodiments is both meniscus-shaped *and* has inflection points.



8      For example, "[i]n the first embodiment of the

9 present imaging lens system, each of the third lens

10 element 120, the fourth lens element 130 and the fifth

11 lens element 140 is a meniscus lens element."  '224

12 Patent at 7:53-65, 9:18-30 (same for second

13 embodiment), 10:52-65 (same for third embodiment).

14 Yet, the '224 Patent also expressly states that the first

15 embodiment has "a plastic fifth lens element 140" with

16 "the object-side and image-side surface 141 and 142

17 thereof being aspheric, each of which being provided *with*

18 *at least one inflection point.*"  *Id.* at 6:66-7:4.  Similarly,

19 all the embodiments describe the fifth lens element as

20 having at least one inflection point, despite being

21 meniscus-shaped.  *Id.* at 8:45-49, 10:11-16.  Thus, Genius's proposed construction directly

22 contradicts the intrinsic evidence and reads out *all* embodiments.

23      As the Federal Circuit has repeatedly stated, "an interpretation which excludes a [single]

24 disclosed embodiment from the scope of the claim is rarely, if ever, correct."  *Broadcom Corp. v.*

25 *Emulex Corp.*, 732 F.3d 1325, 1333 (Fed. Cir. 2013) (quotation omitted).  Reading out an

26 embodiment "would require highly persuasive evidentiary support" and is inappropriate when

27 "the specification, including the claims, supports a reading that encompasses the preferred

28 embodiment."  *SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1378-79 (Fed. Cir. 2013)

(quotation omitted).  Not only has Genius failed to present any such evidence here, but it seeks to exclude not just one embodiment, but all of them.  Accordingly, the Court should reject Genius's construction and apply the plain and ordinary meaning of this term.

## H.      "Aperture Stop" and "Stop"

| Term | Asserted Claims | Largan's Construction | Genius's Construction |
|---|---|---|---|
| "aperture stop" | '151 Patent: 1<br>'454 Patent: 1, 17<br>'224 Patent: 1, 13 | Plain and ordinary meaning | "opening that determines the cone angle of a bundle of rays that pass through the optical system" |
| "stop" | '768 Patent: 1, 11 | *See above* | *See above* |

As with many of the other terms discussed previously, Largan does not understand why Genius believes these terms need to be construed.  Genius's construction introduces ambiguity rather than resolving it by adding terms such as "cone angle" and "bundle of rays."  The fact that Genius's own patents use the term "aperture stop" without any definition further confirms that a person of ordinary skill in the art would know what these terms mean without Genius's imprecise construction.  *E.g.*, Exh. 1, U.S. Patent No. 8,072,695 at 3:35, 3:38, 3:41, 4:6-7, 5:53-54, 7:12-13.  Moreover, none of Genius's non-infringement arguments depend upon these terms, *see* Exh. 5, Genius 1st Supp. Resp. to Interrogatory No. 3, at 12-14 (Jan. 2, 2014), and Largan is unaware of any validity or enforceability dispute regarding them.  Thus, the Court should simply give these words their plain and ordinary meaning.

## I.      "On the Optical Axis" and "On-Axis"

| Term | Asserted Claims | Largan's Construction | Genius's Construction |
|---|---|---|---|
| "on the optical axis" | '768 Patent: 1, 4, 5, 11<br>'691 Patent: 21 | Plain and ordinary meaning | "on the straight line that passes through the geometrical center of the lens system (i.e., the axis of rotational symmetry)" |
| "on-axis" | '151 Patent: 2<br>'454 Patent: 18<br>'224 Patent: 1, 14<br>'768 Patent: 4 | *See above* | *See above* |

Largan agrees with Genius that "on-axis" refers to the optical axis.  However, once again

PLAINTIFF'S OPENING CLAIM
CONSTRUCTION BRIEF
CV-13-2502-WHO

Largan is unclear why Genius believes these terms need any express construction. There is no other "axis" being routinely referred to here, no risk of confusion, and one of ordinary skill in the art would clearly understand what these terms are referencing. Indeed, Genius's proposed construction actually adds ambiguity by attempting to introduce the "axis of rotational symmetry" without any explanation or reference within the Patents-in-Suit. The fact Genius's own patents use nearly identical terms, *e.g.*, Exh. 2, U.S. Patent No. 7,586,694, at Claim 1 ("along an optical axis"); Exh. 1, U.S. Patent No. 8,072,695, at Claim 1 ("in a vicinity of an optical axis"), as well as the fact that none of Genius's non-infringement or invalidity arguments turn on these terms also weigh against imposing an express construction. *See* Exh. 5, Genius 1st Supp. Resp. to Interrogatory No. 3, at 12-14 (Jan. 2, 2014).

**J.      "Focal Length" Terms**

| Term | Asserted Claims | Largan's Construction | Genius's Construction |
|---|---|---|---|
| "focal length of the . . . lens element" | '454 Patent: 4<br>'224 Patent: 7, 10<br>'768 Patent: 1, 8, 9 | Plain and ordinary meaning | "distance along the optical axis from a principle point of the . . . lens element to the corresponding focal point (i.e. the location where all parallel rays passing through the lens element are focused)" |

| Term | Asserted Claims | Largan's Construction | Genius's Construction |
|---|---|---|---|
| "focal length of the optical lens system" | '151 Patent: 2 | Plain and ordinary meaning | "distance along the optical axis from a principle point of the lens system to the corresponding focal point (i.e. the location where all parallel rays passing through the lens system are focused)" |
| "focal length of the imaging lens system" | '454 Patent: 13<br>'224 Patent: 1 | *See above* | *See above* |
| "focal length of the optical imaging | '768 Patent: 1, 8, 9 | *See above* | *See above* |

09075-0006/LEGAL120269922.1

| Term | Asserted Claims | Largan's Construction | Genius's Construction |
|------|-----------------|----------------------|----------------------|
| lens system" | | | |

Largan agrees with Genius that "focal length" as used in the asserted claims is measured at the optical axis.  However, as with many of Genius's other terms, Largan is unclear why Genius believes these terms need an express construction.  Virtually anyone who has experience with a camera, glasses, or who has taken high school physics has experience with and an understanding of the concept of "focal length."  One of ordinary skill in the art would hardly need "focal length" defined—certainly not with a 32-word definition that refers to other, ambiguous "points" and includes a misspelling.[14]  In case there were any doubt, Genius's own patents use nearly identical "focal length" terms, demonstrating that a person of ordinary skill needs no assistance in understanding them.  *E.g.*, Exh. 1, U.S. Patent No. 8,072,695, at Claim 1 ("$f_2$ represents a focal length of said second lens element" and "f represents a focal length of said imaging lens").

**K.      "Image Plane"**

| Term | Asserted Claims | Largan's Construction | Genius's Construction |
|------|-----------------|----------------------|----------------------|
| "image plane" | '691 Patent: 21 | Plain and ordinary meaning | "location at which the lens system creates the focused image" |

Once again, the term "image plane" does not require an express construction.  A person of ordinary skill would know immediately what an "image plane" is.  For example, the specification of the '691 Patent repeatedly states that the image sensor is placed at the image plane.  *E.g.*, '691 Patent at 5:56-57, 7:31-32, 8:55, 11:15-18; FIG. 1A, 10:35-36 (showing "image plane 160").

Genius's proposed construction is plainly wrong, as it both introduces ambiguity (*i.e.*, by improperly converting a two-dimensional "plane" into a one-dimensional point or "location") and seemingly adds a method limitation to a system claim (*i.e.*, requiring that the system actually "creates the focused image").  *E.g.*, *Union Oil Co. v. Atl. Richfield Co.*, 208 F.3d 989, 995 (Fed. Cir. 2000) (refusing to construe terms of an apparatus claim to include method limitations because "[o]therwise these composition claims would mutate into method claims") (citation

---

[14] Largan assumes "principle point" is a misspelling of "principal point." *E.g.*, '768 Patent at 2:40.

omitted).  Accordingly, the Court should reject Genius's construction and merely impose the

plain and ordinary meaning of "image plane."

**V.    CONCLUSION**

      For the foregoing reasons, Largan respectfully requests that the Court find the disputed

terms should be given their plain and ordinary meaning, and that Genius's imprecise and

contradictory constructions should be denied.

DATED: March 21, 2014                    **PERKINS COIE** LLP

                             By: */s/ Michael J. Engle*
                                  John P. Schnurer, Bar No. 185725
                                  JSchnurer@perkinscoie.com
                                  Joseph P. Reid, Bar No. 211082
                                  JReid@perkinscoie.com
                                  Michael J. Engle, Bar No. 259476
                                  MEngle@perkinscoie.com
                                  PERKINS COIE LLP
                                  11988 El Camino Real, Suite 350
                                  San Diego, CA  92130-2594
                                  Telephone:  858.720.5700
                                  Facsimile:   858.720.5799

                               Attorneys for Plaintiff LARGAN PRECISION
                                  CO., LTD.