UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LARGAN PRECISION CO, LTD,

            Plaintiff,

      v.

GENIUS ELECTRONIC OPTICAL CO.,
LTD.,

            Defendant.

Case No.  13-cv-02502-JD

**CLAIM CONSTRUCTION ORDER**

Re: Dkt. Nos. 36, 40, 44

The parties in this patent infringement action seek construction of six claim terms (or in some cases, groups of claim terms) found in the five asserted patents.  This order follows a full round of briefing on claim construction, supplemental briefing on the Supreme Court's new standard for finding patents invalid for indefiniteness, a technology tutorial, and a claim construction hearing.

## I.  BACKGROUND OF THE PATENTS

Largan asserts the following five patents against Genius:

| Patent | Asserted Claims | Priority Date |
|---|---|---|
| 7,826,151 | 2, 3, 4, 5 | Dec. 1, 2008 |
| 7,864,454 | 1, 9, 11, 13, 16, 17, 18 | Aug. 11, 2009 |
| 8,233,224 | 1, 4, 6, 8, 9, 10, 11, 12, 13, 14 | July 14, 2009 |
| 8,310,768 | 1, 3, 4, 5, 8, 9, 10, 11 | Sept. 16, 2010 |
| 8,395,691 | 21, 23, 25 | Aug. 20, 2010 |

While these patents are not members of the same patent family, they each cover arrangements of lenses into "imaging lens systems" of the kind used in mobile phone cameras.

United States District Court
Northern District of California

1   *See, e.g.*, '454 patent, 1:20-31.  An imaging lens system consists of a number of individual lenses

2   (known as "lens elements") arranged in a series, as shown in the diagram below:



12   '454 patent, Fig. 1.  The imaging lens systems disclosed in the '691 patent consists of an

13   arrangement of four lens elements, while those disclosed in the other patents-in-suit consist of

14   five.  *See* '151 patent, 1:40-45, Fig. 1; '454 patent, Abstract, Fig. 1; '224 patent, Abstract, Fig. 1;

15   '768 patent, 1:62-64, Fig. 1A; '691 patent, Abstract, Fig. 1A.

16       The object being imaged is, by convention, thought of as being to the left of the lens

17   assembly diagram, while the image sensor -- the sensor that captures the image -- is to the right of

18   the lens assembly.  In the image above, the image plane where the image sensor is located is

19   labeled 170.  Each of the lens elements has two surfaces:  the one on the left is called the object-

20   side surface, while the one on the right is called the image-side surface.  Again by convention, the

21   numbering of the lenses begins from the object side and proceeds to the image side:  the lens

22   element labeled 100 is the first lens element, the one labeled 110 is the second lens element, and

23   so forth.  *See, e.g.*, '454 patent, 1:35-47, 6:55-7:18.

24       The asserted claims specify a number of properties of the imaging lens system.  For

25   example, claim 9 of the '454 patent specifies that the fifth lens element must have a concave

26   image-side surface, while claim 21 of the '691 patent specifies (among other things) that the third

27   lens element must be plastic and that the object-side and image-side surfaces must both be

28   aspheric.

United States District Court
Northern District of California

2

The disclosed embodiments of the patents-in-suit are described in some detail in the patents' specifications.  For example, each of the patents-in-suit provides the following equation to define the shape of aspheric surfaces:

$$X(Y) = (Y^2/R)/(1 + sqrt(1 - (1+k)*(Y/R)^2)) + \sum_i (Ai)*(Y^i)$$

*E.g.,*'454 patent, 7:20-25; '691 patent, 10:40-45.  Here, *X* represents the height (relative to a plane tangent to the aspheric surface at its vertex) of a point on the aspheric lens surface at a distance *Y* from the optical axis, *Y* represents the distance from a point on the aspheric surface to the optical axis, *R* represents the radius of curvature (discussed in greater detail below), *k* represents the conic coefficient (a constant), and $A_i$ represents the aspheric coefficient of order *i* (also a constant).  *E.g.,* '454 patent, 7:27-33.  (Contrary to normal mathematical convention, this equation treats *X* as the dependent variable and *Y* as the independent variable.)  In other words, if we designate the horizontal axis the *Y*-axis and the vertical axis the *X*-axis, the *X*-axis forms the optical axis and the aspheric lens surface faces downward.

Using the '454 patent as an example, the values for *R*, *k*, and $A_i$ for various embodiments are given in Tables 1-8.  The values of *k* and $A_i$ determine how much the aspheric surface deviates from a spherical shape.  This can be seen by the fact that if they are each set to zero, the equation above reduces to the standard equation for the lower half of a circle centered at (0,*R*):

$$X(Y) = \frac{\frac{Y^2}{R}}{1 + \sqrt{1 - (\frac{Y}{R})^2}} = -\sqrt{R^2 - Y^2} + R$$

The values given in Tables 1-8 permit the shape of the lens surface to be determined with some precision.  For example, substituting the values for surface number 2 given in Tables 1-2 into the aspheric equation yields the surface described by the dashed line below (with a spherical surface having the same radius of curvature *R* shown using a solid line for comparison):



3

Finally, according to a commonly-used convention, the radius of curvature (whose values are given in Tables 1, 3, 5, and 7 of the '454 patent) of a convex object-side surface is positive and the radius of curvature of a concave object-side surface is negative.  Conversely, the radius of curvature of a convex image-side surface is negative and the radius of curvature of a concave image-side surface is positive.

## II.  LEGAL STANDARD

Generally, claim terms should be given their ordinary and customary meaning to a person of ordinary skill in the art at the time of the invention.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc).   There are only two circumstances where a claim is not entitled to its plain and ordinary meaning: when a patentee sets out a definition and acts as his or her own lexicographer, or when the patentee disavows the full scope of the claim term either in the specification or during prosecution.  *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).

When construing claim terms, the Federal Circuit emphasizes the importance of evidence that is intrinsic to the patent:  the language of the claims themselves, the specification, and the prosecution history.  *Phillips*, 415 F.3d at 1312-17.   The claim language can "provide substantial guidance as to the meaning of particular claim terms," both through the context in which the claim terms are used and by considering other claims in the same patent.  *Id.* at 1314.  The specification is likewise a crucial source of information:  Although it is improper to read limitations from the specification into the claims, the specification is "the single best guide to the meaning of a disputed term."  *Id.* at 1315 ("[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive . . . .'"); *see also Merck & Co. v. Teva Pharms. USA, Inc.*, 347 F.3d 1367, 1370 (Fed. Cir. 2003) ("[C]laims must be construed so as to be consistent with the specification . . . .").

Despite the importance of the intrinsic evidence, courts may also turn to extrinsic evidence -- technical dictionaries, learned treatises, expert and inventor testimony, and the like -- to help construe the claims.  *Phillips*, 415 F.3d at 1317-18.  For example, dictionaries (considered in conjunction with the intrinsic evidence) may reveal what the ordinary and customary meaning of a

United States District Court
Northern District of California

1  term would have been to a person of ordinary skill in the art at the time of the invention. *Frans*

2  *Nooren Afdichtingssystemen B.V. v. Stopaq Amcorr Inc.*, 744 F.3d 715, 722 (Fed. Cir. 2014)

3  (citing *Phillips*, 415 F.3d at 1312-18) ("Terms generally carry their ordinary and customary

4  meaning in the relevant field at the relevant time, as shown by reliable sources such as

5  dictionaries, but they always must be understood in the context of the whole document -- in

6  particular, the specification (along with the prosecution history, if pertinent).").  Extrinsic evidence

7  is, however, "less significant than the intrinsic record in determining the legally operative meaning

8  of claim language."  *Phillips*, 415 F.3d at 1317 (internal quotations omitted).

9  **III. AGREED CONSTRUCTIONS**

10       The parties have reached agreement on the construction of a number of claim terms that

11  they initially briefed.  In the parties' final joint claim construction statement, Genius stated that it

12  was no longer submitting the terms "aspheric" and "image plane" for construction.  Dkt. No. 96 at

13  3.  The parties also reached consensus on the following claim terms at the claim construction

14  hearing:

15       **"maximum image height":**  All of the patents-in-suit but the '151 patent define

16  "maximum image height" as "half of the diagonal length of the effective pixel area of the

17  electronic sensor."  *See* '454 patent, 14:13-16; '224 patent, 12:35-37; '768 patent, 16:33-36; '691

18  patent, 26:8-9.  At the claim construction hearing, Genius agreed with Largan that it should be

19  defined the same way in the '151 patent, and the Court adopts that construction.

20       **"focal length" terms:**  A lens has a number of focal lengths, each measured from a "focal

21  point":  the point at which rays passing through the lens from the right (in the case of the first

22  focal point) or from the left (in the case of the second focal point) meet.  *See, e.g.*, Dkt. No. 40,

23  Declaration of Laura Mullendore,[1] Ex. A, Warren J. Smith, *Modern Lens Design* 588-89 (2d ed.

24  2005).  Genius had previously argued that not construing "focal length" left it unclear whether it

25  referred to the "front focal length" (the distance along the optical axis from the first focal point to

26  the closest surface of the first lens), the "back focal length" (the distance along the optical axis

27

28  ───────────────
[1] Subsequent references to lettered exhibits will be to exhibits to this declaration.

United States District Court
Northern District of California

from the second focal point to the closest surface of the last lens), or the "effective focal length." The parties agreed at the claim construction hearing that "focal length" should be construed to mean "effective focal length."  The Court will not construe the term any further for now, but if it transpires that the parties disagree about the meaning or scope of "effective focal length," further clarification may be necessary before trial.

      **"on the optical axis" and "on-axis":**  The parties agree that both of these terms should be construed to mean "on the axis of rotational symmetry."  The Court will adopt this construction subject to the same caveats given with respect to the "focal length" terms.

## IV. DISCUSSION OF DISPUTED TERMS

      At the outset, the parties dispute whether further claim construction is even necessary. Largan proposes no construction at all for each of the terms in dispute.  Instead, it claims that because these terms each have a plain and ordinary meaning apparent to persons of ordinary skill in the art, the Court should decline to explain what the plain and ordinary meaning *is*.  Dkt. No. 35, Joint Claim Construction Statement, App'x; *e.g.,* Dkt. No. 36 at 20, 22-24.

      Largan's argument conflates giving a claim its plain and ordinary meaning with declining to construe it.  As noted earlier, a claim is generally entitled to its plain and ordinary meaning. But as *Philips* (in a sentence quoted by Largan itself) makes clear, even a term with a plain and ordinary meaning apparent to lay judges may require construction, though in "such cases [it] involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314; *cf. IGT v. Bally Gaming Int'l*, 659 F.3d 1109, 1119 (Fed. Cir. 2011) (construing "predefined" to have its plain and ordinary meaning of "defined in advance"); *Hill-Rom Services, Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371-74 (Fed. Cir. 2014) (holding that "datalink" should be given its plain and ordinary meaning of "a link that carries data in a wired or wireless fashion"); *Smartmetric Inc. v. American Exp. Corp.*, 476 Fed. App'x 742, 744 (Fed. Cir. 2012) (non-precedential) (affirming district court's construction of "insertion of said data card into said data card reader" to mean "the data card is physically inserted into a recess of the data card reader" as correctly reflecting the plain and ordinary meaning).

1     Consistent with this principle of claim construction, Genius argues that a number of terms

2  should be construed to clarify their meaning to a jury, rather than in order to depart from their

3  plain and ordinary meaning.  Dkt. No. 40 at 1.  Largan counters that it is inappropriate to consider

4  whether the terms, left unconstrued, would be understandable to a lay jury, because "[w]hat the

5  claim terms would mean to laymen is irrelevant."  Dkt. No. 44 at 3 (quoting *Searfoss v. Pioneer*

6  *Consol. Corp.*, 374 F.3d 1142, 1149 (Fed. Cir. 2004)).  Largan is of course correct that where a

7  claim term is given its plain and ordinary meaning, it is the plain and ordinary meaning of the term

8  to a person of ordinary skill in the art.  "[T]he ordinary and customary meaning of a claim term is

9  the meaning that the term would have to a person of ordinary skill in the art in question at the time

10 of the invention." *Philips*, 415 F.3d at 1313.  But that is no reason why a claim term cannot be

11 given a construction that explains, in language comprehensible to a jury, what the term means to a

12 person of ordinary skill in the art.  After all, the factfinder in patent trials is usually a jury of

13 laypersons, and claim terms written in technical language may have to be recast in words that non-

14 experts will understand.  *See Abbott Laboratories v. Sandoz, Inc.*, 544 F.3d 1341, 1360 (Fed. Cir.

15 2008) (citing *Multiform Dessicants, Inc. v. Medzam Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998),

16 for the proposition that "claims are construed as an aid to the decision-maker, by restating the

17 claims in non-technical terms"); *O2 Micro Int'l v. Beyond Innovation Tech. Co.*, 521 F.3d 1351,

18 1362 (Fed. Cir. 2008) ("[C]laim construction is a matter of resolution of disputed meanings and

19 technical scope, to clarify and when necessary to explain what the patentee covered by the claims,

20 for use in the determination of infringement.") (citation omitted).

21     Finally, Largan argues that there is no infringement or invalidity dispute that turns on the

22 construction of certain claim terms.  *See, e.g.*, Dkt. No. 36 at 9-10.  Largan goes so far as to

23 suggest in passing that, as a result, the Court may lack the constitutional authority to construe

24 these claims.  Dkt. No. 36 at 11 (citing *Jang v. Boston Sci. Corp.*, 532 F.3d 1330, 1336 (Fed. Cir.

25 2008)).  In *Jang*, the Federal Circuit was faced on appeal with parties who had stipulated to non-

26 infringement following the district court's claim construction ruling, 532 F.3d at 1331, and the

27 circuit court expressed frustration with the lack of "a proper context for an accurate claim

28 construction," *id.* at 1337-38.  In other words, the only issues before the Federal Circuit were

United States District Court
Northern District of California

7

1    claim construction disputes, some of which the parties agreed would have no effect on

2    infringement.  *Id.* at 1334.  In that context -- on a record devoid of information about the accused

3    products and the parties' representation that certain issues were legal nullities -- the circuit court

4    appropriately warned against advisory opinions.

5            The situation before this Court is very different.  While the Court is mindful of the limits

6    on its Article III power, it is by no means clear at this point in the case that no issue of

7    infringement or invalidity turns on the disputed claim constructions.  Although Largan points to

8    interrogatory responses from Genius listing the claim terms Genius contends it does not infringe --

9    interrogatory responses that do not list some of the disputed claim terms -- these noninfringement

10   positions may later change based on the outcome of claim construction, as both this Court's Patent

11   Local Rules and Genius's interrogatory responses recognize.  Patent L.R. 3-6(a); Dkt. No. 35-1 at

12   12.  The fact that Largan proposes no claim constructions for any of the disputed claim terms

13   makes it even more difficult for the Court to satisfy itself at this stage that the parties' disputes

14   over claim construction will not affect infringement or invalidity.

15           The inherent uncertainty attendant on this stage of litigation is likely why the Federal

16   Circuit has emphasized that when a district court is undertaking claim construction prior to

17   considering the question of infringement, it may (but need not) look to the parties' disputes over

18   infringement and invalidity.  *Jurgens v. McKasy*, 927 F.2d 1552, 1560 (Fed. Cir. 1991) ("a claim

19   is construed without regard to the accused product"); *Pall Corp. v. Hemasure Inc.*, 181 F.3d 1305,

20   1308 (Fed. Cir. 1999) ("Although the construction of the claim is independent of the device

21   charged with infringement, it is convenient for the court to concentrate on those aspects of the

22   claim whose relation to the accused device is in dispute.").  While it is certainly true that the

23   Federal Circuit encourages district courts to focus on claim construction disputes material to

24   infringement or invalidity, it does so for reasons of efficiency, not jurisdiction.  It follows that the

25   Court is free to construe a term if it believes that doing so will be helpful to the factfinder or if

26   there appears to be a dispute regarding its scope.  *See O2 Micro.*, 521 F.3d at 1362 ("When the

27   parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to

28   resolve it.").

United States District Court
Northern District of California

Consequently, on the basis of the materials and arguments presented by the parties, the Court construes these terms:

### A.   "convex"/"concave" terms

| Term | Asserted Claims | Largan's Construction | Genius's Construction |
|---|---|---|---|
| "convex object-side surface" | '151 patent: 1<br>'454 patent: 1<br>'224 patent: 1, 3<br>'768 patent: 1<br>'691 patent: 21 | Plain and ordinary meaning | "object-side surface that is curved or rounded outward toward the object to be imaged like the exterior of a sphere or circle" |
| "wherein an object-side surface … is convex" | '151 patent: 3 | Plain and ordinary meaning | *See above.* |
| "concave object-side surface" | '151 patent: 1<br>'454 patent: 1<br>'224 patent: 3<br>'768 patent: 2<br>'691 patent: 22 | Plain and ordinary meaning | "object-side surface that is hollowed or rounded inward like the inside of a bowl" |
| "convex image-side surface" | '151 patent: 1<br>'224 patent: 3<br>'768 patent: 1<br>'691 patent: 22 | Plain and ordinary meaning | "image-side surface that is curved or rounded outward toward the image plane like the exterior of a sphere or circle" |
| "concave image-side surface" | '454 patent: 9<br>'224 patent: 1, 2<br>'768 patent: 1, 7<br>'691 patent: 21, 22 | Plain and ordinary meaning | "image-side surface that is hollowed or rounded inward like the inside of a bowl" |

The parties' dispute over the meaning of "convex" and "concave" in the claim terms above is ancillary to the parties' real dispute:  whether, as Genius claims, the larger phrases "lens element … having a [convex/concave] [object-side/image-side] surface," "wherein the … lens element has a [convex/concave] [object-side/image-side] surface," and "wherein an object-side surface of the … lens element is convex" are indefinite.  The initial dispute over the construction of "convex" and "concave" is easily disposed of.  The terms "convex" and "concave" have meanings readily understandable to a lay jury, and there is no indication that the parties dispute on this score goes to claim scope.  (If it did, the Court would be obliged to construe the terms.)  In addition, Genius's proposed constructions introduce a potential element of confusion by using words like "outward" and "inward," whose meanings are somewhat context-dependent.  The Court will therefore leave

United States District Court
Northern District of California

9

these claim terms unconstrued and proceed to the question of whether the phrases containing the terms above are indefinite.

A patent is invalid for indefiniteness if it violates the requirement that a patent must "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as [the] invention." 35 U.S.C. § 112, ¶ 2 (2006).[2]  Under the Supreme Court's newly-minted standard for indefiniteness, a claim fails to satisfy this requirement and is invalid if its language, when read in light of the specification and the prosecution history, "fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014).  There is no question that *Nautilus* lowers the bar for showing indefiniteness in comparison to the Federal Circuit's previous requirement that indefinite claims be shown to be "insolubly ambiguous."  *Id.* at 2130.   No longer can a patent be saved just because "a court can ascribe *some* meaning to a patent's claims."  *Id.*   Nevertheless, the Supreme Court acknowledged that the "inherent limitations of language" require tolerating "[s]ome modicum of uncertainty."  *Id.* at 2128.

Any fact critical to a holding on indefiniteness must be proven by the challenger by clear and convincing evidence.  *See Intel Corp. v. VIA Techs., Inc.*, 319 F.3d 1357, 1366 (Fed. Cir. 2003).  The clear-and-convincing evidence standard, however, does not alter the definiteness requirements of section 112, and is not relevant where, as here, the parties have not identified any factual disputes germane to the indefiniteness inquiry.  *Nautilus*, 134 S. Ct. at 2131 n.10; *cf. Microsoft Corp. v. i4i Ltd. Partnership*, 131 S. Ct. 2238, 2253 (Breyer, J., concurring) ("in this area of law as in others the evidentiary standard of proof applies to questions of fact and not to questions of law").

According to Genius, these claim terms are indefinite for two reasons.  First, while Genius concedes that four of the five patents specify that convexity and concavity be measured "near,"

---

[2] Section 112 has been reorganized by section 4(e) of the Leahy-Smith America Invents Act, Pub. L. 112-29, 125 Stat. 284, and the subsection dealing with indefiniteness now goes by the moniker section 112(b).  But the new section 112 does not apply to patents filed before September 16, 2012, like the patents-in-suit, so the Court refers to the pre-AIA version of the statute.  *Se Interval Licensing LLC v. AOL, Inc.*, Nos. 2013-1282, 2013-1283, 2013-1284, 2013-1285, 2014 WL 4435871, at *4 n.5 (Fed. Cir. Sept. 10, 2014).

United States District Court
Northern District of California

"proximate to," or "in proximity to" the optical axis, it points out that the '151 patent contains no such express clarification.  Second, Genius claims that even if convexity and concavity are defined "near," "proximate to," or "in proximity to" the optical axis, that itself provides no meaningful direction as to what portion of the lens surface should be measured.

### 1.  "convex" and "concave" in the '151 patent

The parties appear to agree that all the patents but the '151 patent specify that convexity and concavity are determined "near," "proximate to," or "in proximity to" the optical axis.  '454 patent, 6:68-51 ("In an imaging system of the present invention, if a lens element has a convex surface, it means the portion of the surface near the axis is convex; if a lens element has a concave surface, it means the portion of the surface near the axis is concave."); '768 patent, 6:63-67 ("In the present optical imaging lens system, if a lens element has a convex surface, it means the portion of the surface in proximity to the optical axis is convex; if a lens element has a concave surface, it means the portion of the axis in proximity to the optical axis is concave."); '224 patent, 6:38-42 ("proximate to the axis"); '691 patent, 10:1-5 ("in proximity to").  As discussed previously, the optical axis is the axis of rotational symmetry of the lens system.  *See, e.g.* '454 patent, Fig. 1 (showing the optical axis as a dashed line running through the center of the lens system); *id.* at 8:6-7 (describing Fig. 1).

Genius nevertheless contends that the patent fails to apprise a person of ordinary skill in the art where on the lens to measure convexity and concavity.  The fact that the '151 patent does not specify where convexity and concavity are to be measured is especially problematic, according to Genius, in evaluating lens surfaces like those associated with lenses 40 or 50 in the figure below, which are convex along certain portions and concave along others:



FIG. 1A

'151 patent, Fig. 1A.

Genius's concerns are overstated.  The specification of the '151 patent makes clear that, as in the other patents, convexity and concavity are determined near the optical axis.  Figure 1A indicates that the object-side surfaces of the fourth and fifth lens elements are convex at the optical axis, but concave elsewhere. Yet the specification refers to each of them without qualification as having "a convex object-side surface," '151 patent, 5:41-54, a fact confirmed by Table 1, which shows that the fourth and fifth lens elements have positive -- that is, convex -- object-side radii of curvature: 6.26220 and 3.22820, respectively.  '151 patent, col. 7, Table 1.  Thus, the '151 patent, like the other patents, defines the convexity and concavity of a lens surface by its characteristics at or near the optical axis.  In reaching this conclusion, the Court is mindful of not limiting the claims to embodiments discussed in the specification.  *See Phillips*, 415 F.3d at 1323.  But the fact that the specification refers without elaboration to a lens surface as convex when it is only convex near the optical axis is strong evidence that that is how persons of ordinary skill in the art would interpret the term.  *See Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1356-57 (Fed. Cir. 2004) (finding that the "specification contains further enlightenment on the accustomed usage" of the claim term).

Moreover, defining convexity and concavity near the optical axis is consistent with the definition of the term to persons of ordinary skill in the art.  Even Genius concedes that another

United States District Court
Northern District of California

claim term -- "radius of curvature" -- is defined at the point where the surface of the lens element

intersects the optical axis.  Dkt. No. 35, Joint Claim Construction Statement, App'x at 20.  But

curvature -- which determines convexity and concavity -- is simply the reciprocal of the radius of

curvature, as one of the textbooks Genius itself cites points out.  Dkt. No. 36, Declaration of

Michael J. Engle,[3] Ex. 8, Robert E. Fischer & Biljana Tadic-Galeb, *Optical System Design* 18

(2000).  It follows that "convexity" and "concavity" are defined at or near the optical axis as well.

Genius attempted to argue at the claim construction hearing that its construction for "radius

of curvature" was not inconsistent with its construction of "convex" and "concave" because it was

limited to the case of spherical lenses.  There are two problems with this.  First, the construction

Genius proposed for "radius of curvature" was not restricted to spherical lenses:  it was meant to

apply generally to the lenses claimed in the patents-in-suit, many of which are aspheric.  In fact, if

Genius's construction were meant to be limited to the case of spherical lenses, there would be no

need to explicitly note -- as Genius did -- that the radius was to be measured at the optical axis,

because in a spherical lens the radius of curvature is the same at any point along the lens surface.

Second, although Genius is correct that the radius of curvature varies along the surface of the lens

for non-spherical lenses, the patents-in-suit -- including in the equation and tables discussed in

section I -- consistently speak of a lens surface as having a *single* radius of curvature.  *E.g.*, '454

patent, 7:20-25.  Genius has proposed no other plausible point at which that radius is measured

other than the optical axis.

### 2.  "near," "proximate to," and "in proximity to" the optical axis

Genius's second argument is that even if convexity and concavity are defined to mean

"near," "proximate to," or "in proximity to" the optical axis, they still do not provide sufficient

clarity to apprise a person of ordinary skill in the art of the scope of the invention with reasonable

clarity.  Dkt. No.  40 at 7-8.  Genius says that such "words of degree" often result in definiteness

problems.  *Id.*  Using an example from one of the accused products, Genius claims that the

United States District Court
Northern District of California

---

[3] Subsequent references to numbered exhibits will be to exhibits to this declaration.

1    convexity or concavity of the portion of the lens centered around the optical axis may appear to be

2    different depending on the magnification at which it is examined.  Dkt. No. 40 at 8-9.

3         While it is certainly true that words of degree may be indefinite, they are not necessarily

4    so.  The Federal Circuit has addressed this issue since *Nautilus* and clarified that the new standard

5    does not imply "that terms of degree are inherently indefinite."  *Interval Licensing*, 2014 WL

6    4435871, at *4.  In fact, as Largan points out, the Federal Circuit has found terms like "near" and

7    "proximate to" to be *definite* on a number of occasions.  *See, e.g.*, *Young v. Lumenis, Inc.*, 492

8    F.3d 1336, 1345-46 (Fed. Cir. 2007) ("the term 'near' is not insolubly ambiguous and does not

9    depart from the ordinary and customary meaning of the phrase 'near' as meaning 'close to or at'");

10   *Rosemount, Inc. v. Beckman Instruments, Inc.*, 727 F.2d 1540, 1547 (Fed. Cir. 1984) (finding the

11   term "close proximity" not to be indefinite); *Power-One, Inc. v. Artesyn Techs, Inc.*, 599 F.3d

12   1343, 1348 (Fed. Cir. 2010) ("Here, a person of ordinary skill in the field would understand the

13   meaning of 'near' and 'adapted to' because the environment dictates the necessary preciseness of

14   the terms."); *Accentra, Inc. v. Staples, Inc.*, 500 Fed. App'x 922, 930-31 (Fed. Cir. 2013) (non-

15   precedential) ("Consistent with its ordinary meaning, we construe [near] to mean 'at or in the

16   vicinity of.' Whatever play remains in that construction is not enough to render the patent

17   indefinite.").

18        To be sure, just because a certain claim term is definite in the context of a different patent

19   does not necessarily mean that it is here.  But the fact that industry convention dictates that

20   convexity and concavity be measured at the optical axis (as demonstrated by Genius's own

21   construction of the term "radius of curvature," discussed above) is strong evidence that the

22   specification and claims of the patents-in-suit apprise a person of ordinary skill in the art with

23   reasonable certainty of where to measure convexity and concavity.  The use of the terms "near,"

24   "proximate to," and "in proximity to" simply recognizes that the notion of curvature at a point

25   refers to the curvature infinitesimally close to the point.  In the real world, this means measuring

26   the curvature as close to the optical axis as possible.  *See In re Packard*, 751 F.3d 1307, 1313

27   (Fed. Cir. 2014) (explaining that claim language need only be "as precise as the subject matter

28   permits").  Genius's concern that Largan's competitors will not know whether a lens should be

examined at high magnification or low thus goes to the question of proving infringement, not indefiniteness. If Largan accuses a lens based on one of its surfaces being convex in the region of the optical axis, but examination at higher magnification reveals that the portion around the optical axis is actually concave, that would provide the basis for a noninfringement argument.

To summarize, the Court concludes that the terms "convex" and "concave" need no construction. The terms "[convex/concave] [object-side/image-side] surface" are construed to mean "[object-side/image-side] surface that is [convex/concave] where the surface intersects the optical axis." Similarly, "wherein an object-side surface … is convex" is construed to mean "wherein an object-side surface … is convex where the surface intersects the optical axis." Finally, the terms "lens element … having a [convex/concave] [object-side/image-side] surface," "wherein the … lens element has a [convex/concave] [object-side/image-side] surface," and "wherein an object-side surface of the … lens element is convex" are not indefinite.

**B. "radius of curvature" terms**

| Term | Asserted Claims | Largan's Construction | Genius's Construction |
|---|---|---|---|
| "curvature radius of the … surface of the … lens element" | '454 patent: 13 | Plain and ordinary meaning | "radius of the osculating circle at the point where the … surface of the … lens element intersects the optical axis" |
| "radius of curvature of [a/the] … surface of the … lens element" | '224 patent: 11, 12 '768 patent: 10 | Plain and ordinary meaning | *See above.* |

The terms "curvature radius" and "radius of curvature" -- which the parties agree are synonymous -- are used throughout the specifications of the patents-in-suit without being defined, no doubt because their meaning would have been clear to a person of ordinary skill in the art. *See, e.g.*, '454 patent, Table 1, 4:52-53.

It is doubtful whether a lay juror would find the terms as pellucid as a person of ordinary skill in the art, however. As a result, the Court agrees with Genius that construction of the term is required. And this requires resort to extrinsic evidence, and in particular technical dictionaries -- not to limit the claims, but to illuminate what their meaning would have been to one of ordinary

United States District Court
Northern District of California

skill in the art.  *See Phillips*, 415 F.3d at 1318 ("We have especially noted the help that technical dictionaries may provide to a court 'to better understand the underlying technology' and the way in which one of skill in the art might use the claim terms.").

The proposed construction Genius itself derives from the extrinsic evidence, however, is hardly less opaque than the claim language itself, given its inclusion of the term "osculating circle."  Nevertheless, the Court notes that Largan does not dispute that Genius's construction accurately captures the meaning of the claim term to a person of ordinary skill in the art.  The question thus becomes whether Genius's construction can be expressed in simpler terms.

A review of one of the technical dictionaries cited by Genius -- the McGraw-Hill Dictionary of Scientific and Technical Terms -- reveals that it can.  That dictionary defines "radius of curvature" as "[t]he radius of the circle of curvature at a point of the curve."[4]  Ex. K, McGraw-Hill, Inc., *McGraw-Hill Dictionary of Scientific & Tech. Terms* 1644 (Sybil P. Parker ed., 5th ed. 1994).  And "circle of curvature" is defined as "[t]he circle tangent to a curve on the concave side and having the same curvature at the point of tangency as does the curve."  *Id.* at 375.  (A circle is tangent to a curve when it "just touches" or "kisses" the curve at a single point -- hence the alternative name "osculating circle" for the "circle of curvature.")  Combining the two dictionary definitions and Genius's proposal yields the following straightforward construction for radius of curvature, which the Court adopts: "The radius of the circle tangent to the surface of the lens element on the concave side at the point where the surface of the lens element intersects the optical axis and having the same curvature at the point of tangency as does the surface of the lens element."

C.  **"refractive power" terms**

| Term | Asserted Claims | Largan's Construction | Genius's Construction |
| --- | --- | --- | --- |
| "refractive power" | '151 patent: 1, 5<br>'454 patent: 1, 8, 16 | Plain and ordinary meaning | "the attribute of converging or diverging light" |

---

[4] It should be understood that the lens surface is actually three-dimensional, so the radius of curvature would actually be determined by a "sphere of curvature."  But with respect to rotationally symmetric lens systems like those at issue here, three-dimensional objects may be thought of as two-dimensional cross-sections for the sake of easy visualization without any loss of accuracy.

| | | | |
|---|---|---|---|
| | '224 patent: 1, 4, 9<br>'768 patent: 1<br>'691 patent: 21, 23 | | |
| "positive refractive power" | '151 patent: 1<br>'454 patent: 1<br>'224 patent: 1, 4<br>'768 patent: 1<br>'691 patent: 21, 23 | Plain and ordinary meaning | "refractive power that bends the ray toward the optical axis, i.e. converges light" |
| "negative refractive power" | '151 patent: 1, 5<br>'454 patent: 1, 8<br>'224 patent: 1<br>'768 patent: 1<br>'691 patent: 21, 23 | Plain and ordinary meaning | "refractive power that bends the ray away from the optical axis, i.e. diverges light" |

As with "radius of curvature," the patents-in-suit use the term "refractive power" in their claims and specifications without definition or explanation. The parties, however, do not seem to disagree widely on what the term means. While Largan contends (again) that the term need not be construed and criticizes Genius's use of the allegedly vague word "attribute," its brief defines the term in passing in a way largely consistent with Genius's proposed construction: "refractive power is a simple mathematical value regarding a lens that describes which way, and to what degree, light is bent as it passes through the lens." Dkt. No. 36 at 17. The extrinsic evidence cited by Genius agrees with this definition. *See, e.g.*, Ex. A, Smith, *supra*, at 588 ("The focal length and power are positive if the lens or surface bends the ray toward the axis, i.e., if the lens converges light."). Adopting a construction that captures these commonalities between the parties' positions while avoiding the term "attribute" should be acceptable to both sides, with one proviso: for the reasons discussed later in this section, the construction of "refractive power" will specify that it must be measured at the optical axis. The Court will therefore adopt the following constructions:

- "refractive power" is construed to mean "the degree to which a lens converges or diverges light at or near the optical axis"
- "positive refractive power" is construed to mean "refractive power that bends the ray toward the optical axis, i.e. converges light"

17

- "negative refractive power" is construed to mean "refractive power that bends the ray away from the optical axis, i.e. diverges light"

One additional matter remains.  As with "convex" and "concave," Genius contends that the larger claim phrases in which the "refractive power" terms appear -- namely, "lens element with [positive/negative/positive or negative] refractive power" and "wherein the ... lens element has [positive/negative] refractive power" -- are indefinite, because it is unclear at which point on the lens the refractive power should be measured.  And as with "convex" and "concave," the Court concludes that these phrases are not indefinite because the refractive power is measured at or near the optical axis.

It is apparent that the refractive power is measured at or near the optical axis for two reasons.  First, where the patents-in-suit refer to the refractive power of a lens, it is consistently the refractive power at the optical axis.  To use Genius's own example, Figure 4A of the '151 patent shows a lens element that has positive refractive power at the optical axis and negative refractive power at the edges.  Dkt. No. 40 at 13.  Yet the '151 patent refers to that lens element as having "positive refractive power."  '151 patent, 15:31-32.  Evidently, the '151 patent assumes that it will be understood that the refractive power of a lens is to be measured at or near the optical axis. *Pace* Genius, this is not limiting the claims to a particular embodiment:  nothing in the patent's discussion of that embodiment suggests that it is describing one of many possible "refractive powers."  Rather, the specification shows that the *ordinary* understanding of "refractive power" is "refractive power at the optical axis."

Second, as Largan points out, the construction Genius proposes for the claim term "focal length" is based on the optical axis.  *See* Dkt. No. 35, Joint Claim Construction Statement, App'x at 13 (proposing that "focal length of the ... lens element" be construed as "distance along the optical axis from a principle [sic] point of the ... lens element to the corresponding focal point (i.e. the location where all parallel rays passing through the lens element are focused.)"  But the refractive power is simply the reciprocal of the focal length, as one of the texts that Genius itself cites makes clear.  Ex. 8, Fischer & Tadic-Galeb, *supra*, at 18 ("The optical power is given by the Greek letter, Φ, and Φ is the reciprocal focal length or 1 divided by the focal length.").  Thus, if

United States District Court
Northern District of California

1  (as Genius concedes) a person of ordinary skill in the art would understand the focal length to be

2  measured with reference to the optical axis, the refractive power must be too.

3        The Court finds that the "refractive power" terms are not indefinite because a person of

4  ordinary skill in the art would know that the refractive power of a lens is to be measured at or near

5  the optical axis.  To make this clear to the jury, the Court has incorporated this point into its

6  construction for "refractive power," above.

7  **D.  "inflection point"**

| Asserted Claims | Largan's Construction | Genius's Construction |
|---|---|---|
| '454 patent: 1<br>'224 patent: 1<br>'768 patent: 1, 6<br>'691 patent: 21 | Plain and ordinary meaning | "point at which the concavity of the surface changes from concave to convex or vice versa" |

11        Largan's only arguments that "inflection point" does not need to be construed are that it is

12  easily understood to a person of ordinary skill in the art and that none of Genius's non-

13  infringement arguments depend on the term.  As discussed previously, neither of these are

14  sufficient reason not to construe a term that would likely not be easily understood by a lay jury.

15        Genius's construction is consistent with both the extrinsic evidence it cites and the intrinsic

16  evidence of the patents themselves.  *See, e.g.*, '454 patent, 7:4-8, Fig. 1 (describing the object- and

17  image-side surfaces of the fourth lens element of an embodiment having "at least one inflection

18  point" and showing a fourth lens element with surfaces changing from convex to concave); Ex. K,

19  McGraw-Hill, Inc., *supra*, at 1535 (defining "point of inflection" and "inflection point" as "[a]

20  point where a plane curve changes from the concave to the convex relative to some fixed line").

21  At the claim construction hearing, Largan objected to Genius's proposed claim construction on the

22  basis that "inflection point" had a precise mathematical meaning.  But if "convex" and "concave"

23  have precise mathematical meanings (as Largan does not appear to dispute), the Court does not see

24  why Genius's proposed construction of "inflection point" -- which is phrased in terms of "convex"

25  and "concave" -- is any less precise . The Court will therefore adopt Genius's proposed

26  construction with a minor change to avoid the use of the potentially confusing word "concavity."

27  The Court construes "inflection point" to mean "point at which the surface changes from concave

28  to convex or vice versa."

**E.  "meniscus in shape"**

| Asserted Claims | Largan's Construction | Genius's Construction |
|---|---|---|
| '224 patent: 11 | Plain and ordinary meaning | "convex on one surface and concave on the opposite surface and has no inflection points on either surface" |

Largan's main objection to Genius's proposed construction centers around the phrase "and has no inflection points on either surface."  Largan points out that this is inconsistent with the way the term is used in the specification of the '224 patent:  Each of the embodiments disclosed in that patent describes the third, fourth, and fifth elements as being meniscus lens elements, and yet describe the fifth lens element as having "at least one inflection point."  *See* '224 patent, 7:53-65, 9:18-30, 10:52-65; *id.* at 6:66-7:4, 8:45-90; 10:11-6.  The patent figures also show the fifth lens element as having at least one inflection point.  *See* '224 patent, Figs. 1, 3, 5.  Largan notes that under Federal Circuit precedent, "an interpretation which "excludes a [disclosed] embodiment from the scope of the claim is rarely, if ever, correct."  *Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1333 (Fed. Cir. 2013) (internal quotation omitted).

Genius argues that its interpretation does not actually *exclude* any embodiments because claim 11 of the '224 patent requires only that "at least one of the third, fourth and fifth lens elements is meniscus in shape" -- a statement that is consistent with the fifth lens element not being meniscus due to its inflection point provided that the third or fourth lens elements are meniscus.  But even if Genius's construction does not exclude any embodiments, it is certainly inconsistent with how the specification uses the term "meniscus," which is surely a strike against it.  *Merck*, 347 F.3d at 1370 ("[C]laims must be construed so as to be consistent with the specification . . . .").  And because Genius cites no evidence (intrinsic or extrinsic) for its claim that a meniscus lens can contain no inflection points, the strike is fatal.

A better construction would recognize that "convex" and "concave" are consistently used in the patents-in-suit to refer to the lens surface's properties at the optical axis.  A meniscus lens that is convex on one surface and concave on the opposite surface *at the optical axis* may have inflection points elsewhere.  The Court therefore adopts the following construction of "meniscus in shape," which is consistent with how that term is used in each of the embodiments of the '224

1   patent:  "convex at the optical axis on one surface and concave at the optical axis on the opposite

2   surface."

3   **F.  "aperture stop"**

| Term | Asserted Claims | Largan's Construction | Genius's Construction |
|---|---|---|---|
| "aperture stop" | '151 patent: 1<br>'454 patent: 1, 17<br>'224 patent: 1, 13 | Plain and ordinary meaning | "opening that determines the cone angle of a bundle of rays that pass through the optical system" |
| "stop" | '768 patent: 1, 11 | Plain and ordinary meaning | *See above.* |

10      To begin with, Largan agrees that "aperture stop" and "stop" are synonymous; the Court

11  will therefore construe them together. Dkt. No. 44 at 12.

12      The patents-in-suit show an aperture stop in a number of diagrams as an opening in the

13  lens system that limits the beam of light passing through the system.  *See, e.g.*, '454 patent, Fig. 1,

14  item 150 (showing an aperture stop before the first lens element); '768 patent, Fig. 1A, item 100

15  (showing an aperture stop between the first and second lens elements).  This is generally borne out

16  by the extrinsic evidence cited by Genius, which the Court relies on to identify, rather than to

17  limit, the meaning of the term to a person of ordinary skill in the art.  Ex. B, Smith, *supra*, at 133

18  (explaining that the aperture is a "diaphragm in front of the lens that limits the diameter of the

19  bundle of rays that the system can accept" and "will determine the diameter of the cone of energy

20  which the system will accept"); Ex. F, Shannon, *supra*, at 26 (defining aperture stop as the surface

21  on which lies the "aperture that determines the size of the bundle of rays that can pass from an

22  object point to the image surface"); Ex. G, Arthur Cox, *A System of Optical Design* 22 (W.F. Berg

23  et al. eds., 1964) ("the aperture which most severely restricts the passage of rays emanating from

24  this point is the 'aperture stop' of the system").

25      Largan does not claim that these sources are inconsistent with the plain and ordinary

26  meaning of "aperture stop"; it simply argues that Genius's proposed construction's use of terms

27  like "cone angle" is confusing.  The Court will therefore excise that term -- which appears to be

28

United States District Court
Northern District of California

extraneous -- from its construction and construe "aperture stop" and "stop" as "opening that determines the size of the bundle of rays that pass through the optical system."

## V.  CONCLUSION

For the parties' convenience, the Court repeats its constructions:

| Term | Asserted Claims | Construction |
|---|---|---|
| "convex object-side surface" | '151 patent: 1<br>'454 patent: 1<br>'224 patent: 1, 3<br>'768 patent: 1<br>'691 patent: 21 | "object-side surface that is convex where the surface intersects the optical axis." |
| "wherein an object-side surface … is convex" | '151 patent: 3 | "wherein an object-side surface … is convex where the surface intersects the optical axis." |
| "concave object-side surface" | '151 patent: 1<br>'454 patent: 1<br>'224 patent: 3<br>'768 patent: 2<br>'691 patent: 22 | "object-side surface that is concave where the surface intersects the optical axis" |
| "convex image-side surface" | '151 patent: 1<br>'224 patent: 3<br>'768 patent: 1<br>'691 patent: 22 | "image-side surface that is convex where the surface intersects the optical axis" |
| "concave image-side surface" | '454 patent: 9<br>'224 patent: 1, 2<br>'768 patent: 1, 7<br>'691 patent: 21, 22 | "image-side surface that is concave where the surface intersects the optical axis" |
| "curvature radius of the … surface of the … lens element" | '454 patent: 13 | "the radius of the circle tangent to the surface of the lens element on the concave side at the point where the surface of the lens element intersects the optical axis and having the same curvature at the point of tangency as does the surface of the lens element" |
| "radius of curvature of [a/the] … surface of the … lens element" | '224 patent: 11, 12<br>'768 patent: 10 | *See above.* |
| "refractive power" | '151 patent: 1, 5<br>'454 patent: 1, 8, 16<br>'224 patent: 1, 4, 9<br>'768 patent: 1<br>'691 patent: 21, 23 | "the degree to which a lens converges or diverges light at or near the optical axis" |
| "positive refractive power" | '151 patent: 1<br>'454 patent: 1 | "refractive power that bends the ray toward the optical axis, i.e. converges light" |

United States District Court
Northern District of California

| | '224 patent: 1, 4<br>'768 patent: 1<br>'691 patent: 21, 23 | |
| "negative refractive power" | '151 patent: 1, 5<br>'454 patent: 1, 8<br>'224 patent: 1<br>'768 patent: 1<br>'691 patent: 21, 23 | "refractive power that bends the ray away from the optical axis, i.e. diverges light" |
| "inflection point" | '454 patent: 1<br>'224 patent: 1<br>'768 patent: 1, 6<br>'691 patent: 21 | "point at which the surface changes from concave to convex or vice versa" |
| "meniscus in shape" | '224 patent: 11 | "convex at the optical axis on one surface and concave at the optical axis on the opposite surface" |
| "aperture stop" | '151 patent: 1<br>'454 patent: 1, 17<br>'224 patent: 1, 13 | "opening that determines the size of the bundle of rays that pass through the optical system" |
| "stop" | '768 patent: 1, 11 | *See above.* |
| "on the optical axis" | '768 patent: 1, 4, 5, 11<br>'691 patent: 21 | "on the axis of rotational symmetry" |
| "on-axis" | '151 patent: 2<br>'454 patent: 18<br>'224 patent: 1, 14<br>'768 patent: 4 | *See above.* |
| "focal length of the … lens element | '454 patent: 4<br>'224 patent: 7, 10<br>'768 patent: 1, 8, 9 | "effective focal length" |
| "focal length of the optical lens system" | '151 patent: 2 | *See above.* |
| "focal length of the imaging lens system" | '454 patent: 13<br>'224 patent: 1 | *See above.* |
| "focal length of the optical imaging lens system" | '768 patent: 1, 8, 9 | *See above.* |

**IT IS SO ORDERED**.

Dated: October 20, 2014

_____

JAMES DONATO
United States District Judge

23