1

2

3

4               UNITED STATES DISTRICT COURT

5              NORTHERN DISTRICT OF CALIFORNIA

6

7    LARGAN PRECISION CO, LTD,                 Case No.  13-cv-02502-JD

            Plaintiff,

8

       v.                                      **ORDER GRANTING IN PART AND**
9                                              **DENYING IN PART LARGAN'S**
                                               **MOTION TO STRIKE AND DENYING**
10   GENIUS ELECTRONIC OPTICAL CO.,            **GENIUS'S MOTION TO STRIKE**
     LTD.,
11                                             Re: Dkt. No. 172
            Defendant.

12

13         Largan, which alleges that Genius infringes some of its patents relating to optical lens

14   design, moves to strike portions of the opening expert report of Genius's expert, George

15   Barbastathis, regarding invalidity.  The Court grants this motion in part and denies it in part.

16   Genius moves to strike portions of the opening report by Largan's expert, Julie Bentley, about the

17   use of Genius's products in Motorola products.  The Court denies Genius's motion.

18                              **LEGAL STANDARD**

19         "The local patent rules in the Northern District of California … require[e] both the plaintiff

20   and the defendant in patent cases to provide early notice of their infringement and invalidity

21   contentions, and to proceed with diligence in amending those contentions when new information

22   comes to light in the course of discovery."  *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467

23   F.3d 1355, 1365-66 (Fed. Cir. 2006).  For invalidity claims, the Patent Local Rules achieve this

24   objective by requiring the party asserting invalidity to serve contentions early in the case

25   disclosing: (1) the identity of each item of prior art that allegedly anticipates each asserted claim or

26   renders it obvious, Patent L.R. 3-3(a); (2) whether each of those items of prior art anticipates each

27   asserted claim or renders it obvious, Patent L.R. 3-3(b); (3) a chart identifying where specifically

28   in each alleged item of prior art each limitation of each asserted claim is found, Patent L.R. 3-3(c);

United States District Court
Northern District of California

and any grounds of invalidity based on 35 U.S.C. § 101, indefiniteness under 35 U.S.C. § 112(2) or enablement or written description under 35 U.S.C. § 112(1) of any of the asserted claims, Patent L.R. 3-3(d).

Amendments to invalidity contentions are permitted upon a timely showing of good cause. *See* Patent L.R. 3-6.  The local rules on contentions are "not a straitjacket into which litigants are locked from the moment their contentions are served.  There is a modest degree of flexibility, at least near the outset." *Comcast Cable Comm'ns Corp., LLC v. Finisar Corp.*, No. 06-cv-04206-WHA, 2007 WL 716131, at *2 (N.D. Cal. Mar. 2, 2007).  The flip side of this flexibility in amending, however, is that "[a]ny invalidity theories not disclosed pursuant to Local Rule 3-3 are barred … from presentation at trial (whether through expert opinion testimony or otherwise)." *MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11-cv-5341-YGR, 2014 WL 690161, at *1 (N.D. Cal. Feb. 21, 2014).  A "party may not use an expert report to introduce new infringement theories, new infringing instrumentalities, new invalidity theories, or new prior art references not disclosed in the parties' infringement contentions or invalidity contentions." *ASUS Comp. Int'l v. Round Rock Research, LLC*, No. 12-cv-02099-JST (NC), 2014 WL 1463609, at *1 (N.D. Cal. Apr. 11, 2014).

For infringement contentions, the Patent Local Rules require, among other things, an identification of "each accused apparatus, product, device, process, method, act, or other instrumentality ('Accused Instrumentality') of each opposing party," Patent L.R. 3-1(b), "[a] chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality," Patent L.R. 3-1(c), and "[f]or each claim which is alleged to have been indirectly infringed, an identification of any direct infringement and a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement," Patent L.R. 3-1(d).

## DISCUSSION

## I.  LARGAN'S MOTION TO STRIKE

The portions of Dr. Barbastathis's expert report that Largan moves to strike can be grouped into four categories: (1) opinions disagreeing with the Court's conclusions on indefiniteness in its claim construction order; (2) opinions that were allegedly undisclosed in Genius's invalidity

contentions; (3) opinions regarding a prior art reference that was not elected with respect to one of the patents-in-suit; and (4) conclusory or "catch-all" opinions.  The Court analyzes the motion to strike for each of these groups.

### A.  Opinions Regarding Indefiniteness

At claim construction, Genius argued that a number of claim terms relating to the convexity, concavity, or reflective power of a lens surface were indefinite because a person of ordinary skill in the art would not know where on the lens surface to measure those quantities. Because "indefiniteness is a question of law and in effect part of claim construction," *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 517 (Fed. Cir. 2012), the Court addressed and rejected Genius's arguments in its claim construction order.  Claim Construction Order at 15, 19, Dkt. No. 142.  Nevertheless, Genius's expert, Dr. Barbastathis, opines that these claim terms are indefinite because the Court purportedly erred in construing these terms and because the terms, as construed, are still indefinite.  Dkt. No. 172-3 at 19-23.

Largan analogizes these opinions to cases that have excluded expert testimony based on incorrect claim constructions.  But the issue here is not expert testimony based on an incorrect claim construction, but rather an expert report disagreeing with the Court's ruling on a matter of claim construction itself.  The cases Largan cites are not on point.

Genius points to the true fact that the Court has not yet granted summary judgment on the issue of indefiniteness and can revisit issues of claim construction as the case progresses.[1]  *See Jack Guttman, Inc. v. Kopykake Enterprises, Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2001).  Expert testimony can, of course, be helpful in determining indefiniteness.  *See Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 655 F.3d 1364, 1380 (Fed. Cir. 2011).

---

[1] The Court's power to revisit indefiniteness at any time is strictly unilateral.  The parties may seek reconsideration only if they bring a motion that adheres to Civil Local Rule 7-9(b) and (c). The parties may not use summary judgment or other motions as stealth weapons for reconsideration, whether based on "new" expert opinions or anything else not provided for in the Local Rules.  *See Lam Research Corp. v. Schunk Semiconductor*, No. 03-cv-01335-EMC, 2014 WL 4180935, at *4 (N.D. Cal. Aug. 22, 2014) (holding that motion for summary judgment was actually an improper motion for reconsideration).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    But to be useful and fair to all parties, expert opinion must be timely under Patent Local

2   Rules 4-2 and 4-4.  These basic rules provide that expert opinions for claim construction must be

3   disclosed no more than twenty-one days after the exchange of proposed terms for construction,

4   and that any depositions relating to those opinions be completed within thirty days of the parties'

5   joint claim construction statement.  Genius's new opinions on indefiniteness did not meet these

6   deadlines.  The Court has already ruled that the Supreme Court's clarification of the indefiniteness

7   standard in *Nautilus, Inc. v. Biosig Instruments*, 134 S. Ct. 2120 (2014), does not justify new

8   expert testimony after the applicable deadline.  Dkt. No. 66.  This is especially the case where, as

9   here, the expert opinions simply rehash arguments that Genius made, and the Court rejected, at

10   claim construction.  Consequently, the untimely expert opinions regarding the indefiniteness of the

11   "convex," "concave," and "refractive power" terms will be stricken.  This includes the opinions in

12   the last paragraph of page 19, all of page 20, and the first two paragraphs of page 21.  *See*

13   Barbastathis Invalidity Expert Report, Dkt. 72 Exs. 1-1 and 1-2.

14    Genius also argues that the Court's constructions of the "convex," "concave," and

15   "refractive power" terms are themselves indefinite, and that it did not have a chance to address

16   that question before the Court issued its claim construction order.  It points out that *Nautilus*

17   overturned prior Federal Circuit decisions that held that a claim was definite if it was "amenable to

18   construction" -- suggesting that a claim that is construable may nevertheless be indefinite.  *See*

19   *Diamond Coating Techs., LLC v. Hyundai Motor America*, Nos. 8:13-cv-01480-MRP (DFMx),

20   8:13-cv-01481-MRP (DFM), 2014 WL 5698334, at *4 (C.D. Cal. Aug. 25, 2014) ("If the correct

21   construction is ambiguous such that it does not inform a person of ordinary skill of the scope of

22   the invention with reasonable certainty, the term is indefinite.").  But the construction the Court

23   adopted for these claim terms is essentially the one Largan argued for at claim construction, so

24   Genius had every opportunity to present expert opinion on the issue during the time set aside for

25   claim construction discovery.  Its failure to do that work when it had the opportunity does not

26   grant it license to proffer new opinions from its expert now.

27    Genius's position is further undermined by the fact that Dr. Barbastathis's reasons for

28   finding the Court's constructions indefinite are unconvincing.  He claims that an inflection point

4

could be placed "infinitesimally close to the optical axis," which would result in a lens surface that would be "neither convex nor concave."  Barbastathis Invalidity Expert Report at 21.  Even if true, the Court sees no reason why this would render its claim constructions indefinite.  It is indisputable that there are lens surfaces that are neither convex nor concave, like a lens surface that is entirely flat.  The construction is not indefinite just because it properly allows for the possibility of a lens surface that is not convex or concave.

Dr. Barbastathis also argues that the Court's constructions are indefinite because it could result in a situation where "advances in technology may mean that years later a new technique could provide an even closer measurement [of curvature near the optical axis] and potentially a different answer regarding infringement."  *Id.* at 22.  As a result, "one of ordinary skill in the art is left her own devices to determine whether as-manufactured lenses meet the shape and power limitations of the asserted claims of the Patents-in-Suit."  *Id.*  This argument for indefiniteness runs contrary to the Federal Circuit's admonition that "[t]he test for indefiniteness does not depend on a potential infringer's ability to ascertain the nature of its own accused product to determine infringement, but instead on whether the claim delineates to a skilled artisan the bounds of the invention."  *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1340-41 (Fed. Cir. 2005).

Consequently, Dr. Barbastathis's opinions that the Court's constructions of the "convex," "concave," and "refractive power" terms are themselves indefinite -- including the last two paragraphs of page 21, all of page 22, and page 23 until the next section -- are stricken.

## B. Allegedly Undisclosed Opinions

### 1. Anticipation Theories

Largan claims that Genius's invalidity contentions failed to disclose each of the anticipation opinions Dr. Barbastathis now includes in his report.  The Court agrees.  Patent Local Rule 3-3(b) requires that invalidity contentions disclose "[w]hether each item of prior art anticipates each asserted claim or renders it obvious."  Genius's invalidity contentions explained that "[p]rior art references listed in Exhibit B under the title 'Primary References' should be construed as anticipatory if the label '§ 102' is included after the Short Citation, and should otherwise be construed as obviousness-type references."  Genius's Invalidity Contentions at 5,

United States District Court
Northern District of California

Dkt. No. 172, Ex. 2.  The "§ 102" label was included after only two references:  the Sandback '401 reference asserted against claim 1 of the '151 patent and Park '665 reference asserted against claim 19 of the '454 patent.  *Id.* Ex. B at 1, 3.  The clear implication of Genius's statement was that apart from the assertion of those two references against those two claims (neither of which it maintains at this stage), the other references were being disclosed as obviousness references. Genius cannot transform them into anticipatory references after the fact.

Genius argues that it would be possible to glean that certain prior art references were being asserted as anticipatory from the fact that they were charted against each element of a claim.  *See, e.g.*, *id.* Exs. C2-1, C3-1.  But gleaning and guessing are not the rules patent litigants play by.  Our Local Rules are designed precisely to eliminate the gamesmanship of hints in favor of open disclosure.  It is certainly true that it might be clear that a reference is being disclosed as an obviousness reference even in the absence of an explicit statement to that effect when it is charted only against certain elements of a claim.  *Avago Technologies General IP PTE Ltd. v. Elan Microelectronics Corp.* and *Verinata Health, Inc. v. Sequenom, Inc.* stand for that proposition. *See Avago,* No. C 04-05385 JW (HRL), 2007 WL 951818, at *3 (N.D. Cal. Mar. 28, 2007); *Verinata*, No. C 12-00865 SI, 2014 WL 4100638, at *7 (N.D. Cal. Aug. 20, 2014).  It is not possible, however, to make the opposite inference:  the fact that a prior art reference is charted against each element of a claim does not necessarily mean that it is an anticipatory reference, because "[i]n appropriate circumstances, a single prior art reference can render a claim obvious." *SIBIA Neurosciences, Inc. v. Cadus Pharmaceutical Corp.*, 225 F.3d 1349, 1356 (Fed. Cir. 2000). That is especially true where, as here, Genius explicitly said those references were not anticipatory.

Genius also points to its blanket statement that "the citations in Exhibit C are exemplary and do not limit Genius's right to rely upon the entirety of the prior art references to demonstrate anticipation and/or obviousness."  Genius's Invalidity Contentions at 9.  The citations may not, but the Patent Local Rules do.  The requirement that the invalidity contentions disclose "[w]hether each item of prior art anticipates each asserted claim or renders it obvious" would be a dead letter

6

if parties could avoid it with broad disclaimers.  Dr. Barbastathis's opinions regarding anticipation are stricken.

### 2.   Citation of Mihara '528 Reference for "Aperture Stop" Element of '151 Patent

Genius's invalidity contentions listed the Mihara '528 prior art reference for each element of claim 1 of the '151 patent except "an aperture stop being located between an object to be photographed and the second lens element; in the optical lens system for taking image, the number of the lens elements with refractive power being limited to five."  Genius's Invalidity Contentions, Ex. C1-3 at 5.  Dr. Barbastathis's expert report, however, argues that this element is disclosed by Figure 3 of the Mihara '528 reference.  *See* Barbastathis Invalidity Expert Report at 58.  This fails to satisfy Patent Local Rule 3-3(c)'s requirement that the invalidity contentions include "[a] chart identifying where specifically in each alleged item of prior art each limitation of each asserted claim is found …."

Genius now argues that "Genius's Invalidity Contentions state that Mihara '528 discloses every element of Claim 1 of the '151 Patent" (which, as far as the Court can tell, is not actually true) and that "it is clear from Genius's Invalidity Contentions that Mihara '528 is central to the obviousness analysis concerning Claim 1 of the '151 Patent" (which is irrelevant to the requirements of Patent Local Rule 3-3(c)).  Genius's Opposition to Largan's Motion to Strike at 6, Dkt. No. 175.  The Court therefore strikes the portions of Dr. Barbastathis's expert report that claim that this element is disclosed by the Mihara '528 reference.

### 3.   Citation of Koichi '649 and Sandback '401 References for "Negative Refractive Power" Element of Claim 5 of the '151 Patent

Dr. Barbastathis's expert report opines that the element "the fifth lens element has negative refractive power" in claim 5 of the '151 patent is disclosed by the Sandback '401 reference "[t]o the extent Koichi '649 does not disclose [the element]."  Barbastathis Invalidity Expert Report at 49-50, 73.  Largan's invalidity contentions disclosed only the Akinaga '704 reference for this element.  *See* Invalidity Contentions, Ex. C1-2 at 4; Ex. C1-3 at 6.  Genius's response -- that the invalidity contentions cited these references with respect to "a second lens element with negative refractive power," Invalidity Contentions Ex. C1-2 at 3; C-14 at 7 -- does not reveal any disclosure

of Dr. Barbastathis's claim that these references disclose that the *fifth* lens element has negative refractive power.

Genius also argues that it is improper to strike Dr. Barbastathis's report absent a showing of prejudice to Largan due to its failure to include this theory in its invalidity contentions. Not so. *See Verinata*, 2014 WL 4100638, at *5 (striking invalidity contentions even where no prejudice was shown); *ASUS*, 2014 WL 1463609, at *8 (same). The Court strikes the portions of Dr. Barbastathis's expert report that claim that "the fifth lens element has negative refractive power" in claim 5 of the '151 patent is disclosed by the Sandback '401 reference or the Koichi '649 reference.

### 4. Citation of Park '665 Reference for "28.5<V1-V2<45.2" Limitation of Claim 11 of the '454 Patent

Dr. Barbastathis's expert report argues that the Park '665 reference, alone or in combination with other references, discloses the requirement of claim 11 of the '454 patent that the Abbe numbers of the first and second lens elements satisfy the relation $28.5<V1-V2<45.2$, where V1 is the Abbe number of the first lens element and V2 is the Abbe number of the second lens element. *See* Barbastathis Invalidity Expert Report at 86. Genius did not expressly cite the Park '665 reference with respect to this claim, and while it incorporated by reference its citations to Park '665 with respect to claim 1 of the '454 patent, it does not contend that those citations disclosed Dr. Barbastathis's theory for why the reference discloses this element of claim 11. Instead, it argues that "Park '665 is identified as disclosing Abbe numbers in certain claims." Genius's Opposition to Largan's Motion to Strike at 7. Maybe so, but that is insufficient to meet Patent Local Rule 3-3(c)'s requirement that the invalidity contentions disclose this specific Abbe number relation with respect to this specific claim. *See MediaTek*, 2014 WL 690161, at *4 (striking an expert report that used a prior art reference with respect to one asserted claim where contentions disclosed the reference with respect to another claim); *Verinata*, 2014 WL 4100638, at *7 (same). The portions of Dr. Barbastathis's expert report opining that the Park '665 reference discloses this limitation of claim 11 are stricken.

### 5. Citation of Park '665 Reference for "|V2-V3|<15" Limitation of Claim 1 and "V1-V2>30" Limitation of Claim 6 of the '224 Patent

In his expert report, Dr. Barbastathis opines that certain disclosures concerning the relationship between the Abbe numbers for the first, second, and third lenses in the Park '665 reference at 7:56-8:3 would make it "immediately apparent to one of ordinary skill in the art that the Abbe numbers for the second and third lenses could be selected such that |V2-V3|<15 as required by Claim 1 [of the '224] patent" and "disclose[] or render[] obvious the relation: V1-V2>30." Barbastathis Expert Report at 99-100, 103. Although the Park '665 reference was cited in Genius's invalidity contentions for the broader elements in which these limitations were found, the only portions of the reference that were cited were 11:22-12:67, 27:25-28:67 and Figs. 6 and 29. *See* Genius's Invalidity Contentions, C3-1 at 13. None of these portions disclose the Abbe number relationships that Dr. Barbastathis now relies on. The portions of Dr. Barbastathis's expert report that rely on the Park '665 reference to meet the "|V2-V3|<15" limitation of claim 1 of the '224 patent and the "V1-V2>30" limitation of claim 6 of the '224 patent are therefore stricken. *See Verinata*, 2014 WL 4100638, at *7-8 (striking expert report's reliance on a reference where party "did not disclose in its invalidity contention that this reference teaches that particular limitation.").

### 6. Citation of Park '665 Reference for "TTL/ImgH<1.95" Limitation of Claim 18 of the '454 Patent

With respect to claim 18 of the '454 patent, the only portions of the Park '665 reference cited by Genius in its invalidity contentions were 6:43-47 and 8:18-22. *See* Genius's Invalidity Contentions, C2-1 at 11. Dr. Barbastathis's expert report, however, cites various other portions of the Park '665 patent in arguing that it discloses or renders obvious the "TTL/ImgH<1.95" limitation of this claim. *See* Barbastathis Expert Report at 88-89. Those portions of Dr. Barbastathis's invalidity expert report are stricken.

### 7. Citation of Park '665 Reference for "1.2<f/f1<1.6" Limitation of Claim 8 of the '224 Patent

The only portions of the Park '665 reference cited with respect to claim 8 of the '224 patent were the Abstract, 5:60-62, 6:19-20, 27:25-28:67, and Fig. 29. *See* Genius's Invalidity Contentions C3-1 at 1213. But Dr. Barbastathis now relies on other portions of the Park '665

reference to argue that it discloses or renders obvious an f/f1 ratio in the range required by claim 8 of the '224 patent. *See* Barbastathis Invalidity Expert Report at 105-06. The portions of Dr. Barbastathis's expert report that do so are stricken.

### 8. Citation of Shinohara '829 Reference for "inflection point … on … the third lens elements" Element of Claim 6 of the '768 Patent

In his expert report, Dr. Barbastathis argues that to the extent the Kwon '111 reference does not disclose "at least one inflection point formed on at least one surface of the object-side and image-side surfaces of the third lens elements," it would have been obvious to a person of ordinary skill in the art. Barbastathis Invalidity Expert Report at 124. As evidence, he cites paragraph 105 of the Shinohara '829 reference, which discusses a fifth lens element that is concave near the optical axis and convex in the peripheral portion, and thus necessarily contains an inflection point. *See id.* The Shinohara '829 reference explains that this makes it possible to correct image field curvature and obtain high resolution performance. *See id.* According to Dr. Barbastathis, this would convey the benefits of including an inflection point in the *third* lens element to a person of ordinary skill in the art. *See id.* Paragraph 105 of the Shinohara '829 reference was not cited for this limitation in Genius's invalidity contentions. Invalidity Contentions, Ex. C4-1 at 18.

Genius argues that Dr. Barbastathis's references to paragraph 105 of the Shinohara '829 reference should not be stricken because he is using it only as background material. The cases it cites in support, however, dealt with references that were cited as general background, rather than in support of a particular claim element being anticipated or obvious. *See Verinata*, 2014 WL 4100638, at *5 (striking reference "to the extent that [expert] relies on it as prior art that allegedly renders the asserted claims of the … patents obvious"); *Genentech, Inc. v. Trustees of the University of Pennsylvania*, No. C-2037 LHK (PSG), 2012 WL 424985, at *3 (N.D. Cal. Feb. 9, 2012) (permitting the use of references solely as "background" and not as prior art). By contrast, Dr. Barbastathis references paragraph 105 of the Shinohara '829 reference not in his background section, but as an example of a reference that teaches the benefits of the selective aberration compensation provided by an inflection point and that would motivate modifying the Kwon '111 reference to include an inflection point on a surface of the third lens element. That is not

1   background; it is asserted prior art.  The portions of Dr. Barbastathis's expert report relying on the

2   Shinohara '829 reference with respect to this claim are stricken.

3       **9. Citation of Kwon '111 Reference for "$0.28 \leq f/f1-f/f4 < 1.5$" Limitation of Claim 1 of the '768 Patent, "$0.9 < T23/CT2 < 2.0$" Limitation of Claim 4 of the '768 Patent, and "$0.3 < R1/R2 < 0.3$" Limitation of Claim 10 of the '768 Patent**

4

5       In its invalidity contentions, Genius cited the Kwon '111 at 2:27-5:47 with respect to the

6   "$0.28 \leq f/f1-f/f4 < 1.5$" limitation of claim 1 of the '768 patent (as well as every other element of that

7   claim).  *See* Genius's Invalidity Contentions, Ex. C4-1 at 17.  Genius also cited the same four-

8   column passage from the Kwon '111 reference with respect to the "$0.9 < T23/CT2 < 2.0$" limitation

9   of claim 4 of the '768 patent and the "$0.3 < R1/R2 < 0.3$" limitation of claim 10 of the '768 patent.

10  *See id.* at 18.  In his invalidity expert report, Dr. Barbastathis cites to a subset of the text it cited in

11  its invalidity contentions -- 3:37-44 -- as meeting these limitations.  *See* Barbastathis Invalidity

12  Expert Report at 118.  Largan argues that this citation was too broad to give it notice of its

13  invalidity theory.  But if Largan found the citation to be too broad, it should have asked Genius for

14  more specificity before the close of discovery and -- if necessary -- sought intervention from the

15  Court, instead of moving to strike Genius's expert report after the fact.  *See Fenner Invs., Ltd. v.*

16  *Hewlett-Packard Co.*, No. 6:08-cv-273, 2010 WL 786606, at *3 (E.D. Tex. Feb. 26, 2010) ("If

17  Defendants were unclear as to the scope of the contentions, it was their responsibility to work with

18  Plaintiff, informally or through motion practice, to clarify the issue.").

19      Largan also argues that the passage cited by Dr. Barbastathis is too generic, and relies on a

20  person of ordinary skill in the art making certain "design choices" in addition to using the

21  disclosure from the Kwon '111 patent.  If so, that simply goes to the strength of Dr. Barbastathis's

22  opinions -- not their admissibility.  The Court denies Largan's motion with respect to the portions

23  of Dr. Barbastathis's expert report that rely on the Kwon '111 reference to argue that these claim

24  limitations are invalid.

25      **10. Citation of Shinohara '611, Sano '133, and Tsai '709 References for "$1.80mm < TTL < 3.20mm$" Limitation of Claim 21 of the '691 Patent**

26

27      With respect to the "$1.80mm < TTL < 3.20mm$" of claim 21 of the '691 patent, Dr.

28  Barbastathis, while conceding that the Shinohara '611, Sano '133, and Tsai '709 references

United States District Court
Northern District of California

1    disclose TTLs outside the claimed range, argues that the claimed TTL range would be obvious in

2    light of the disclosure of these references.  *See* Barbastathis Invalidity Expert Report at 143, 157,

3    170.  Largan does not dispute, however, that Genius cited the applicable ranges in its invalidity

4    contentions.  To the extent Dr. Barbastathis now presents additional explanation as to why the

5    language cited in the invalidity contentions, in his opinion, renders obvious the claimed TTL

6    range, that is consistent with the fact that expert reports are meant to provide more detail than

7    contentions.  *See Digital Reg of Texas, LLC v. Adobe Systems Incorporated*, No. CV 12-01971-

8    CW (KAW), 2014 WL 1653131, at * 5 (N.D. Cal. Apr. 24, 2014) ("In patent litigation, expert

9    reports are expected to provide more information than is contained in infringement contentions.").

10   Largan's motion to strike the use of the Shinohara '611, Sano '133, and Tsai '709 references with

11   respect to claim 21 of the '691 patent is denied.

12       **C.  Assertion of Tsai '709 Reference Against '151 Patent**

13           Largan argues that Genius did not identify the Tsai '709 reference in its elections of prior

14   art against the '151 patent.  Genius has now represented that it will not rely on the Tsai '709

15   reference with respect to the '151 patent.  *See* Genius's Opposition to Largan's Motion to Strike at

16   10.  The issue is therefore moot.

17       **D.  "Catch-All" Citations to Prior Art References**

18           With respect to the '151 patent, Dr. Barbastathis, in three different places in his expert

19   reports, cites the Park '665, Kwon '111, Sano '854, and Tsai '709 references without any pincites

20   or further explanation:

21                   Examples include U.S. Patent No. 7,710,665 to Park ("Park '665"),
                     U.S. Patent No. 8,503,111 to Kwon ("Kwon '111"), U.S. Patent No.
22                   7,755,854 to Sano ("Sano '854"), and U.S. Patent Application
                     Publication No. 2010/0097709 to Tsai ("Tsai '709").
23
     Barbastathis Invalidity Expert Report at 34, 45, 60.

24           In addition, he lists a number of other references and follows them with a catch-all

25   disclaimer:  "It is my opinion that, in addition to the specific references and combinations

26   discussed in detail below, any single reference or combination of prior art references listed in this

27   section that includes all the limitations of a given asserted claim of the [Name of Patent] Patent

28

United States District Court
Northern District of California

would anticipate under § 102 or render the claim obvious under § 103."  *Id.* at 27, 75, 90, 107, 133.

Consistent with Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, Dr. Barbastathis will not be permitted to express any invalidity opinions that were not specifically disclosed in his expert report.  The above-quoted portions of Dr. Barbastathis's report are likely insufficient to support any invalidity opinions regarding those references, but the Court will decide that question when Genius attempts to offer testimony from Dr. Barbastathis based on those sections of his report.

## II. GENIUS'S MOTION TO STRIKE

Genius's motion to strike portions of the opening expert report of Julie Bentley raises a simpler issue:  Is Dr. Bentley precluded from opining that the use of Genius lens products in Motorola products is infringing?

The parties spend much of their briefing rehashing previous discovery disputes, but Patent Local Rule 3-1 resolves the dispute without requiring the Court to sort out who should have disclosed what and when they should have done it.  Patent Local Rule 3-1(d) governs the disclosure required when the defendant is accused of indirect infringement premised on the direct infringement of a third party.  Nothing in that rule clearly requires the identification of specific third-party infringers.  *See Vigilos LLC v. Sling Media Inc.*, No. C-11-04117 SBA (EDL), 2012 WL 9973147, at *6 (N.D. Cal. Jul. 12, 2012) ("Plaintiff shall also include additional information regarding indirect infringement as required by Local Rule 3-1(d), although Plaintiff need not identify specific third parties that directly infringed."); *DCG Sys. v. Checkpoint Techs., LLC*, C 11-03792 PSG, 2012 WL 1309161, at *2 (N.D. Cal. Apr. 16, 2012) ("Checkpoint has identified no case requiring a disclosure under Rule 3-1(d) of the specific third party committing any underlying act of direct infringement.").

Genius's retort is lawyerly invention rather than sound argument.  It claims that cases like the two cited in the previous paragraph predate the Supreme Court's decision in *Limelight Networks, Inc. v. Akamai Techs.*, which held that a defendant is not liable for inducing infringement "when no one has directly infringed the patent under § 271(a) or any other statutory

United States District Court
Northern District of California

provision."  134 S. Ct. 2111, 2115 (2014).  But even if *Limelight* were relevant to the amount of disclosure required under the Patent Local Rules, it simply restored the *status quo ante*:  prior to the overturned Federal Circuit opinion below, the rule had been (as it is now) that "in order for a party to be liable for induced infringement, some other single entity must be liable for direct infringement."  *Akamai Techs, Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1306 (Fed. Cir. 2012) (en banc), *rev'd*, 134 S. Ct. at 2115 (explaining that it was reconsidering and overruling the prior Federal Circuit precedent of *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373 (Fed. Cir. 2007)).  Thus, the rule regarding indirect infringement when *Vigilos* and *DCG* were decided is the same as it is now; *Akamai* does not in any way detract from their persuasiveness.

Largan was unquestionably entitled to rely on prior decisions of courts in this district that did not impose specific third-party disclosure, and that is enough to preclude striking its expert report at this late stage.  The Court reserves the question of whether Patent Local Rule 3-1(d) imposes broader disclosure requirements until it is faced with a case where a party moves to compel more detailed infringement contentions during the fact discovery period.  *See DCG*, 2012 WL 1309161, at *2 n.17 ("In at least two cases, the Federal Circuit has suggested that an identification of specific direct infringers is not required to prevail on indirect infringement claims. … Whether that would be true in this case remains an issue for perhaps another day.").

IT IS SO ORDERED.

Dated:  December 5, 2014

_____
JAMES DONATO
United States District Judge