REDACTED

LARGAN PRECISION CO., LTD.'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT THAT THE ACCUSED
PRODUCTS INFRINGE THE
ASSERTED CLAIMS OF THE
PATENTS IN SUIT

John P. Schnurer, Bar No. 185725
JSchnurer@perkinscoie.com
Joseph P. Reid, Bar No. 211082
JReid@perkinscoie.com
Michael J. Engle, Bar No. 259476
MEngle@perkinscoie.com
John D. Esterhay, Bar No. 282330
Jesterhay@perkinscoie.com
PERKINS COIE LLP
11988 El Camino Real, Suite 350
San Diego, CA  92130-2594
Telephone:  858.720.5700
Facsimile:  858.720.5799

Attorneys for Plaintiff
LARGAN PRECISION CO., LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LARGAN PRECISION CO., LTD.,<br><br>            Plaintiff,<br><br>    v.<br><br>GENIUS ELECTRONIC OPTICAL CO., LTD.,<br><br>            Defendant. | Case No. CV-13-2502-JD<br><br>**PLAINTIFF LARGAN PRECISION CO., LTD.'S MOTION FOR PARTIAL SUMMARY JUDGMENT THAT THE ACCUSED PRODUCTS INFRINGE THE ASSERTED CLAIMS OF THE PATENTS-IN-SUIT**<br><br>Date:       January 22, 2015<br>Time:      9:30 am<br>Place:     Courtroom 11, 19th Floor<br><br>Hon. James Donato |

# **Table of Contents**

**Page**

NOTICE OF MOTION ................................................................................................ 1

STATEMENT OF RELIEF ....................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

I.      INTRODUCTION ......................................................................................... 1

II.     STATEMENT OF THE ISSUES TO BE DECIDED ................................... 2

III.    STATEMENT OF RELEVANT FACTS ...................................................... 3

        A.    The Accused Products ........................................................................ 3

        B.    Genius's Sales Process ...................................................................... 3

              1.    Apple ...................................................................................... 4

              2.    Motorola ................................................................................. 5

IV.     LEGAL STANDARDS ................................................................................ 6

        A.    Summary Judgment ........................................................................... 6

        B.    Direct Infringement ........................................................................... 6

        C.    Indirect Infringement ........................................................................ 6

V.      ARGUMENT ................................................................................................ 7

        A.    Genius Has Directly Infringed the Non-Sensor Claims of the
              Patents-in-Suit with the GS-8662 v.4, GS-8656, GS-8689, and
              GS-8740 Lenses. ................................................................................ 7

              1.    Genius Does Not Dispute that Its Accused Products Meet
                    All Claim Limitations of the Sensor-Free Claims. .................. 7

              2.    Genius Has Offered For Sale, Sold, and Imported Its
                    Accused Products in the United States ..................................... 8

        B.    Genius Has Contributed to Infringement of the Claims Requiring
              an Image Sensor with the GS-8662 v.4, GS-8662 v.1, GS-8656,
              GS-8648, GS-8615, and GS-8627 Lenses. ...................................... 15

              1.    Genius Does Not Dispute That Its Accused Products Meet
                    All Claim Limitations Other Than the Image Sensor. ........... 15

              2.    There Is No Genuine Issue of Material Fact that the
                    Accused Genius Products Must Be Used with an Image
                    Sensor. ................................................................................... 16

LEGAL124118201.3

3.   Genius Has Known the Accused Products Potentially
     Infringe the Patents-in-Suit Since at Least April 2, 2013. ...................... 18

4.   Genius Has Offered For Sale, Sold and Imported Its
     Accused Products in the United States....................................................... 18

C.   Genius Has Induced Infringement with All Accused Genius
     Lenses By Intending or Being Willfully Blind to the Infringing
     End  Products Being Sold, Offered for Sale, Imported, and Used
     In the United States. ...................................................................................... 20

1.   Direct Infringement Under § 271(a) Has Occurred Due to
     Apple and Motorola, Their Retailers and Resellers, and
     Their Customers Selling, Offering for Sale, Importing,
     and Using in the United States Apple and Motorola
     Products Incorporating the Accused Genius Lenses.............................. 20

2.   Genius Has Known the Accused Products Potentially
     Infringe the Patents-in-Suit Since at Least April 2, 2013. ...................... 22

3.   Genius Actively Encourages Apple and Motorola to
     Infringe by Selling Them the Accused Products. ................................... 23

D.   Genius Has Failed to Pursue its License Defense. ............................................... 25

VI.   CONCLUSION............................................................................................................ 25

LEGAL124118201.3

## Table of Authorities

CASES

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) .................................................................................................6

*Bowman v. CMG Mortgage Inc.*,
    No. C 07-03140 SI, 2008 WL 3200662 (N.D. Cal. Aug. 4, 2008) ...........................10

*Brobeck, Phleger & Harrison v. Telex Corp.*,
    602 F.2d 866 (9th Cir. 1979) .................................................................................10

*Carson v. Mercury Ins. Co.*,
    210 Cal. App. 4th 409 (2012) ................................................................................10

*Clarendon Nat. Ins. Co. v. Ins. Co.*,
    442 F. Supp. 2d 914 (E.D. Cal. 2006) ...................................................................10

*Devereaux v. Abbey*,
    263 F.3d 1070 (9th Cir. 2001) ...............................................................................25

*DSU Med. Corp. v. JMS Co.*,
    471 F.3d 1293 (Fed. Cir. 2006) .............................................................................23

*Fox v. Citicorp Credit Servs., Inc.*,
    15 F.3d 1507 (9th Cir. 1994) .................................................................................25

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    131 S. Ct. 2060 (2011) ............................................................................6, 20, 22, 24

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
    769 F.3d 1371 (Fed. Cir. 2014) .......................................................................passim

*Halo Elecs., Inc. v. Pulse Eng'g, Inc.*,
    810 F. Supp. 2d 1173 (D. Nev. 2011), *aff'd*, 769 F.3d 1371 (Fed. Cir. 2014) ..........24

*i4i Ltd. P'ship v. Microsoft Corp.*,
    598 F.3d 831 (Fed. Cir. 2010), *aff'd*, 131 S. Ct. 2238 (2011) .................................18

*Karlin Tech., Inc. v. Surgical Dynamics, Inc.*,
    177 F.3d 968 (Fed. Cir. 1999) .................................................................................6

*Lucas Aerospace, Ltd. v. Unison Indus., L.P.*,
    899 F. Supp. 1268 (D. Del. 1995) .........................................................................21

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009) ..........................................................................6, 21

LEGAL124118201.3

*Mallinckrodt, Inc. v. Medipart, Inc.*,
    976 F.2d 700 (Fed. Cir. 1992) ..................................................................................11

*MediaTek Inc. v. Freescale Semiconductor, Inc.*,
    No. 11-CV-5341 YGR, 2014 WL 580836 (N.D. Cal. Feb. 13, 2014) ...................12, 13, 14, 20

*Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*,
    370 F.3d 1354 (Fed. Cir. 2004) ..............................................................................21

*MGM Studios, Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005) ..............................................................................................20

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Argonaut Ins. Co.*,
    701 F.2d 95 (9th Cir. 1983) ...................................................................................10

*Nedlloyd Lines B.V. v. Superior Court*,
    3 Cal. 4th 459 (1992) ......................................................................................10, 11

*Playtex Prods., Inc. v. Procter & Gamble Co.*,
    400 F.3d 901 (Fed. Cir. 2005) ..................................................................................7

*Semiconductor Energy Lab. Co. v. Chi Mei Optoelecs. Corp.*,
    531 F. Supp. 2d 1084 (N.D. Cal. 2007) ...............................................................21, 22

*Sierra Applied Scis., Inc. v. Advanced Energy Indus., Inc.*,
    363 F.3d 1361 (Fed. Cir. 2004) ................................................................................9

**STATUTES**

35 U.S.C. § 271(a) .........................................................................................6, 9, 20

35 U.S.C. § 271(b) .................................................................................................6

35 U.S.C. § 271(c) ....................................................................................15, 17, 18

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 56 ........................................................................1, 6

SUMMARY JUDGMENT ON INFRINGEMENT
Case No. CV-13-2502-JD

LEGAL124118201.3

## NOTICE OF MOTION

Plaintiff Largan Precision Co., Ltd. ("Largan") will appear before the Honorable James Donato on January 22, 2015 at 9:30 a.m. and move this Court pursuant to Federal Rule of Civil Procedure 56 for partial summary judgment that the Accused Products infringe the asserted claims of the Patents-in-Suit.  This motion is based upon the accompanying memorandum of points and authorities and the Declarations of John D. Esterhay and Julie Bentley, and their exhibits.

## STATEMENT OF RELIEF

Largan respectfully requests the Court grant summary judgment that Genius's Accused Products infringe the asserted claims of the Patents-in-Suit.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Largan has maintained since filing its Complaint over eighteen months ago that its competitor Genius was infringing at least five of its patents related to optical lens design.[1] Although obtaining even basic discovery from Genius has proven more difficult than Largan ever expected,[2] Largan has nevertheless collected more than enough information to demonstrate conclusively that Genius is actively copying Largan's designs for lenses Genius sells to their mutual customers Apple and Motorola.  Indeed, so overwhelming is the technical proof of infringement that Genius chose not to have its technical expert, Dr. George Barbastathis, even review the technical files specifying the attributes of Genius's accused products.

Instead, Genius asked Dr. Barbastathis to provide non-infringement "opinions" concerning legal issues such as whether conduct has occurred "in the United States" for purposes of patent law, and Genius's level of knowledge and intent.  But Dr. Barbastathis is not only unqualified to

---

[1] U.S. Patent Nos. 7,826,151 ("the '151 Patent") (D.I. 1, Ex. A); 7,864,454 ("the '454 Patent") (D.I. 1, Ex. B); 8,233,224 ("the '224 Patent") (D.I. 1, Ex. C); 8,310,768 ("the '768 Patent") (D.I. 1, Ex. D); and 8,395,691 ("the '691 Patent") (D.I. 1, Ex. E) (collectively, the "Patents-in-Suit").

[2] Genius's unwillingness to produce documents and information has forced Largan to file four motions to compel or motions to amend its Infringement Contentions.  Even as this brief is being filed, Largan is still struggling to absorb and analyze the more than 70,000 pages of documents Genius has produced since the October 24, 2014 close of fact discovery in contravention of the Court's orders.  That page figure is double the 37,437 pages Genius produced during the discovery period, 12,900 of which related solely to prior art for Genius's Invalidity Contentions.

usurp the Court's role with respect to such legal questions, his deposition also revealed he has not even reviewed the documents or deposition transcripts necessary to reach that conclusion.

The record here is clear:

- Genius does not dispute that the accused Genius lenses used in Apple and Motorola products meet each and every limitation of every asserted claim.

- Genius has contractually agreed with Apple that ███████████████████████████████ ███████████████████████████

- Genius has ████████████████████████████████████████ ██████████.

- Apple and Motorola sell products incorporating the accused Genius lenses in the U.S.

- Genius sells the accused products to the Apple and Motorola supply chains knowing that Apple and Motorola products incorporating the accused Genius lenses will be sold in the United States.

- Genius negotiates the prices for the accused products with ████████████████ ████████████████████████████████████.

- The accused products need to be used with an image sensor to work, Genius designs its products for a specific sensor design, and the accused products in fact are used with an image sensor in Apple and Motorola's products.

- Genius's ongoing claims that it never importing the accused products into the United States, and that it did not know of the Patents-in-Suit prior to Largan's notice letter, have been shown to contradict direct documentary and deposition evidence.

- Despite now conceding its accused lenses, as used in Apple and Motorola products, meet every element of every asserted claim, Genius is continuing to selling millions of infringing products without taking any action to avoid infringement.

This record unequivocally establishes that Genius directly or indirectly infringes all ten claims Largan is asserting.[3]  Given that no factual disputes exist, the Court is well-positioned to apply the law and issue summary judgment in Largan's favor.

## II.   STATEMENT OF THE ISSUES TO BE DECIDED

Whether any genuine issue of material fact exists that the Accused Products infringe the asserted claims of the Patents-in-Suit.

---

[3] Pursuant to the Court's Orders, Largan reduced the number of asserted claims to ten: Claims 3 and 5 of the '151 Patent, Claims 11 and 18 of the '454 Patent, Claims 6 and 8 of the '224 Patent, Claims 4 and 10 of the '768 Patent, and Claims 23 and 25 of the '691 Patent.

III.    **STATEMENT OF RELEVANT FACTS**

A.    **The Accused Products**

Largan and Genius directly compete in the imaging lens market, each supplying lenses to companies like Apple and Motorola for incorporation into mobile phones and tablets.  This case involves eight Genius lenses which infringe the Patents-in-Suit (the "Accused Products").  The customers of the Accused Products are also relevant to this case:  seven lenses are sold to Apple and one is sold to Motorola.  The table below summarizes the Accused Products, the end products incorporating them, the claims they infringe (with claims including a sensor in ***bold italics***), and the Bentley Infringement Report exhibit containing the claim chart for that product.[4]

| Genius Model | Customer | End Product | Patent | Claims | Exhibit |
|---|---|---|---|---|---|
| GS-8662 v.4 | Apple | | 151 | 3, 5 | A |
| | | | 454 | 11, *18* | B |
| GS-8689 | Apple | | 224 | 6, 8 | C |
| GS-8740 | Apple | | 224 | 6, 8 | D |
| GS-8656 | Apple | | 224 | 6, 8 | E |
| | | | 768 | *4, 10* | F |
| GS-8662 v.1 | Apple | | 768 | *4, 10* | G |
| GS-8615 | Apple | | 691 | *23, 25* | H |
| GS-8648 | Apple | | 691 | *23, 25* | J |
| GS-8627 | Motorola | | 691 | *23, 25* | I |

B.    **Genius's Sales Process**

Because this case's infringement allegations implicate Genius's sales to Apple and

---

[4] Ex. 1, 5th Supp. Resp. to Largan 1st Interrogatories, at 9-11; Ex. 2, Leopold Suppl. Decl. ¶ 3; Ex. 3, MMLLC_Largan000392; Ex. 6, Bentley Infringement Rep. at 20; 27; Ex. 7, Exs. A-J to Bentley Infringement Rep.

SUMMARY JUDGMENT ON INFRINGEMENT
Case No. CV-13-2502-JD

LEGAL124118201.3

1   Motorola, Genius's sales process is highly relevant.  Genius sells its lenses to Apple and Motorola

2   by similar procedures.

           **1.**      **Apple**

4        Apple is especially important to this case because Genius and Largan are Apple's only two

5   lens suppliers for the implicated Apple products.[5]  Thus each Genius lens sold to Apple means one

6   less sold by Largan, and vice versa.  (Ex. 4, Bone Dep. at 181:9-182:18; Ex. 5, Whitehead Dep. at

7   320:17-323:20.)  Apple and Genius each have a ███████████████████████████████████████

8   ████████████████████████████████████████████████████████████████████████████████████

9   ████████████████████████████████████████████ (Ex. 8, GSEO

10  00028064, at 24.)  Genius's obligations under the ███████████████████████████████████

11  ████████████████████████████████████████████████████████████████████████████████

12  █████████████████████████████████████████████████████." (*Id.* ¶ 16.11

13  (emphasis added).).

14       For the seven accused lenses sold to Apple, Genius has followed a standardized

15  development and sale procedure. ████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████████████████████

17  █████████████████████████████████████████████████████████████████

18  ███████████████████████████████████████████████████████████████

19  ██

20  ██████████████████████████████████████████████████████████████████████

21  ██████████████████████████████████████████████████████

22  ███████████████████████████████████████████████████████

23

24  ─────────────────────────
   [5] ████████████████████████████████████████████████████████████████████████████

25  ████████████████████████ (Ex. 2, Leopold Suppl. Decl. ¶ 4.)

26  [6] *See* Ex. 10, Bone Dep. Ex. 426, at 9 (GS-8662 lens); Ex. 11, Bone Dep. Ex. 427, at 7 (GS-8662 lens); Ex. 12, Bone Dep. Ex. 428, at 7 (GS-8656 lens); Ex. 13, Bone Dep. Ex. 429, at 8 (GS-8656

27  lens); Ex. 14, Bone Dep. Ex. 430, at 8 (GS-8648 lens); Ex. 15, Bone Dep. Ex. 431, at 7 (GS-8648 lens); Ex. 16, Bone Dep. Ex. 518 (GS-8615 lens); Ex. 17, GSEO 00043543 (GS-8689 lens); Ex.

28  18, GSEO 00045776 (GS-8740 lens).

1    ████████████████████████████████████████████████████████

2    ██████████████████████████████████████

3       ████████████████████████████████████████████████████

4    ██████████████████████████████████████████████████████████

5    ███████████████████████████████████████████████████

6    █████████████████████████████████████████████████████████

7    █████████████████████████████████████████████████████████

8    ██████████████████████████████████████████████████

9    ██████████████████████████████████████████████████

10   ██████████████████████████████████████████████████

11   █████████████████████████████████████████████████████████

12   █████████████████████████████████████████████████████████

13   ██████████████████████████████████████████████████

14   ████████████████████████████████████████████████████

15   ████████████████████████████████████████████

16          2.    **Motorola**

17          Although Largan lacks key documents about Motorola because Genius has improperly

18   withheld them from production while they are reviewed by Motorola, Genius witnesses have

19   testified that the Motorola sales process is substantively similar to Apple.  (Ex. 9, Mack-Mumford

20   Dep. at 60:1-64:2; Ex. 5, Whitehead Dep. at 102:22-108:19.) ████████████████████████

21   ███████████████████████████████  (*See, e.g.*, Ex. 24, GSEO 00088660.)

---

22   [7] *Compare* Ex. 1, Genius 5th Supp. Resp. to Largan 1st  Interrogatories at 17 (Oct. 24, 2014)

23   (████████████████████████████████████████████████████████████

24   ████ 15, 16, 18, 19, 27-28 (all same); Ex. 9, Mack-Mumford Dep. Tr. 110:13-18
     ████████████████████████████████████ ████████████████████ ███████████"), *with* Ex. 25,
     GSEO 00024743 (████████████████████████████████████████ Ex. 26, GSEO 00059789;

25   Ex. 27, GSEO 00081933; Ex. 28, GSEO 00084818; *see also* Ex. 29, Barbastathis Rebuttal Report

26   at 16.
     [8] One of the Accused Products sold to Apple, GS-8615, ████████████████████████████

27   ██████████████████████████████████████████████████████████

28   ██████████████████████████████████████████████████████

LEGAL124118201.3

## IV.   LEGAL STANDARDS

### A.   Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.  A factual dispute is material only if it might affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Whether a genuine issue of material fact exists will be determined by asking if a reasonable jury could return a verdict for the non-moving party.  *Id.*

### B.   Direct Infringement

For direct infringement, § 271(a) of the patent statute provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention…infringes the patent."  35 U.S.C. § 271(a).  Determination of direct patent infringement requires a two-step analysis.  *Karlin Tech., Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 971 (Fed. Cir. 1999).  First, a claim of the patent is construed; then the accused device is compared to the properly-construed claim.  *Id.*

### C.   Indirect Infringement

Even where an entity does not directly infringe, it can still indirectly infringe if it induces or contributes to someone else's direct infringement.  "Whoever actively induces infringement of a patent shall be liable as an infringer."  35 U.S.C. § 271(b).  In contrast, a party is liable for contributory infringement if it "offers to sell or sells within the United States or imports into the United States" a component used in the claimed method or system that: (1) is a "material part" of the invention; (2) where the indirect infringer knows that the component is "especially made or especially adapted for use in an infringement"; and (3) where the component is not a "staple article" of commerce "suitable for substantial noninfringing use."  *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009) (quoting 35 U.S.C. § 271(c).)  Both induced and contributory infringement require "knowledge of the existence of the patent that is infringed."  *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011).

## V.   ARGUMENT

### A.   Genius Has Directly Infringed the Non-Sensor Claims of the Patents-in-Suit with the GS-8662 v.4, GS-8656, GS-8689, and GS-8740 Lenses.

For the five claims that do not require an image sensor,[9] it is undisputed "that every claim limitation is found in the accused device." *Playtex Prods., Inc. v. Procter & Gamble Co.*, 400 F.3d 901, 909 (Fed. Cir. 2005). There also is no genuine issue of material fact that Genius has offered for sale, sold, and imported at least the GS-8662 v.4, GS-8656, GS-8689, and GS-8740 into the United States, so the Court should grant summary judgment that Genius has directly infringed the claims that do not require an image sensor by offering for sale, selling, or importing the GS-8662 v.4, GS-8656, GS-8689, and GS-8740 lenses.

### 1.   Genius Does Not Dispute that Its Accused Products Meet All Claim Limitations of the Sensor-Free Claims.

The Infringement Report of Dr. Julie Bentley lays out in detail how each of the Accused Products meets the limitations of the asserted claims of the Patents-in-Suit, as construed by the Court in its Claim Construction Order. (*See* Ex. 7, Bentley Infringement Report at Exhibits A-J; D.I. 142.) Dr. Barbastathis's Rebuttal Report does not—and cannot—dispute that the non-sensor claim limitations of the Patents-in-Suit are met by the Accused Products. (*See* Ex. 29, Barbastathis Rebuttal Report at 13-18.) In fact, in his deposition, Dr. Barbastathis admitted to

████████████████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████. (Ex. 31, Barbastathis Dep. Tr. 144:4-14, 14:16-18, 16:3-8, 21:2-14, 142:23-143:13.) Since five of the asserted claims do not require an image sensor, there is therefore no genuine dispute that the Accused Products meet each and every limitation of these claims.

The table on the right summarizes the sensor-free claims that each accused Genius product directly infringes as well as which exhibit is a claim chart demonstrating that infringement.

| Direct Infringement | | | |
|---|---|---|---|
| Genius Model | Patent | Claims | Exhibit |
| GS-8662 v.4 | 151 | 3, 5 | A |
| | 454 | 11 | B |
| GS-8689 | 224 | 6, 8 | C |
| GS-8740 | 224 | 6, 8 | D |
| GS-8656 | 224 | 6, 8 | E |

---

[9] '151 Patent Claims 3 and 5; '454 Patent Claim 11; '224 Patent Claims 6 and 8.

SUMMARY JUDGMENT ON INFRINGEMENT
Case No. CV-13-2502-JD

As discussed above, Genius's technical expert has not identified any claim element missing for these products, and the only elements identified in Genius's interrogatory response on non-infringement contentions have to do with the "convex," "concave," and "refractive power" terms the Court already found "not indefinite" in its claim construction order.  (Ex. 1, Genius 5th Supp. Resp. to Largan 1st Interrogs., at 20 (Oct. 24, 2014); D.I. 142.)  Given that the Court has already rejected Genius's indefiniteness arguments, the evidence shows there is no genuine dispute that these products meet every limitation of the asserted claims.

### 2. Genius Has Offered For Sale, Sold, and Imported Its Accused Products in the United States.

Since Genius does not and cannot dispute that the Accused Products practice the non-sensor claims of the Patents-in-Suit as a technical matter, its only real defense concerns whether its actions occurred "in the United States."  But Genius openly acknowledges that it has directly imported samples of the Accused Products into the United States.  And Genius has contracted with Apple that all of its Apple-related activities are presumed to occur in California.

### a. Genius Cannot Dispute that It Imported the GS-8662 v.4, GS-8656, and GS-8740 Into the United States.

Importation is directly infringing conduct, and Genius has now admitted through both documents and its expert that it has imported samples of the Accused Products into the U.S.

On the very last day of discovery—three days *after* Largan deposed Genius's Rule 30(b)(6) witness on this issue—Genius supplemented its response to Interrogatory No. 7 to

8

1   ██████████████████████████████████████████████████████████.)[10]

2         Genius's only conceivable "defense" to these clear admissions would be to say that they

3   contradict Genius's own earlier incomplete and inaccurate discovery responses.  For example,

4   despite Largan's calls to do so, Genius has never altered the text of its response to Interrogatory

5   Nos. 3, 7, and 9 that it "████████████████████████████████████████.[11]  (Ex. 1,

6   Genius 5th Supp. Resp. at 15-17; 27-28; 31.)  Nor has Genius attempted to retract or correct the

7   testimony of its Rule 30(b)(6) designee on this topic, who stated that ████████████████

8   ████████████████████.  (Ex. 9, Mack-Mumford Dep. Tr. at 110:13-18 (Oct. 21, 2014).)

9   Nevertheless, given the timeline of importation admissions, Largan submits that these shipping

10  documents and Dr. Barbastathis's admissions should supersede Genius's earlier claims to the

11  contrary.  Indeed, if anything, the timing of all this suggests Genius deliberately withheld these

12  documents to prejudice Largan's case and prevent it from effectively questioning Genius's

13  30(b)(6) witness.  The late production also begs the question whether Genius's production is

14  actually complete, or whether other records of importation exist that Genius is withholding.[12]

15        In the face of this record, Largan believes it is entitled to summary judgment.  While the

16  number of samples shipped to the United States may only be in the hundreds of units, Genius still

17  "imports into the United States" these samples and therefore directly infringes under 35 U.S.C.

18  § 271(a) with respect to at least the GS-8662 v.4, GS-8656, and GS-8740 products.  *See, e.g.*,

19  *Sierra Applied Scis., Inc. v. Advanced Energy Indus., Inc.*, 363 F.3d 1361, 1377 (Fed. Cir. 2004)

20  (finding even a trivial number of sales resulting in *de minimis* damages still constitutes a valid

21  infringement claim).  Accordingly, Largan asks that the Court rule in its favor.

22

23  [10] ████████████████████████████████████████████████████████████

24  ██████████████████████████████████████.  (*See* Ex. 27, GSEO 00081933; Ex. 28,
    GSEO 00084818.)

25  [11] Largan has requested Genius update its response to Interrogatory Nos. 3, 7, and 9 to reflect the
    new facts in the importation documents and verify the response as required by rule.  To date,

26  Genius has refused, the only apparent motivation being an effort to try and preserve an issue of
    "material fact" on this issue in light of its own contradictory responses.

27  [12] Largan has also demanded a follow-up deposition regarding these important records, but Genius
    has refused.  This denial is another basis to hold Genius to the contents of its late-production and

28  prevent it from opposing summary judgment

LEGAL124118201.3

b.   **Genius Has** ███████████████████
███████████████████████ .

As discussed above, it is undisputed that Genius contracts with Apple to supply lenses for

incorporation into the cameras of Apple smartphones and tablets. The terms of those contracts—

which Genius freely negotiated with Apple— ███████████████████████████

███████████████████████ ███████████████████████

███████████████████████████████████████ . Since this

is an issue of contractual interpretation, it falls squarely within the powers of the Court and is ripe

for summary judgment.[13]

California law recognizes a broad "freedom of contract." *Carson v. Mercury Ins. Co.*, 210

Cal. App. 4th 409, 426 (2012) (citing Cal. Const., art. I, § 1.). The only limits on a party's ability

to bind itself are those that are expressly created by statute or precedent.[14] And a party is certainly

capable of contractually subjecting itself to the laws of California. *See Nedlloyd Lines B.V. v.*

*Superior Court*, 3 Cal. 4th 459, 468 (1992) ("When two sophisticated, commercial entities agree

to a choice-of-law clause like the one in this case, the most reasonable interpretation of their

actions is that they intended for the clause to apply to all causes of action arising from or related to

their contract.").

Nothing in patent law is inconsistent with this concept: parties are free to contract about

any number of things to provide themselves certainty. Indeed, when it comes to a patent holder,

"[u]nless the condition violates some other law or policy (in the patent field, notably the misuse or

---

[13] Cases involving unambiguous contracts should "be disposed of by summary judgment because interpretation of the unambiguous contract is solely a question of law." *Brobeck, Phleger & Harrison v. Telex Corp.*, 602 F.2d 866, 871-72 (9th Cir. 1979). Courts normally find "choice-of-law provisions [to be] unambiguous." *Bowman v. CMG Mortgage Inc.*, No. C 07-03140 SI, 2008 WL 3200662, at *3 (N.D. Cal. Aug. 4, 2008) (quoting *Olinick v. BMG Entm't*, 138 Cal. App. 4th 1286, 1299 (2006)). ███████████████████████████████████████ (Ex. 33, C.J. Lin. Dep. at 190:23-193:3.) *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Argonaut Ins. Co.*, 701 F.2d 95, 96 (9th Cir. 1983) (even if a contract is ambiguous, summary judgment is appropriate if the non-moving party can "offer no evidence to contradict" the interpretation of the moving party).

[14] "Even where a statute expressly purports to limit express contractual provisions contrary to its own terms, any limit upon freedom of contract is narrowly construed." *Clarendon Nat. Ins. Co. v. Ins. Co.*, 442 F. Supp. 2d 914, 930 (E.D. Cal. 2006) (citing *Henricks v. Metropolitan Life Ins. Co.*, 7 Cal.2d 619, 632 (1936)).

1  antitrust law), private parties retain the freedom to contract concerning conditions of sale."

2  *Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700, 708 (Fed. Cir. 1992) (citation omitted)

3  (reversing district court's finding that restriction on reuse was unenforceable).

4      Here, ████████████████████████████████████████████████

5  ████████████████████████████████████████████████████████

6  ████████████████

7      ████████████████████████████████████████████████

8  ████████████████████████████████████████████████████

9  ████████████████████████████████████████████████.

10  (Ex. 8, GSEO 00028064, ¶ 16.11 (emphasis added).) ████████████████████

11  ████████████████████████████████████████████████████████.

12  The fact that patent infringement is a tort does nothing to alter this conclusion: "a valid choice-of-

13  law clause, which provides that a specified body of law 'governs' the 'agreement' between the

14  parties, encompasses all causes of action arising from or related to that agreement, regardless of

15  how they are characterized, including tortious breaches of duties emanating from the agreement or

16  the legal relationships it creates."  *Nedlloyd*, 3 Cal. 4th at 470.

17      ████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████

20  ████████████████████████████████████████████████

21  ████████████████." (████████████████████████████████████

22  ████████████████████████████████████████████████

23  ("████████████████████████████████████████████████

24  ████████████████████████████████.").)  Because all of this activity is

25  deemed to occur within California, it occurs "within the United States" for purposes of § 271.

26          **c.**      ████████████████████████████, **Genius Has Still Made**

27  **Offers for Sale and Sales to Apple Within the United States.**

28      ████████████████████████████████████, Largan fully expects Genius to

11                          SUMMARY JUDGMENT ON INFRINGEMENT
                                Case No. CV-13-2502-JD

1    claim it is not determinative, or it is somehow overcome by the Federal Circuit's decision in *Halo*

2    *Elecs., Inc. v. Pulse Elecs., Inc.*, 769 F.3d 1371 (Fed. Cir. 2014).  Largan obviously disagrees, and

3    believes the freedom to contract includes the right to subject oneself to the laws of a particular

4    jurisdiction.  But even if the Court disagrees and Genius ███████████████████████████████

5    ██████████████████████████  relevant precedent and the facts here dictate the same result:

6    Genius's offers to sell lenses to Apple and sales of lenses to Apple have occurred in the U.S.

7            In *Halo*, the defendant Pulse manufactured allegedly infringing surface mount electronic

8    packages containing transformers that could be mounted on printed circuit boards inside electronic

9    devices.  *Id.* at 1374.  Pulse sold those products overseas, including to contract manufacturers who

10   would mount them onto printed circuit boards that were then incorporated into products like

11   internet routers Cisco would sell worldwide.  *Id.*  The district court granted summary judgment

12   that there was no sale or offer for sale by Pulse in the United States (though as discussed below,

13   the court still found induced infringement), and the Federal Circuit affirmed.  Unlike here, Pulse

14   and Cisco only had a "general business agreement, that [] did not refer to, and was not a contract

15   to sell, any specific product."  *Id* at 1379.

16          Our situation is much closer to that presented by a near-simultaneous decision from this

17   Court in *MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11-CV-5341 YGR, 2014 WL

18   580836, at *4 (N.D. Cal. Feb. 13, 2014).  *MediaTek* distinguished the district court *Halo* ruling on

19   the basis that, in *Halo* "there was no evidence of a direct contractual relationship between Cisco

20   and Pulse."  Like in *MediaTek*, the nature of how Genius sells products to Apple creates an offer

21   for sale and sale within the United States.

22                        (i)       **The Accused Genius Products Are Exclusive to Apple.**

23          All of the Genius products accused of direct infringement (GS-8662 v.4, GS-8689, GS-

24   8740, and GS-8656) are exclusively for Apple.[15]  (Ex. 1, Genius 5th Supp. Resp. at 9-11; Ex. 9,

25   _____

26   [15] For indirect infringement, seven of the eight accused Genius products are exclusive for Apple.
     The eighth (the GS-8627) has only been sold for use by Motorola, which is based in Chicago,
27   Illinois.  (*See* Ex. 9, Mack-Mumford Dep. Tr. at 119:7-9, 113:22-24; Ex. 1, Genius 5th Supp.
     Resp. at 9 (Oct. 24, 2014) (████████████████████████████████████████████████
28   ████████████████████████7).)

                                            12                    SUMMARY JUDGMENT ON INFRINGEMENT
                                                                  Case No. CV-13-2502-JD

Mack-Mumford Dep. Tr. 118:12-15 (Oct. 21, 2014).)  That means that when Genius sells any unit of the accused Genius lens, Genius knows that product is intended for an Apple end product.

**(ii)**    ███████████████████████  **Governs its Sales to Apple.**

████████████████████████████████████████████ is very similar to the contract at issue in *MediaTek* that the Court distinguished from the district court *Halo* ruling.  In *MediaTek*, "Freescale negotiated and signed a 'Freescale Standard Sales Agreement' with AFS." 2014 WL 580836, at *1.  That contract provided "that AFS is the 'Buyer' and that 'Buyer desires to purchase products from Freescale, and Freescale desires to sell products to Buyer strictly in accordance with the terms and conditions of this Agreement.'"  *Id.*  Furthermore, the "Freescale– AFS Agreement 'govern[ed] all product purchases made by Authorized Purchasers…from Freescale.'"  *Id.*  Finally, "'Authorized Purchasers' include[d] AFS as well as 'Designees' authorized by AFS under the Agreement 'to issue purchase orders for Products, receive, reschedule or cancel deliveries of such Products, process warranty related claims related to such Products, and pay for such Products and all related costs.'"  *Id.*  Although Authorized Purchasers were allowed to issue purchase orders, the "delegation of authority to issue purchase orders does not change the fact that every sale thereunder is subject to the terms and conditions in the Agreement." *Id.* at *3.

Similarly, ███████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████████████████████
████████████████████████████████.  ███████████ "provides tangible evidence of a sales relationship" and "not merely 'some pricing discussions' as existed in *Halo*." *Id.* at *4.

1    **(iii)** ██████████████████████ **Specifically for Each**
     **Accused Product.**

2         Next, as noted above, in *Halo*, the accused infringer Pulse's contract with Cisco did not

3    identify any specific product.  Here, by contrast, ████████████████████████

4    ██████████████████████████████████████████████████████████████

5    ██████████████ (Ex. 8, GSEO 00028064, at 28).  ████████████████████

6    ████████████████████████████████████████████████████, which

7    includes ***all*** of the products accused of direct infringement.  (*See* Ex. 35, Dep. Ex. 474 (GS-8648,

8    GS-8656, and GS-8662); Ex. 20, GSEO 00050721 (GS-8689); Ex. 21, GSEO 00050724 (GS-

9    8740)).  ████████████████████████████████████████████

10   ██████████████████████████████████████████████████████████████

11   ████████████████████████.  (*See generally id.*; *see also* Ex. 5, Whitehead

12   Dep. at 244:18-25 (████████████████████████████████████

13   ██████████████ e).)  That further distinguishes this case from  *Halo*, where "price and quantity"

14   were established by "Cisco's foreign contract manufacturers," rather than Cisco itself.  *Halo*, 769

15   F.3d at 1379; *see also id.* at 1375 (the "general agreement did not refer to any specific Pulse

16   product or price"); *MediaTek*, 2014 WL 580836, at *3 ("the evidence indicates that the sale of the

17   accused products was to AFS 'Affiliates' or 'Designees' and was controlled by an agreement,

18   including price terms and pricing restrictions").████████████████████████

19   ██████████████████████████████████████████████████████████

20   ██████████████████████████████████████████████

21   ██████████████████████ (Ex. 5, Whitehead Dep. at 249:15-264:3; Ex. 9,

22   Mack-Mumford Dep. at 48:12-53:22.)

23        Accordingly, the *Halo* case does not control this situation, where Apple is undeniably the

24   customer and purchaser of the Accused Products in the United States.

25

26

27

28

LEGAL124118201.3

**B.**     **Genius Has Contributed to Infringement of the Claims Requiring an Image Sensor with the GS-8662 v.4, GS-8662 v.1, GS-8656, GS-8648, GS-8615, and GS-8627 Lenses.**

Five of Largan's asserted claims require that the lens be combined with an image sensor.[16] Because Genius itself does not produce image sensors or perform the combining, the lens alone cannot directly infringe those claims as outlined above. However, for these "sensor claims," Genius has contributed to infringement of the Patents-in-Suit by others under § 271(c).

Section 271(c) requires, "Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine…constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer."

Here, as discussed below, the Accused Products' specifications confirm they are designed to work with specific image sensors, Largan's and Genius's technical experts agree on this matter, and Genius's own fact witnesses concede the point. Further, it is undisputed that Genius has been aware that the Accused Products potentially infringe the Patents-in-Suit since at least April 2, 2013, when Largan sent Genius notice of infringement, and discovery has revealed Genius knew about them even earlier. Accordingly, Genius is liable for contributory infringement.

**1.**     **Genius Does Not Dispute That Its Accused Products Meet All Claim Limitations Other Than the Image Sensor.**

For the asserted claims that require an image sensor, the vast majority of limitations have nothing to do with the sensor, and Genius does not— and cannot—dispute that the non-sensor claim limitations of the Patents-in-Suit are met by the Accused Products. (*See* Ex. 29, Barbastathis Rebuttal Report at 13-18, 20-22.) The Infringement Report of Dr. Julie Bentley lays out in detail how each of the Accused Products meets the limitations of the asserted claims of the Patents-in-Suit, as construed by the Court in its Claim Construction Order. (*See* Ex. 7, Bentley Infringement Report at Exhibits A-J; D.I. 142.)

---

[16] These are Claim 18 of the '454 Patent, Claims 4 and 10 of the '768 patent, and Claims 23 and 25 of the '691 patent. (*See* Ex. 29, Barbastathis Rebuttal Report at 16.)

15                   SUMMARY JUDGMENT ON INFRINGEMENT
Case No. CV-13-2502-JD

The table on the right summarizes the claims with an image sensor that each Genius product contributorily infringes as well as which exhibit is a claim chart demonstrating infringement.

| Indirect Infringement Only | | | |
|---|---|---|---|
| Genius Model | Patent | Claims | Exhibit |
| GS-8662 v.4 | 454 | 18 | B |
| GS-8656 | 768 | 4, 10 | F |
| GS-8662 v.1 | 768 | 4, 10 | G |
| GS-8615 | 691 | 23, 25 | H |
| GS-8648 | 691 | 23, 25 | J |
| GS-8627 | 691 | 23, 25 | I |

As discussed above, Genius's technical expert has not identified any claim element missing for these products other than the image sensor (which will be addressed in Part V.B.2 below), and the only elements identified in Genius's interrogatory response on non-infringement contentions have to do with the "convex," "concave," and "refractive power" terms that the Court already found "not indefinite" in its claim construction order. (Ex. 1, Genius 5th Supp. Resp. to Largan 1st Interrogatories, at 20-21 (Oct. 24, 2014); D.I. 142.) Given that the Court has already rejected Genius's indefiniteness arguments, Dr. Bentley's claim charts demonstrate that there is no genuine dispute that these products meet every non-sensor limitation of the asserted claims.

### 2. There Is No Genuine Issue of Material Fact that the Accused Genius Products Must Be Used with an Image Sensor.

While Dr. Barbastathis's Rebuttal Report focuses on the image sensor with regard to direct infringement, he never even addresses the image sensor with regard to contributory infringement. (*Compare* Ex. 29, Barbastathis Rebuttal Report at 16-17, *with* 20-22.) This is because Genius cannot dispute that the Accused Products are intended for use with an image sensor. For example, Dr. Barbastathis himself admitted ████████████████████████████████████████. (Ex. 31, Barbastathis Dep. Tr. 25:23-26:5 (Nov. 23, 2014); *see generally* 24:25-25:21.)

SUMMARY JUDGMENT ON INFRINGEMENT
Case No. CV-13-2502-JD

LEGAL124118201.3



Furthermore, every Genius witness questioned on the topic has confirmed ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[18]   Not only that, but Genius

witnesses have repeatedly testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮   Thus there is no genuine issue of material fact the Accused Products have no

"substantial non-infringing use."[19]   35 U.S.C. § 271(c).  Furthermore, the Accused Products are a

"material part of the invention" because, as noted above, a camera module needs both a sensor and

a lens to function.  Moreover, all limitations  of the asserted claims—other than the singular

requirement for an image sensor—relate to technical properties of the imaging lens itself, as

satisfied by the Accused Products.  (*See also* Ex. 6, Bentley Infringement Report ¶ 122.)

---

[17] (*See, e.g.*, Ex. 10, Bone Dep. Ex. 426, at 9 (GS-8662 lens); Ex. 11, Bone Dep. Ex. 427, at 7 (GS-8662 lens); Ex. 12, Bone Dep. Ex. 428, at 7 (GS-8656 lens); Ex. 13, Bone Dep. Ex. 429, at 8 (GS-8656 lens); Ex. 14, Bone Dep. Ex. 430, at 8 (GS-8648 lens); Ex. 15, Bone Dep. Ex. 431, at 7 (GS-8648 lens); Ex. 16, Bone Dep. Ex. 518 (GS-8615 lens).)

[18] (*See, e.g.*, Ex. 46, Francis Dep. at 199:11-16; Ex. 47, Ross Dep. at 61:10-18; Ex. 5, Whitehead Dep. at 32:18-33:17; Ex. 9, Mack-Mumford Dep. at 20:8-21:15; 130:23-131:9; Ex. 4, Bone Dep. at 134:2-136:8; 144:21-145:2; 152:24-155:5; Ex. 48, Chang Dep. at 45:14-47:16.)

[19] To the extent that Genius would argue that the sensor-incorporating Motorola and Apple end products are non-infringing due to the existence of a license, this argument is erroneous for the reasons described in Part V.D, below.

1    Dr. Barbastathis also admitted ███████████████████████████

2  ████████████████████████████████████████  Ex. 31, Barbastathis Dep.

3  Tr. 147:16-22.) ████████████████████████████████████████████████

4  ██████████████████████████████████████████████████████████████

5  ██████████████████████████████████████████████████████████████.

6  (*E.g.*, *id.* at 150:20-151:15.)

7        Largan therefore has shown all the requirements for contributory infringement, namely that

8  (1) Genius's lenses are a "material part" of the invention; (2) Genius knows that its lenses are

9  "especially made or [] adapted for use in an infringement"; and (3) Genius lenses are not a "staple

10  article" of commerce "suitable for substantial noninfringing use."  35 U.S.C. § 271(c).

### 3.    Genius Has Known the Accused Products Potentially Infringe the Patents-in-Suit Since at Least April 2, 2013.

13        Genius does not dispute that it has had knowledge of the Patents-in-Suit and the alleged

14  infringement of the Accused Products since at least April 2, 2013, when Largan provided notice in

15  advance of this lawsuit.[20]  (*See* Ex. 1, Genius 5th Rog Responses, at 15, 18, 24.)  This alone

16  proves that Genius knew the Accused Products are "especially made or especially adapted for use

17  in an infringement" of the asserted claims requiring an image sensor, 35 U.S.C. § 271(c), since

18  Genius has continued to sell the Accused Products to Apple and Motorola since that date.  (Ex. 49,

19  GSEO 00052406.)  *See, e.g.*, *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 851 (Fed. Cir.

20  2010), *aff'd*, 131 S. Ct. 2238 (2011) (finding the knowledge element for contributory infringement

21  satisfied where defendant "heard a presentation by i4i about software practicing the '449 patent").

### 4.    Genius Has Offered For Sale, Sold and Imported Its Accused Products in the United States.

23        Contributory infringement under § 271(c) has the same territorial requirement as direct

24  infringement, which has been met for the same reasons described in Part V.A.2 above.

---

[20] Largan does not agree that Genius's first knowledge of the Patents-in-Suit was on April 2, 2013. However, since Genius has admitted its knowledge as of April 2, 2013, this is really an issue of willfulness and damages, rather than liability, and need not be addressed here.

1

          **a.**      **Genius Has Imported Into the United States At Least the GS-8662 v.4, GS-8656, GS-8648, and GS-8740.**

2        As was discussed in Part V.A.2.a above, Genius has admitted that samples of the GS-8662

3  v.4, GS-8656, and GS-8648 were imported by Genius directly into the United States, satisfying

4  the territorial requirement for contributory infringement for at least these products.  (Ex. 25,

5  GSEO 00024743.)  Similarly, email produced by Genius after the close of fact discovery in

6  violation of this Court's orders show that Genius has also imported at least the GS-8740, even

7  though Genius has never supplemented its interrogatory response to identify that lens.  (Ex. 32,

8  GSEO 00059797.)  And the fact that other Genius documents show Genius has imported still more

9  products (*e.g.*, Ex. 50, GSEO 00081936 (showing importation of the GS-8689)) raises serious

10  questions about what other importations Genius may be concealing.

11

          **b.**      **Genius Has Made Offers for Sale and Sales to Apple and Motorola Within the United States.**

12

13        Part V.A.2.b above describes how Genius's business relationship with Apple constitutes an

  offer for sale and sale within the United States.[21]

14        For Motorola, Genius witnesses have ███████████████████████

15 ███████████████████████████████████████████████

16 ███████████████████████████████████████

17 ███████████████████████████████████████

18 ███████████████████████████████████

19 ████████████████████████████████████████████

20 █████████████████████████████████████████████

21 ███████████████████████████████████████████

22 ██████████████████████████████████████████

23 ███████████████████████████  Thus, like Apple, and unlike Cisco

24 in the *Halo* case, ███████████████████████████████████

25

26 ————————————————
[21] The GS-8615 is unique in that it is the only Accused Product sold to Apple ██████

27 ████████████████████████████████████████████

28 ████████████████████").)

    SUMMARY JUDGMENT ON INFRINGEMENT
Case No. CV-13-2502-JD

LEGAL124118201.3

1　██████████████████████████████████████

2　██████████████████████████████████████

3　███████████████. *See MediaTek*, 2014 WL 580836, at *3 ("the evidence indicates that

4　the sale of the accused products was to AFS 'Affiliates' or 'Designees' and was controlled by an

5　agreement, including price terms and pricing restrictions").

**C.      Genius Has Induced Infringement with All Accused Genius Lenses By Intending or Being Willfully Blind to the Infringing End Products Being Sold, Offered for Sale, Imported, and Used In the United States.**

8　Genius should be found liable for induced infringement on summary judgment because

9　there is no genuine issue of material fact as to whether the requirements for induced infringement

10　are met: (1) Apple and Motorola, their retailers and resellers, and their customers have directly

11　infringed under § 271(a); (2) Genius indisputably has "knowledge of the existence of the patent[s]

12　that [are] infringed;" and (3) Genius takes "active steps … to encourage direct infringement."

13　*Limelight*, 134 S. Ct. at 2118; *Global-Tech, 131 S. Ct.* at 2068; *MGM Studios, Inc. v. Grokster,*

14　*Ltd.*, 545 U.S. 913, 936 (2005).

**1.      Direct Infringement Under § 271(a) Has Occurred Due to Apple and Motorola, Their Retailers and Resellers, and Their Customers Selling, Offering for Sale, Importing, and Using in the United States Apple and Motorola Products Incorporating the Accused Genius Lenses.**

18　As detailed above, the Accused Products indisputably infringe the Patents-in-Suit, either

19　on their own—for the asserted claims that do not require an image sensor—or when they are

20　inevitably incorporated into an Apple or Motorola end product that includes an image sensor.

21　Indeed, Genius's expert Dr. Barbastathis admits███████████████████████

22　████████████████████████. (Ex. 31, Barbastathis Dep. Tr. 152:4-13.) The only

23　remaining issue for showing direct infringement by Apple and Motorola is whether Apple and

24　Motorola products containing the Genius Accused Products are sold in the United States.

**a.      Apple and Motorola End Products Containing the Accused Genius Lenses Are Sold in the United States.**

26　Genius does not dispute that (1) Apple end products incorporate the Accused Products;[22]

---

[22] (Ex. 1, Genius 5th Rog Responses, at 9-11.)

and (2) those Apple end products are sold in the United States.[23]  Genius appears to argue that it cannot be certain how many of Apple's products incorporating *Genius's* lenses—as opposed to Largan's—are sold, offered for sale, imported, or used in the United States, yet that argument goes to damages, not infringement.  *See, e.g.*, *Lucent Techs.*, 580 F.3d at 1318–19 (finding circumstantial evidence "adequate to permit a jury to find that at least one other person within the United States during the relevant time period, other than the expert, had performed the claimed method"); *see also Semiconductor Energy Lab. Co. v. Chi Mei Optoelecs. Corp.*, 531 F. Supp. 2d 1084, 1113 (N.D. Cal. 2007) ("SEL alleges that CMO sells its products to customers who then import infringing end-products into the United States.  SEL need not identify every specific act of direct infringement…"); *Lucas Aerospace, Ltd. v. Unison Indus., L.P.*, 899 F. Supp. 1268, 1286 (D. Del. 1995) (finding contributory infringement where testimony established "Lucas supplies Pratt & Whitney Canada with 50 percent of its ignition exciter requirements for the PW100 engine" and "55 to 60 percent of Pratt's PW100 engine output makes its way into the United States").  Here, Genius cannot reasonably dispute that at least one unit of Apple and Motorola's products containing the accused Genius lenses ended up in the United States, so Genius's real dispute is instead only over damages.

Moreover, regardless of whether looking at infringement or damages, "[i]t is hornbook law that direct evidence of a fact is not necessary.  Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence."  *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1365 (Fed. Cir. 2004) (quotation omitted).  Here, Apple itself has declared that it ████████████████████████████████ ████████████████" (Ex. 22, Leopold Decl. ¶ 7.)  Genius witnesses have ████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████. (*See, e.g.*, Ex. 9, Mack-Mumford Dep. at 245:8-11; Ex. 5, Whitehead Dep. at 218:21-219:21.)  The only logical conclusion a reasonable juror could reach from this evidence is that the percentage of Apple

---

[23] (Ex. 23, Genius RFA Responses, at 8-20.)

1   products in the U.S. containing a Genius lens is the same as the percentage of Apple products

2   worldwide containing a Genius lens.  *See, e.g.*, *Semiconductor Energy Lab*, 531 F. Supp. 2d, at

3   1113 ("Although SEL acknowledges an evidentiary void as to whether the sales of CMO products

4   track the same percentages as sales of products generally…SEL need not identify every specific

5   act of direct infringement (i.e., each individual importation) by each of CMO's numerous

6   customers in order to prove its claim.").

7          The situation is the same for Motorola.  Although Genius claims to be ignorant of the

8   Motorola end products incorporating the GS-8627, (D.I. 188, at 3), ████████████████████████

9   ██████████████████████████████████████.  (*See* Ex. 45,

10  MMLLC_Largan000391 (████████████████████████████████████████████

11  ███.)  ██████████████████████████████████████████████████

12  ████████████████████████████████████████████████████

13  ████████████████  Ex. 47, Ross Dep. at 66:9-24; 139:24-140:5; Ex. 5, Whitehead Dep. at

14  213:11-214:9.)  Like with Apple, Genius witnesses ████████████████████████████

15  ████████████████████████████████████████████████████████████

16  ████████████████████████████  (*See, e.g.*, Ex. 47, Ross Dep. at 139:12-22; Ex. 9,

17  Mack-Mumford Dep. at 245:12-16; Ex. 5, Whitehead Dep. at 213:20-214:9.)  As a result, there is

18  no genuine issue of material fact as to whether Apple and Motorola, their retailers and resellers,

19  and their customers have directly infringed regarding their products incorporating Genius lenses

20  that are sold, offered for sale, imported, or used in the United States.

21                  **2.     Genius Has Known the Accused Products Potentially Infringe the
                            Patents-in-Suit Since at Least April 2, 2013.**
22

23          Genius does not dispute that it has had knowledge of the Patents-in-Suit and the potentially

24  infringing nature of the Accused Products since at least April 2, 2013, when Largan provided

25  notice in advance of this lawsuit.[24]  (*See* Ex. 1, Genius 5th Rog Responses, at 15, 18, 24.)  This

26  alone proves that Genius had pre-suit knowledge of the Patents-in-Suit, which establishes the

27  knowledge requirement for inducement, *Global-Tech*, 131 S. Ct. at 2068; *SynQor*, 709 F.3d at

28  [24] *See* footnote 20, above.

                                    22                      SUMMARY JUDGMENT ON INFRINGEMENT
                                                                      Case No. CV-13-2502-JD

1   1379, since Genius has continued to sell the Accused Products to Apple and Motorola since that

2   date.  (Ex. 49, GSEO 00052406.)

3       **3.   Genius Actively Encourages Apple and Motorola to Infringe by Selling**
            **Them the Accused Products.**

4       Genius encourages Apple and Motorola to infringe by selling them the Accused Products

5   for incorporation into their end products, knowing that the Accused Products infringe the Patents-

6   in-Suit.  Because the Accused Products themselves infringe—either with or without their intended

7   image sensor—Genius's sales to Apple and Motorola alone constitute "evidence of culpable

8   conduct, directed to encouraging another's infringement" sufficient to establish intent.  *DSU Med.*

9   *Corp. v. JMS Co.*, 471 F.3d 1293, 1306, 1308 (Fed. Cir. 2006).  Apple has declared that "███

10  ████████████████████████████████████████████████████████████,[25]

11  so if Apple had not purchased Genius's lens, it would have purchased Largan's competing

12  product, which would have provided the very lost profit damages that Largan seeks in this case.

13  (Ex. 2, Leopold Suppl. Decl. ¶ 4.)  For inducement, it is irrelevant whether Genius's sales to Apple

14  and Motorola occurred in or outside the United States, because "where a foreign party, with the

15  requisite knowledge and intent, employs extraterritorial means to actively induce acts of direct

16  infringement that occur within the United States," such conduct can give rise to liability for

17  induced infringement, even where none of the defendant's conduct occurred in the United States.

18  *Merial*, 681 F.3d at 1302; *see also Halo*, 769 F.3d at 1371 ("we affirm…the judgment of

19  inducement with respect to products that Pulse delivered outside the United States but were

20  imported into the United States by others").

21      Largan anticipates that Genius may argue that intent is lacking because Genius supposedly

22  has no way of knowing for sure that Apple and Motorola products incorporating Genius lenses are

23  sold in the United States.[26]  But, as noted in Part V.C.1.a above, Genius has admitted knowledge

24  (1) of the Apple products incorporating the Accused Products; and (2) that those Apple products

25

────────────────────

26  [25] There is one exception. ████████████████████████████████████████████

27  ████████████████ (Ex. 2, Leopold Suppl. Decl. ¶ 4.)

28  [26] (*See, e.g.*, Ex. 23, Genius RFA Resps. at 20-26; Ex. 52, 3rd Rog Resps. at 17-20.)

1    are sold in the United States.  Furthermore, for at least one product, the GS-8615 incorporated into

2    ███████████████████████████████████████████████████████████████████████████

3    ████████ Ex. 30, GSEO 00088199.)  Especially for that product, Genius cannot claim that it had

4    no knowledge of its lenses entering the United States, ███████████████████████████████

5    ██████████████████████████████████████

6          As discussed above, Genius witnesses ███████████████████████████████████

7    █████████████████████████████████████████████████████████████████████████████

8    ███████████████████████████████ Ex. 47, Ross Dep. at 66:9-24; 139:24-140:5; Ex. 5,

9    Whitehead Dep. at 213:11-214:9.)  Given those admissions, to the extent that Genius can even be

10   believed that it has no knowledge that Apple and Motorola products incorporating Genius lenses

11   are sold in the United States, Genius "took deliberate steps to avoid knowing that fact," and

12   "therefore willfully blinded itself to the infringing nature of" Apple and Motorola's sales.  *Global-*

13   *Tech*, 131 S. Ct. at 2072.  Genius's willful blindness is reinforced by the fact that ██████

14   ███████████████████████████████████████████████████████████

15   ███████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████████████.  (*See, e.g.,*

17   Ex. 9, Mack-Mumford Dep. at 245:8-16 (███████████████████████████████████████

18   ████████████████████████████████████████████████████████████████████████

19   ███████.); Ex. 5, Whitehead Dep. at 215:11-22; 219:17-21 (████████████████████████

20   ████████████████████████████████████████████████████████.).)  In

21   fact, Genius even ███████████████████████████████████████████████████████

22   ██████████████████████, (Ex. 29, Barbastathis Rebuttal Report at 16; Ex. 25, GSEO

23   00024743), ██████████████████████████████████████████████████████████

24   █████████████████████.  (Ex. 26, GSEO 00059789.)  As a result, Genius had the

25   requisite intent, and the Court should find on summary judgment that Genius has induced direct

26   infringement of Motorola and Apple, their retailers and resellers, and their customers.  *See also*

27   *Halo Elecs., Inc. v. Pulse Eng'g, Inc.*, 810 F. Supp. 2d 1173, 1209 (D. Nev. 2011), *aff'd*, 769 F.3d

28

LEGAL124118201.3

1371 (Fed. Cir. 2014) ("While Halo does not provide direct evidence about whether, and the number of, accused Pulse products that end up in the United States, Pulse's corporate representative testified that he believed at least some of the accused products end up in the United States.  This type of circumstantial evidence has been held to be substantial evidence of indirect infringement.") (citing *Lucas Aerospace, Ltd. v. Unison Indus., L.P.*, 899 F. Supp. 1268, 1286–87 (D. Del. 1995).)

### D.    Genius Has Failed to Pursue its License Defense.

While Genius raised a license defense in its answer premised on an agreement between Largan and Apple supposedly providing a license to Apple (not Genius) for unspecified products, (D.I. 32 at 8-9), Genius has never developed this theory further over the course of this litigation.[27]  For example, in response to Largan's Interrogatory No. 4 requesting an identification of licenses related to the Patents-in-Suit, Genius did not identify any agreement between Largan and Apple, and instead only identified its own agreement with Apple.[28]  (Ex. 1, Genius 5th Supp. Resp. at 23 (Oct. 24, 2014).)  Dr. Barbastathis's Rebuttal Report also never even mentions a license as a grounds for non-infringement.  Thus, Genius appears to have abandoned its license defense, and its failure to provide discovery responses would preclude it from raising any new license theories now.  *See Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out that there is an absence of evidence to support the nonmoving party's case."); *Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1514 (9th Cir. 1994) (defendant has "burden of proof at trial" for affirmative defense).  As such, summary judgment of no license is appropriate.

## VI.    CONCLUSION

For the foregoing reasons, Largan respectfully requests that the Court grant Largan's motion for partial summary judgment that the Accused Products infringe the asserted claims.

---

[27] Genius also has never alleged that Motorola has any license.

[28] Notably, Genius's 30(b)(6) deposition designee for licensing, C.J. Lin, ████████████████
████████████████████████████████████  (Ex. 33, C.J. Lin Dep. at 191:13-17, 192:4-9, 193:4-22.)

LEGAL124118201.3

Dated: December 5, 2014

Respectfully submitted,

**PERKINS COIE LLP**

By:  _/s/ John D. Esterhay_
    John P. Schnurer, Bar No. 185725
    JSchnurer@perkinscoie.com
    Joseph P. Reid, Bar No. 211082
    JReid@perkinscoie.com
    Michael J. Engle, Bar No. 259476
    MEngle@perkinscoie.com
    John D. Esterhay, Bar No. 282330
    Jesterhay@perkinscoie.com
    PERKINS COIE LLP
    11988 El Camino Real, Suite 350
    San Diego, CA  92130-2594
    Telephone:  858.720.5700
    Facsimile:  858.720.5799

Attorneys for Plaintiff
Largan Precision Co., Ltd.

SUMMARY JUDGMENT ON INFRINGEMENT
Case No. CV-13-2502-JD