REDACTED VERSION OF DOCUMENT
SOUGHT TO BE SEALED

1   John P. Schnurer, Bar No. 185725
    JSchnurer@perkinscoie.com
2   Joseph P. Reid, Bar No. 211082
    JReid@perkinscoie.com
3   Michael J. Engle, Bar No. 259476
    MEngle@perkinscoie.com
4   John D. Esterhay, Bar No. 282330
    JEsterhay@perkinscoie.com
5   PERKINS COIE LLP
    11988 El Camino Real, Suite 350
6   San Diego, CA  92130-2594
    Telephone:  858.720.5700
7   Facsimile:  858.720.5799

8   Attorneys for Plaintiff
    Largan Precision Co., Ltd.

9

10                  UNITED STATES DISTRICT COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12                    SAN FRANCISCO DIVISION

13

14   LARGAN PRECISION CO., LTD.,              Case No. CV-13-2502-JD

15                  Plaintiff,                **PLAINTIFF LARGAN PRECISION CO.,
                                              LTD.'S OPPOSITION TO DEFENDANT
16          v.                                GENIUS ELECTRONIC OPTICAL CO.,
                                              LTD.'S MOTION FOR SUMMARY
17   GENIUS ELECTRONIC OPTICAL CO.,           JUDGMENT OF NON-INFRINGEMENT**
     LTD.,
18                                            Date:   January 22, 2015
                    Defendant.                Time:   10:00 a.m.
19                                            Place:  Courtroom 11, 19th Floor

20                                            Hon. James Donato

21

22

23

24

25

26

27

28
     09075-0006/LEGAL124430606.2                     OPPOSITION TO MSJ RE
                                                     NON-INFRINGEMENT
                                                     CV-13-2502-JD

1

**TABLE OF CONTENTS**

2

Page

3    I.      INTRODUCTION .................................................................................................... 1

4    II.     STATEMENT OF ISSUES TO BE DECIDED ....................................................... 2

     III.    STATEMENT OF RELEVANT FACTS .................................................................. 2
5
             A.    The Accused Products.................................................................................. 2
6
             B.    Genius's Sales to Apple ............................................................................... 3
7
             C.    Genius's Sales to Motorola ......................................................................... 5

     IV.     ARGUMENT ........................................................................................................... 5
8
             A.    Genius Directly Infringes by Importing Into the United States. ................. 5
9
                   1.    Importation Is Shipping a Product into the United States. .............. 6
10
                   2.    Genius Offers Only Attorney Argument, Not Evidence. ................. 8

11           B.    Genius Directly Infringes "Within the United States." ............................... 9

                   1.    Genius Conveniently Omits the Fact that It Has ███████
12
                         ███████████████████████████ .................... 9

13                 2.    ████████████████████, Genius Has Still Made
                         Offers for Sale and Sales to Apple Within the United States. .................. 11
14
                         a.    The Accused Genius Products Are Exclusive to Apple............... 12
15
                         b.    ███████████ With Apple Governs its Sales to Apple. ........... 12

16                       c.    ██████████████ ........................................................ 13

17                       d.    ████████████████████ ........................................... 14

18                 3.    Technical Experts Have No Expertise in Legal Meanings Such as
                         "Within the United States" or "Importation." ...................................... 15
19
             C.    Genius Contributes to Infringement by Selling, Offering to Sell, and
20                 Importing the Accused Products "Within the United States." ........................ 15

21           D.    Largan Is Not Alleging Contributory Infringement for Non-Sensor Claims........ 16

             E.    Genius Induces Infringement Because It Had the Requisite Knowledge. .......... 16
22
                   1.    Genius Knew Apple's and Motorola's Sales Directly Infringed. ............. 17
23                 2.    Inducement Requires Knowledge Only that the *Induced* Act
                         Constitutes Direct Infringement. ................................................... 17
24                 3.    Genius Knew or Should Have Known Apple or Motorola Products
                         Containing Genius's Accused Products Were Sold in the U.S. ............... 18
25
                   4.    Genius's Only Case to the Contrary Is Distinguishable........................... 19
26           F.    Genius Indirectly Infringes Because Apple and Motorola Products
                   Incorporating the Accused Genius Lenses Directly Infringe. ........................... 21

27

28

1

**TABLE OF CONTENTS**
(continued)

2
Page

3      G.    Genius Alleges the GS-8662 v.1 Has Not Been Sold During the Relevant
             Time. .................................................................................................... 24

4      H.    The Motion Should be Denied Due to Genius Failing to Provide Discovery ....... 25

5   V.    CONCLUSION ............................................................................................... 25

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MSJ RE
NON-INFRINGEMENT
CV-13-2502-JD

# TABLE OF AUTHORITIES

**Page**

C<small>ASES</small>

*Apple, Inc. v. Samsung Elecs. Co.*,
   No. 11-cv-01846-LHK, 2013 WL 6001902 (N.D. Cal. Nov. 12, 2013) .................................5

*Athena Feminine Techs. Inc. v. Wilkes*,
   No. 10-cv-04868, 2011 WL 4079927 (N.D. Cal. 2011) .......................................................7, 8

*Baron Servs., Inc. v. Media Weather Innovations LLC*,
   717 F.3d 907 (Fed. Cir. 2013) .............................................................................................25

*Bilski v. Kappos*,
   561 U.S. 593 (2010) ...............................................................................................................6

*Bristol-Myers Co. v. Erbamont Inc.*,
   723 F. Supp. 1038 (D. Del. 1989) .........................................................................................7

*Broadcom Corp. v. Qualcomm Inc.*,
   543 F.3d 683 (Fed. Cir. 2008) .......................................................................................16, 17

*Brown v. Maryland*,
   25 U.S. 419 (1827) .................................................................................................................6

*Canton R.R. Co. v. Rogan*,
   340 U.S. 511 (1951) ...............................................................................................................6

*Carson v. Mercury Ins. Co.*,
   210 Cal. App. 4th 409 (2012) ................................................................................................9

*Clarendon Nat. Ins. Co. v. Ins. Co.*,
   442 F. Supp. 2d 914 (E.D. Cal. 2006) ...................................................................................9

*Cunard S.S. Co. v. Mellon*,
   262 U.S. 100 (1923) ...............................................................................................................6

*Cybiotronics, Ltd. v. Golden Source Elecs. Ltd.*,
   130 F. Supp. 2d 1152 (C.D. Cal. 2001) .................................................................................7

*Docusign, Inc. v. Sertifi, Inc.*,
   468 F. Supp. 2d 1305 (W.D. Wash. 2006) ...........................................................................15

*Fellowes, Inc. v. Michilin Prosperity Co.*,
   491 F. Supp. 2d 571 (E.D. Va. 2007) ....................................................................................8

*Gabana Gulf Distribution, Ltd. v. Gap Int'l Sales, Inc.*,
   No. C 06-02584 CRB, 2006 WL 2355092 (N.D. Cal. Aug. 14, 2006) ...........................10, 11

OPPOSITION TO MSJ RE
NON-INFRINGEMENT
CV-13-2502-JD

1

2

**TABLE OF AUTHORITIES**
(continued)

**Page**

3

4

*Gemtron Corp. v. Saint-Gobain Corp.*,
    572 F.3d 1371 (Fed. Cir. 2009).............................................................................8

5

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    131 S. Ct. 2060 (2011) ..............................................................................17, 19

6

7

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
    769 F.3d 1371 (Fed. Cir. 2014)......................................................... passim

8

9

*Halo Elecs., Inc. v. Pulse Eng'g, Inc.*,
    810 F. Supp. 2d 1173 (D. Nev. 2011) *aff'd*, 769 F.3d 1371 (Fed. Cir. 2014)....................19, 23

10

*Harrold v. Experian Info. Solutions, Inc.*,
    No. C 12-02987, 2012 WL 4097708 (N.D. Cal. Sept. 17, 2012) ............................................16

11

12

13

*Litecubes, L.L.C. v. N. Light Prods., Inc.*,
    No. 4:04-cv-00485, 2006 WL 5700252 (E.D. Mo. Aug. 25, 2006), *aff'd*, 523
    F.3d 1353 (Fed. Cir. 2008)..................................................................................7

14

*Lucas Aerospace, Ltd. v. Unison Indus., L.P.*,
    899 F. Supp. 1268 (D. Del. 1995) ......................................................................23

15

16

*Mallinckrodt, Inc. v. Medipart, Inc.*,
    976 F.2d 700 (Fed. Cir. 1992)............................................................................9

17

*MediaTek Inc. v. Freescale Semiconductor, Inc.*,
    No. 11-CV-5341 YGR, 2014 WL 580836 (N.D. Cal. Feb. 13, 2014)..............................12, 13

18

19

*MEMC Elec. Mats., Inc. v. Mitsubishi Materials Silicon Corp.*,
    420 F.3d 1369 (Fed. Cir. 2005)....................................................................20, 21

20

21

*Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*,
    370 F.3d 1354 (Fed. Cir. 2004)..........................................................................23

22

*Metro. Life Ins. Co. v. Bancorp Servs., L.L.C.*,
    527 F.3d 1330 (Fed. Cir. 2008)..........................................................................25

23

24

*Minitube of Am., Inc. v. Reprod. Provisions, LLC*,
    No. 13-CV-685, 2014 WL 1761317 (E.D. Wis. May 1, 2014)..................................................7

25

26

*Nationwide Trans. Fin. v. Cass Info. Sys., Inc.*,
    523 F.3d 1051 (9th Cir. 2008)......................................................................15, 22

27

*Nedlloyd Lines B.V. v. Super. Ct.*,
    3 Cal. 4th 459 (1992) ...............................................................................9, 10

28

-iv-

OPPOSITION TO MSJ RE
NON-INFRINGEMENT
CV-13-2502-JD

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

*Nichia Corp. v. Seoul Semiconductor Co.*,
4      No. C 06-0162 MMC, 2007 WL 2428040 (N.D. Cal. Aug. 22, 2007) .............................19, 20

*Nutrition 21 v. U.S.*,
5      930 F.2d 867 (Fed. Cir. 1991) ................................................................................................15

6

*Schwartz v. Pillsbury Inc.*,
7      969 F.2d 840 (9th Cir. 1992) ...................................................................................................11

8

*Semiconductor Energy Lab. Co. v. Chi Mei Optoelecs. Corp.*,
       531 F. Supp. 2d 1084 (N.D. Cal. 2007) ..................................................................................23
9

*Wi-LAN, Inc. v. Kilpatrick Townsend & Stockton LLP*,
10     684 F.3d 1364 (Fed. Cir. 2012) ................................................................................................8

11

*Ziptronix, Inc. v. OmniVision Techs., Inc.*,
12     No. 10-cv-05525-SBA, 2014 WL 5463051 (N.D. Cal. Oct. 21, 2014) ...................................15

13     **STATUTES**

14     19 U.S.C. § 1337 .........................................................................................................................7

15     35 U.S.C. § 271 ..............................................................................................................5, 7, 8, 19

16     Cal. Bus. & Prof. Code § 20015 ................................................................................................10

17     **OTHER AUTHORITIES**

18     Federal Rule of Civil Procedure 56 ...........................................................................................25

19     Federal Rule of Evidence 702 ...................................................................................................15

20

21

22

23

24

25

26

27

28

OPPOSITION TO MSJ RE
NON-INFRINGEMENT
CV-13-2502-JD

1

**I.      INTRODUCTION**

2          Genius now admits its imaging lenses as used in Apple and Motorola end products meet

3   each and every element of the asserted claims.  In fact, Genius's use of Largan's technology was

4   so clear that Genius did not even allow its technical expert to review ***any*** of Genius's technical

5   documents for the Accused Products.  Yet despite being the designer, manufacturer, and seller of

6   the accused lenses, Genius refuses to take responsibility for its own infringing products.

7          Genius's motion for summary judgment hinges on legal conclusions such as what

8   constitutes "importing," "within the U.S.," and "knowledge" for purposes of the relevant statutes.

9   Each of Genius's arguments fail, however, because Genius either misinterprets the law or has

10  failed to tell the Court fundamental facts that undermine its theory.

11         First, importation ***is*** direct infringement.  Although Genius now admits that it shipped its

12  Accused Products into the U.S., it argues—contrary to the statute—that such shipments are not

13  "imported" unless such units are also "sold" or "offered for sale."  The statute, however, contains

14  no such requirement, and Genius misinterprets the lone case it cites to the contrary.

15         Second, Genius argues that it has not made, used, sold, or offered for sale the Accused

16  Products "within the U.S."  Of course, Genius failed to provide the Court with Genius's ███

17  ███████████████████████████████████████████████████████████████████████

18  ███████████████████████████████████████████████████████████████████████

19  ███████████████████████████████████   And, even if Genius had not expressly exposed itself to

20  U.S. law, its conduct with Apple is sufficient to constitute sales activity "within the U.S."

21         Next, for induced infringement, Genius claims it had no knowledge of the infringement.

22  Yet Genius admits that prior to this litigation Largan sent Genius claim charts detailing how

23  Apple devices incorporating Genius's Accused Products infringe the Patents-in-Suit.

24  Accordingly, Genius's knowledge could not be clearer.

25         Finally, Genius complains that, because Largan's technical expert did not make legal

26  conclusions about Apple and Motorola's direct infringement, Genius cannot indirectly infringe.

27  This directly contradicts Ninth Circuit precedent, which prohibits technical experts from reaching

28  legal conclusions.  Instead, Largan's expert properly reached the ***technical*** conclusion that Apple

OPPOSITION TO MSJ RE
                                                                          NON-INFRINGEMENT
                                                                          CV-13-2502-JD

1   and Motorola devices incorporating Genius's Accused Products meet each and every element of

2   the asserted claims, an opinion neither Genius nor its technical expert dispute.  Given Genius

3   concedes that Apple and Motorola sold such devices in the U.S., there can be no reasonable

4   dispute that Largan has demonstrated the underlying direct infringement necessary to prove

5   Genius's indirect infringement.

6        For all of these reasons, Genius's motion for summary judgment should be denied.

7   **II.**    **STATEMENT OF ISSUES TO BE DECIDED**

8        1.  Whether Genius's shipments of Accused Products into the U.S. constitutes

9   "importation."  This issue affects direct infringement.

10       2.  Whether by ███████████████████████████████████████

11  ████████████████████ Genius has made, used, sold, or offered for sale the Accused Products

12  "within the United States."  This issue affects direct and contributory infringement.

13       3.  Whether Genius had the requisite knowledge for inducement, such as whether Genius

14  knew Apple devices containing Genius's lenses directly infringed when Largan sent a letter and

15  claim charts explaining that such devices infringed the Patents-in-Suit.

16       4.  Whether Apple and Motorola devices containing Genius's Accused Products directly

17  infringe the Patents-in-Suit when Genius and its technical expert do not dispute that such products

18  meet all elements of all asserted claims.  This affects both forms of indirect infringement.

19  **III.**    **STATEMENT OF RELEVANT FACTS**

20      **A.**    **The Accused Products**

21       Largan and Genius directly compete in the imaging lens market, each supplying lenses to

22  companies like Apple and Motorola for use in mobile phones and tablets.  This case involves

23  eight Genius lenses that practice Largan's Patents-in-Suit (the "Accused Products").  Seven are

24  sold to Apple; one is sold to Motorola.  The table below summarizes the Accused Products, the

25  end products incorporating them, and the claims they practice.[1]

26

---

27  [1] D.I. 222-2,  5th Supp. Resp. to Largan 1st Interrogs., at 9-11; D.I. 222-3, Leopold Suppl. Decl. ¶ 3; D.I. 222-4, MMLLC_Largan000392; D.I. 222-8, Bentley Infringement Rep. at 20, 27; D.I.

28  222-9, Exs. A-J to Bentley Infringement Rep.

| Genius Model | Customer | End Product | Patent | Claims |
|---|---|---|---|---|
| GS-8662 v.4 | Apple | | 151 | 3, 5 |
| | | | 454 | 11, 18 |
| GS-8689 | Apple | | 224 | 6, 8 |
| GS-8740 | Apple | | 224 | 6, 8 |
| GS-8656 | Apple | | 224 | 6, 8 |
| | | | 768 | 4, 10 |
| GS-8662 v.1 | Apple | | 768 | 4, 10 |
| GS-8615 | Apple | | 691 | 23, 25 |
| GS-8648 | Apple | | 691 | 23, 25 |
| GS-8627 | Motorola | | 691 | 23, 25 |

Five of the asserted claims include an image sensor, while the other five do not.  The table below summarizes the forms of infringement asserted for the sensor and non-sensor claims.

| | Form of Infringement | 151 | 454 | 224 | 768 | 691 |
|---|---|---|---|---|---|---|
| Non-Sensor | Direct & Inducement | 3, 5 | 11 | 6, 8 | | |
| Sensor | Contributory & Inducement | | 18 | | 4, 10 | 23, 25 |

**B.   Genius's Sales to Apple**

Genius and Largan are Apple's only two lens suppliers for the implicated Apple devices.[2]

Thus each Genius lens sold to Apple means one less sold by Largan.  (D.I. 222-5, Bone Dep. 181:9-182:18; D.I. 222-6, Whitehead Dep. 320:17-323:20.)  Largan and Genius each have ███

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

──────────────────────
2 ███████████████████████████████████████████████████████████████████

████████████████████████████████
                  (D.I. 222-3, Leopold Suppl. Decl. ¶ 4.)

1  ███████████████████ (D.I. 222-10, GSEO 00028064, at 24.)  Genius's obligations under

2  ████████████████████████████████████████████████████

3  ███████████████████████████████████████████

4  ██████████████████████████ (*Id.* ¶ 16.11 (emphasis added).).

5       Genius's lens development for Apple devices ███████████████████

6  ██████████████████████████ D.I. 222-11, Mack-Mumford Dep. 57:16-

7  59.25.)  For each new Apple device, ███████████████████████

8  ████████████████████████████████████████████████████

9  ████████████████████████████████████████████████████

10  █████████████████████████████████████████

11  ████████(D.I. 222-5, Bone Dep. 27:20-29:1.)  During the design process, Apple and Genius

12  ██████████████████████████. (*Id.* at 184:23-190:15.)

13  After denying it throughout discovery, Genius's documents now demonstrate Genius ships the

14  Accused Products directly to Apple in the United States.[4]

15       Once a lens design is finalized, █████████████████████████

16  ████████████████████████. (D.I. 222-6, Whitehead Dep.

17  249:15-264:3; D.I. 222-11, Mack-Mumford Dep. 46:25-53:22.) ██████████████

18  ██████████████████ Ex. A, GSEO 00093595.) ███████████████████

19  ████████████████████████████████████████████

20  █████████████████████████████████████████████████

21  ────────────────

[3] *See* D.I. 222-12, Bone Dep. Ex. 426, at 9 (GS-8662 lens); D.I. 222-13, Bone Dep. Ex. 427, at 7
22  (GS-8662 lens); D.I. 222-14, Bone Dep. Ex. 428, at 7 (GS-8656 lens); D.I. 222-15, Bone Dep.
Ex. 429, at 8 (GS-8656 lens); D.I. 222-16  Bone Dep. Ex. 430, at 8 (GS-8648 lens); D.I. 222-17,
23  Bone Dep. Ex. 431, at 7 (GS-8648 lens); D.I. 222-18, Bone Dep. Ex. 518 (GS-8615 lens); D.I.
222-19, GSEO 00043543 (GS-8689 lens); D.I. 222-20, GSEO 00045776 (GS-8740 lens).
24
[4] *Compare* D.I. 222-2, Genius 5th Supp. Resp. at 17 (Oct. 24, 2014) ("Genius does not … import
25  the accused products in the United States."), 15, 16, 18, 19, 27-28; D.I. 222-11, Mack-Mumford
Dep. 110:13-18 ("Q. …has Genius ever provided samples directly to Apple?" and "A.  No, I
26  don't believe so."), *with* D.I. 222-27, GSEO 00024743 (showing shipments to Apple, who is
customer "Q"); D.I. 222-28, GSEO 00059789; D.I. 222-29, GSEO 00081933; D.I. 222-30, GSEO
27  00084818; *see also* D.I. 222-31, Barbastathis Rebuttal Rep. at 16.

[5] D.I. 222-21, Dep. Ex. 476 (GS-8662, GS-8656, & GS-8662); D.I. 222-22, GSEO 00050721
28  (GS-8689); D.I. 222-23, GSEO 00050724 (GS-8740). ██████████████



1  ████████████████████████████████████████████

2  ████████████████████████████████████████████████

3  ██████████████████████████. (D.I. 222-5, Bone Dep. 134:11-135:11.) ████████

4  ██████████████████████████████. (D.I. 222-24, Leopold Decl. ¶ 9.)  Module

5  integrators ship completed camera modules to system integrators who assemble the Apple device.

6  (D.I. 222-11, Mack-Mumford Dep. 91:22-92:2.)  Apple devices are then shipped and sold

7  worldwide, including in the U.S. (D.I. 222-25, Genius RFA Resps. at 8-20.)

8       **C.**    **Genius's Sales to Motorola**

9       Genius witnesses have testified Motorola's sales process is similar to Apple's. (D.I. 222-

10  11, Mack-Mumford Dep. 60:1-64:2; D.I. 222-6, Whitehead Dep. 102:22-108:19.) Genius's own

11  motion concedes as much. (D.I. 215 at 6.)  In particular, Motorola controls the pricing of Genius

12  lenses sold into its supply chain. (*See, e.g.*, D.I. 222-26, GSEO 00088660.)

13  **IV.**    **ARGUMENT**

14       **A.**    **Genius Directly Infringes by Importing Into the United States.**

15       By statute, "whoever...***imports into the United States*** any patented invention during the

16  term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a) (emphasis added).  Genius

17  admits it "has shipped to the United States" the Accused Products as what it calls "samples

18  provided free of charge to Apple." (D.I. 215 at 12.)  Nothing more is required.

19       While Genius claims it "is not the 'importer' of these units…because samples were

20  provided for development purposes only pursuant to the instructions of the recipient of the

21  samples," (D.I. 215 at 12), that argument fails as a matter of both fact and law.[6]

22

23  ████████████████████████. *See* D.I. 222-32, GSEO 00088199; D.I. 222-11, Mack-Mumford

24  Dep. 206:13-21 (████████████████████████████████").

[6] Genius never identified this theory prior to the close of either fact or expert discovery.  (D.I.
25  222-2, Genius 5th Supp. Resp. at Interrog. No. 3 (pp.14-21) (Oct. 24, 2014).)  In fact, Genius
waited 47 days ***after*** fact discovery closed, and 5 days after filing its motion, to supplement its
26  response to say Genius "████████████████████████████████████████████████."
(Ex. B, Genius 6th Supp. Resp. at 22 (Dec. 10, 2014) (emphasis added).)  Having failed to timely
27  disclose this theory, Genius should be precluded from asserting it now. *Apple, Inc. v. Samsung
Elecs. Co.*, No. 11-cv-01846-LHK, 2013 WL 6001902, at *2 (N.D. Cal. Nov. 12, 2013) ("Apple's
28  failure to timely disclose its new damages theory is reason enough to exclude this theory now").

09075-0006/LEGAL124430606.2          -5-         OPPOSITION TO MSJ RE
                                            NON-INFRINGEMENT
                                            CV-13-2502-JD

1

### 1.   Importation Is Shipping a Product into the United States.

2

    The legal question here is the statutory definition of "import."  While the Patent Act does

3

not define "import," the Supreme Court says that "[i]n patent law, as in all statutory construction,

4

unless otherwise defined, words will be interpreted as taking their ordinary, contemporary,

5

common meaning."  *Bilski v. Kappos*, 561 U.S. 593, 603 (2010) (quotations omitted).  Here, the

6

ordinary meaning of "import" is well-known: "The process of bringing foreign goods into a

7

country."  Black's Law Dictionary (9th ed. 2009); *see also Bilski*, 561 U.S. at 603 (looking to

8

"dictionary definitions" to find the ordinary meaning of words used in patent statute).

9

    This ordinary meaning of "import" comports exactly with the Supreme Court's definition

10

of "import" in other areas of law.  *E.g.*, *Canton R.R. Co. v. Rogan*, 340 U.S. 511, 515 (1951) ("to

11

import means to bring into the country"); *Brown v. Maryland*, 25 U.S. 419, 437 (1827) (defining

12

"imports" as "articles themselves which are brought into the country").  "Importation, in a like

13

sense, consists in bringing an article into a country from the outside.  If there be an actual

14

bringing in it is importation regardless of the mode in which it is effected."  *Cunard S.S. Co. v.

15

Mellon*, 262 U.S. 100, 122 (1923).

16

    Now that Genius has finally produced its records,[7] there is no dispute that Genius brought

17

its Accused Products into the U.S.  For example, a document shows Genius sending units of the

18

accused GS-8740 lenses to Apple in Cupertino, California, via FedEx.  (D.I. 222-34, at GSEO

19

00059796.)  This FedEx label expressly notes that, as the sender, Genius pays for the shipment.

20

(*Id.*, at GSEO 00059796 ("BILL SENDER").)  Similar documents show Genius making

21

analogous shipments of each of the other Accused Products to Apple in Cupertino.  (*See* D.I. 226-

22

38, GSEO 00024743; D.I. 226-40, GSEO 00081936; D.I. 226-41, GSEO 00084818.)

23

    Genius's only authority for the idea that "importation" is only infringement when

24

─────────────────────

25

[7] Prior to the close of fact discovery, Genius maintained that it "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮."  (*Compare* D.I. 226-5, Genius 1st Resps. to 1st Rogs, at 10, 16,
19, *with* D.I. 226-6, Genius 5th Rog Responses at 15-17, 27, 31; *see also* D.I. 226-36, Mack-

26

Mumford Dep. 110:13-18 (Nov. 21, 2014).)  Since then, however, Genius has produced shipment
records and the admission of its technical expert that Genius in fact has directly imported the

27

accused products into the United States.  (D.I. 226-37, Barbastathis Rebuttal Rep. at 16; D.I. 226-
38, GSEO 00024743; D.I. 226-39, GSEO 00059797; D.I. 226-40, GSEO 00081936; D.I. 226-41,

28

GSEO 00084818; D.I. 226-42, Barbastathis Dep. 128:5-129:20, 131:7-25.)

1    combined with a sale is *Cybiotronics, Ltd. v. Golden Source Elecs. Ltd.*, 130 F. Supp. 2d 1152,

2    1158–59 (C.D. Cal. 2001).  But the real issue in *Cybiotronics* was not whether shipments were

3    "development samples" or "at the instruction of the recipient" as Genius implies, but rather that

4    the accused infringer (Smoothline) sold the accused products to a third party in Hong Kong

5    (NAFT), and that third party NAFT, not Smoothline, shipped the products to the U.S. customer

6    (BellSouth).  *Id.* at 1158–59.  As aptly described by a later court, "the defendant was not an

7    'importer' because, in each case, an intermediary company was acting as the importer."

8    *Litecubes, L.L.C. v. N. Light Prods., Inc.*, No. 4:04-cv-00485, 2006 WL 5700252, at *3 (E.D. Mo.

9    Aug. 25, 2006) (finding *Cybiotronics* "easily distinguishable"), *aff'd*, 523 F.3d 1353 (Fed. Cir.

10   2008).  Here, just as in *Litecubes*, there is no intermediary: Genius ***itself*** ships the Accused

11   Products into the U.S.

12        Genius's argument that shipments into the U.S. are somehow not "imported" if they are

13   "provided for development purposes" or sent at the request "of the recipient of the samples" also

14   improperly conflates "importation" with "sale" or "offer for sale."  In fact, Genius's untimely

15   interrogatory amendment expressly combines "importation" and "sale" by saying that Genius

16   "███████████████████."  (Ex. B, Genius 6th Supp. Resp. at 22 (Dec. 10, 2014) (emphasis

17   added).)  Yet the statute is unambiguous that importation is a separate offense that does not

18   require either a sale or an offer for sale.[8]  35 U.S.C. § 271(a); *see also Bristol-Myers Co. v.*

19   *Erbamont Inc.*, 723 F. Supp. 1038, 1044 (D. Del. 1989) ("a cause of action under § 271(g) arises

20   upon mere importation—no sale or use is necessary").[9]

21        This District rejected Genius's argument in *Athena Feminine Techs. Inc. v. Wilkes*, No.

22   10-cv-04868, 2011 WL 4079927, at *4 (N.D. Cal. 2011).  In that case, the infringer had not

23   received FDA approval for the accused product and therefore "could not have sold" the accused

24

25   [8] In an analogous example, the statute defining the International Trade Commission's jurisdiction
     over patent cases lists "importation into the United States" as a separate offense from "the sale for
     importation" or "the sale within the United States after importation."  19 U.S.C. § 1337(a)(1)(B).

26   [9] It is also worth noting that even if Genius's interpretation for ***direct*** infringement were correct
     (which it is not), Genius would still be liable for ***inducing*** infringement.  *E.g.*, *Minitube of Am.,*

27   *Inc. v. Reprod. Provisions, LLC*, No. 13-CV-685, 2014 WL 1761317, at *15 (E.D. Wis. May 1,
     2014) ("Minitüb Germany (and MTI by extension) would be liable for inducement…To allow

28   Minitüb Germany off the hook because it is technically only an exporter makes little sense…").

1    products in the U.S.  *Id.*  Nevertheless, the Court found that "[u]nder the plain terms of § 271(a),

2    the act of importation, standing alone, is sufficient to state a claim for direct infringement."  *Id.*

3    "[T]o directly infringe under § 271(a), an importation of an infringing product need not include,

4    nor be followed by, a sale, offer to sell, or any other particular course of action; the infringing

5    activity is the unauthorized importation of an infringing product itself."  *Fellowes, Inc. v. Michilin*

6    *Prosperity Co.*, 491 F. Supp. 2d 571, 583 (E.D. Va. 2007).  For example, in *Fellowes*, the court

7    found importation when a single unit of each accused product was sent "to Underwriters

8    Laboratories, Inc. (UL), in the United States solely to obtain UL approval thereof."  *Id.*

9         Exactly as the statute says, importation does not require a sale or offer for sale.  It merely

10   requires shipping into the U.S., which Genius did.  Accordingly, Genius has directly infringed.

11               **2.    Genius Offers Only Attorney Argument, Not Evidence.**

12        Genius's attorney argument about its shipments being "development samples" or "at the

13   instruction of the recipient" also lacks any factual foundation.  The only document cited by

14   Genius is an ████████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████████████████

16   ████████████████████████████████████████████." (D.I. 216-11.) ██████████████████████

17   ██████████████████████████████████████████████████████████████████████

18   ██████████████████████████████████." (*Id.* § 4.1 (██████████████████  The

19   Federal Circuit has repeatedly warned that "unsworn attorney argument…is not evidence."

20   *Gemtron Corp. v. Saint-Gobain Corp.*, 572 F.3d 1371, 1380 (Fed. Cir. 2009).  Here, as in the

21   past, "Kilpatrick Townsend has not offered evidence (as opposed to attorney argument)."  *Wi-*

22   *LAN, Inc. v. Kilpatrick Townsend & Stockton LLP*, 684 F.3d 1364, 1368 (Fed. Cir. 2012).

23        Making matters worse, Genius's single document only relates to three Accused Products:

24   the GS-8662 v.4 ("██████████"), GS-8656 ("██████████"), and GS-8648 ("██████████").

25   (D.I. 216-11; D.I. 222-8, Bentley Infringement Rep. at 20.)  But Largan has accused other Genius

26   lenses of direct infringement, such as the GS-8689 ("██████████ and GS-8740 ("██████████ and

27   Genius documents show such products being shipped to Apple as well.  (*E.g.*, D.I. 222-34, GSEO

28   00059797.)  Genius's motion has no answer regarding these additional infringing acts.

1     **B.**    **Genius Directly Infringes "Within the United States."**

2          **1.**     **Genius Conveniently Omits the Fact that It** ████████

3

4      As predicted in Largan's Motion for Summary Judgment of Infringement, Genius relies

5  on the *Halo* case in an effort to discount its domestic sales activities with Apple.  (D.I. 214 at 11-

6  12.)  Interestingly, however, Genius completely omits any discussion of ████████

7  ████████████████████████████████████████ .

8      California law recognizes a broad "freedom of contract,"[10] including the freedom to

9  contractually subject oneself to the laws of California.  *Nedlloyd Lines B.V. v. Super. Ct.*, 3 Cal.

10  4th 459, 468 (1992) ("When two sophisticated, commercial entities agree to a choice-of-law

11  clause like the one in this case, the most reasonable interpretation of their actions is that they

12  intended for the clause to apply to all causes of action arising from or related to their contract.").

13  Nothing in patent law is inconsistent with this concept.  *See Mallinckrodt, Inc. v. Medipart, Inc.*,

14  976 F.2d 700, 708 (Fed. Cir. 1992) ("Unless the condition violates some other law or policy (in

15  the patent field, notably the misuse or antitrust law), private parties retain the freedom to contract

16  concerning conditions of sale.").

17  ██████████████████████████████

18  ████████████████████████████████████

19  ████████████████████

20  ██████████████████████████████████

21  ████████████████████████████████

22  ████████████████

23  (D.I. 222-10, GSEO 00028064, ¶ 16.11 (emphasis added).)  By agreeing to this provision, Genius

24  ████████████████████████████████████[11]

25  ───────────

[10] *Carson v. Mercury Ins. Co.*, 210 Cal. App. 4th 409, 426 (2012) (citing Cal. Const., art. I, § 1.).

26  "Even where a statute expressly purports to limit express contractual provisions contrary to its own terms, any limit upon freedom of contract is narrowly construed."  *Clarendon Nat. Ins. Co.*

27  *v. Ins. Co.*, 442 F. Supp. 2d 914, 930 (E.D. Cal. 2006) (citing *Henricks v. Metropolitan Life Ins. Co.*, 7 Cal. 2d 619, 632 (1936)).

28  [11] ████████████████████████████████

1    The fact that patent infringement is a tort does nothing to alter this conclusion: "a valid choice-of-

2    law clause, which provides that a specified body of law 'governs' the 'agreement' between the

3    parties, encompasses all causes of action arising from or related to that agreement, regardless of

4    how they are characterized, including tortious breaches of duties emanating from the agreement

5    or the legal relationships it creates." *Nedlloyd*, 3 Cal. 4th at 470.

6    ████████████████████████████████████████████████████

7    ████████████████████████████████. (D.I. 222-10, Ex. 8, GSEO 00028064, at 28.)  For

8    example, the only document that Genius cites in support of its argument on importation is an

9    ████████████████████████████████████████████████████

10   ████████████████████████████████████████████████

11   ████████████████████████████████████."  (D.I. 216-11 at 1 (emphasis added).)

12   ████████████████████████████████████████

13   █████  (*See, e.g.*, D.I. 222-36, GSEO 00018143 ("████████████████████████

14   ████████████████████████████████████████████

15   ████████████████████████████████████████████

16   ████████████████████████████████████████

17   ████████████████████████████████."  Because all of this activity

18   is deemed to occur within California, it occurs "within the United States" for purposes of § 271.

19          This District has upheld ***identical*** language in contracts.  For example, in *Gabana*, the

20   Court examined a situation in which a franchisee Gabana "is not a resident or domiciliary of

21   California" and "has never operated its business in California." *Gabana Gulf Distribution, Ltd. v.*

22   *Gap Int'l Sales, Inc.*, No. C 06-02584 CRB, 2006 WL 2355092, at *5 (N.D. Cal. Aug. 14, 2006).

23   Normally, this would be insufficient to satisfy the California Franchise Relations Act ("CFRA"),

24   which requires "either the franchisee is domiciled in this state or the franchised business is or has

25   been operated in this state."  Cal. Bus. & Prof. Code § 20015.  Yet the contract contained the

26   ***identical*** language to that at issue here (*i.e.*, "performed entirely within California between

27

28   ████████████████████████████████████████████. (*E.g.*, Ex. C, GSEO 00092839.)

OPPOSITION TO MSJ RE
NON-INFRINGEMENT
CV-13-2502-JD

California residents") and resulted in Gabana being treated as a California resident:

> The choice of law provision in the Agreement does not merely choose California law to govern; rather, it chooses California law "as applied to agreements entered into and to be ***performed entirely within California between California residents***." NDA, ¶ 11(a). In other words, if the plain language of the contract is given effect, it stipulates that Gabana shall be treated as a California resident and that the contract shall effectively be deemed to have been entered into within California.
>
> Defendant has pointed to no authority, nor can the Court find one, that would prevent the parties from stipulating that Gabana should be treated as a California resident.

*Gabana*, 2006 WL 2355092, at *5 (emphasis added).

The Ninth Circuit upheld a similar agreement with the clause "this Franchise shall be deemed to have been made in the State of New York, County of Bronx," and found that the parties "'deemed' their agreement to have been made in New York. It is a fundamental premise of contract law that contracts should be enforced according to their terms." *Schwartz v. Pillsbury Inc.*, 969 F.2d 840, 847 (9th Cir. 1992) (quotation omitted).

Here, Genius ███████████████████████████████████████████████████ ████████████████████████████████████████. Genius cannot enjoy the benefits of that contractual agreement without also accepting the burdens.

**2.** ██████████████████████████████, **Genius Has Still Made Offers for Sale and Sales to Apple Within the United States.**

As explained above, the Court need not even reach Genius's argument under *Halo* due to ████████████████████████████. But even if the Court disagrees and allows Genius to escape the ████████████████████████████████, relevant precedent and the facts here dictate the same result: Genius's offers to sell lenses to Apple and lens sales to Apple have occurred in the U.S.

In *Halo*, the defendant Pulse manufactured components that could be mounted on circuit boards inside electronic devices. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 769 F.3d 1371, 1374 (Fed. Cir. 2014). Pulse sold those components overseas, including to contract manufacturers who would mount them onto circuit boards that were then incorporated into internet routers that third party Cisco sold worldwide. *Id.* The district court granted summary judgment that there was no sale or offer for sale by Pulse in the U.S. (though still found inducement), and the Federal Circuit

1   affirmed.  Unlike here, Pulse and Cisco only had a "general business agreement, that [] did not

2   refer to, and was not a contract to sell, any specific product."  *Id* at 1379.

3        The situation here is much closer to the near-simultaneous decision in *MediaTek Inc. v.*

4   *Freescale Semiconductor, Inc.*, No. 11-CV-5341 YGR, 2014 WL 580836, at *4 (N.D. Cal. Feb.

5   13, 2014).  *MediaTek* distinguished the district court *Halo* ruling because in *Halo* "there was no

6   evidence of a direct contractual relationship between Cisco and Pulse."  *Id.*  Like *MediaTek*, the

7   nature of how Genius sells products to Apple creates an offer for sale and sale within the U.S.

8                     **a.    The Accused Genius Products Are Exclusive to Apple.**

9        All of the Genius products accused of direct infringement (GS-8662 v.4, GS-8689, GS-

10  8740, and GS-8656) are exclusively for Apple.[12]  (D.I. 222-2, Genius 5th Supp. Resp. at 9-11;

11  D.I. 222-11, Mack-Mumford Dep. 118:12-15 (Oct. 21, 2014).)  That means when Genius sells

12  any accused Genius lens, Genius knows that lens is intended for an Apple end product.  (*E.g.*, D.I.

13  222-5, Bone Dep. 259:6-23 (Oct. 23, 2014).)

14                     **b.    ████████████████  Governs its Sales to Apple.**

15  ████████████████████████████████████████████████ is very similar to the

16  contract in *MediaTek* that the court distinguished from the original *Halo* ruling.  In *MediaTek*,

17  "Freescale negotiated and signed a 'Freescale Standard Sales Agreement' with AFS."  2014 WL

18  580836, at *1.  That contract provided "that AFS is the 'Buyer' and that 'Buyer desires to

19  purchase products from Freescale, and Freescale desires to sell products to Buyer strictly in

20  accordance with the terms and conditions of this Agreement.'"  *Id.*  The "Freescale–AFS

21  Agreement 'govern[ed] all product purchases made by Authorized Purchasers…from Freescale.'"

22  *Id.*  Finally, "'Authorized Purchasers' include[d] AFS as well as 'Designees' authorized by AFS

23  under the Agreement 'to issue purchase orders for Products, receive, reschedule or cancel

24  deliveries of such Products, process warranty related claims related to such Products, and pay for

25  such Products and all related costs.'"  *Id.*  Although Authorized Purchasers were allowed to issue

26  ────────────────

27  [12] For indirect infringement, 7 of the 8 accused products are exclusive for Apple.  The eighth (the GS-8627) has only been sold for use by Motorola, which is based in Chicago, Illinois.  (*See* D.I. 222-11, Mack-Mumford Dep. 119:7-9, 113:22-24; D.I. 222-2, Genius 5th Supp. Resp. at 9 (Oct.

28  24, 2014) (██████████████████████████████).)

1   purchase orders, the "delegation of authority to issue purchase orders does not change the fact

2   that every sale thereunder is subject to the terms and conditions in the Agreement." *Id.* at *3.

3   ████████████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████████████████████

8   ████████████████████████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████████████████████

13  ██████ "provides tangible evidence of a sales relationship" and "not merely 'some pricing

14  discussions' as existed in *Halo*." *Mediatek*, 2014 WL 580836, at *4.

15          **c.**     ████████████████████████████████████████████████

16          As noted above, in *Halo*, the accused infringer's contract with Cisco did not identify any

17  specific product. ████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████████████

19  ████████████." (D.I. 222-10, GSEO 00028064, at 28). ████████████████████████

20  ██████ ██████████████████████████████ (*See* D.I. 222-37, Dep. Ex. 474 (GS-8648, GS-

21  8656, GS-8662); D.I. 222-22, GSEO 00050721 (GS-8689); D.I. 222-23, GSEO 00050724 (GS-

22  8740).) ████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████████████

24  ████████████████████████████████████████ (*Id.*; D.I. 222-6, Whitehead Dep.

25  244:18-25 (testifying SOWs included price since at least 2012).)  That further distinguishes this

26  case from *Halo*, where "price and quantity" were established by "Cisco's foreign contract

27  manufacturers," rather than Cisco itself.  *Halo*, 769 F.3d at 1379, 1375 (the "general agreement

28  did not refer to any specific Pulse product or price"); *cf. MediaTek*, 2014 WL 580836, at *3 ("the

OPPOSITION TO MSJ RE
NON-INFRINGEMENT
CV-13-2502-JD

1  evidence indicates that the sale of the accused products was to AFS 'Affiliates' or 'Designees'

2  and was controlled by an agreement, including price terms and pricing restrictions").  In fact, the

3  evidence from Genius's witnesses ████████████████████████████████████████████████

4  ████████████████████████████████████████████████████████████████████

5  ████████████████████████████████  (D.I. 222-6, Whitehead Dep. 249:15-264:3; D.I. 222-11,

6  Mack-Mumford Dep. 48:12-53:22.) ████████████████████████████████████████████████

7  ████████████████████████████████.  (Ex. A, GSEO 00093595.)

8            **d.**    ████████████████████████████████████████████████**ts.**

9         Genius attempts to conceal the true extent of its interactions with Apple by saying Genius

10  merely "engages in general pricing discussions" with Apple ████████████████████████████

11  ████████████████████████" (D.I. 215 at 5.) ████████████████████████████████████

12  ████████████████████████████████████████████████████████████████████

13  ██████████████████████████████████████████████)."  (D.I. 216-11 at

14  § 3.1.) ████████████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████████████████████

16  ████ [13]  (*Id.* § 4.1.) ████████████████████████████████████████████

17  ████████████ (*See also* Ex. C, Bone Dep. 260:1-261:8.) ████████████████████████████

18  ████████████████████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████████████████████

21  ████.  (Ex. D, Mack-Mumford Dep. 78:5-16.)

22        Similarly, ████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████████████████████

24  ██████████████████████████████████████████████████████████████.  (Ex. D,

25  ─────────────────

[13] ████████████████████████████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████████████████████████

28  ████████████████████████████████████████████████████████████████████████

1   Mack-Mumford Dep. 87:20-88:24.) ██████████████████████████████████

2   ████████████████████████████████████████████████████████████████

3   ██████  (*Id.* at 89:8-13.) ████████████████████████████████████

4   ████████████████████████████████████████████████████████████████

5   ██████████████████████████.  (Ex. C, Bone Dep. 260:1-261:14.)  All

6   of this evidences that Apple is the real customer.  Accordingly, *Mediatek*, not *Halo*, controls this

7   situation, and the Accused Products are sold in the U.S.[14]

8              **3.      Technical Experts Have No Expertise in Legal Meanings Such as**
             **"Within the United States" or "Importation."**
9

10          To the extent Genius implies that Largan's technical expert needed to provide opinions on

11  what constitutes acts "within the United States" or what constitutes an "offer for sale" vs.

12  "importation," that misstates the law.  A technical expert has no expertise on such legal issues,

13  and therefore any such "opinion" would be inadmissible under Federal Rule of Evidence 702.

14  *E.g.*, *Nationwide Trans. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) ("an

15  expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate

16  issue of law"); *Nutrition 21 v. U.S.*, 930 F.2d 867, 871 n.2 (Fed. Cir. 1991) ("An expert's opinion

17  on the ultimate legal conclusion is neither required nor indeed 'evidence' at all."); *Docusign, Inc.*

18  *v. Sertifi, Inc.*, 468 F. Supp. 2d 1305, 1307 n.3 (W.D. Wash. 2006) ("Technical experts are not

19  qualified to make legal conclusions and arguments, and where a party elects to include legal

20  arguments in a technical declaration, rather than in a brief, those arguments may appropriately be

21  disregarded.").  Thus, Genius's criticism of Dr. Bentley is nothing more than a red herring.

22          **C.      Genius Contributes to Infringement by Selling, Offering to Sell, and**
               **Importing the Accused Products "Within the United States."**
23
             Genius's conclusory section on contributory infringement turns on the same issue as direct
24

25  _____
    [14] Genius's reliance upon the district court decision in *Ziptronix* fails for the same reasons as *Halo*
26  discussed above.  In particular, the *Ziptronix* decision was based on the premise that while the
    parties "negotiated and executed contracts for the sale of the accused wafers in the United States,
27  the contracts contemplated delivery and performance abroad."  *Ziptronix, Inc. v. OmniVision*
    *Techs., Inc.*, No. 10-cv-05525-SBA, 2014 WL 5463051, at *5 (N.D. Cal. Oct. 21, 2014).  Here,
28  by contrast, ████████████████████████████████████████████████████████████████

                                        OPPOSITION TO MSJ RE
                                        NON-INFRINGEMENT
                                        CV-13-2502-JD

1  infringement: whether Genius's actions occur "within the United States." (D.I. 215 at 13.)

2  Accordingly, Genius contributes to infringement of the sensor claims for all the reasons discussed

3  above for direct infringement of the non-sensor claims.

4  **D.    Largan Is Not Alleging Contributory Infringement for Non-Sensor Claims.**

5  Given Genius and its technical expert Dr. Barbastathis do not dispute that Genius's

6  Accused Products meet all claim elements of the non-sensor claims,[15] Largan is not alleging

7  contributory infringement regarding them: Genius's products directly infringe the non-sensor

8  claims if in the U.S., while Genius's actions outside the U.S. induce infringement. Accordingly,

9  Genius's motion for summary judgment of no contributory infringement for the non-sensor

10  claims is moot.

11  **E.    Genius Induces Infringement Because It Had the Requisite Knowledge.**

12  Inducement is a form of indirect infringement under § 271(b), which states, "Whoever

13  actively induces infringement of a patent shall be liable as an infringer." Put another way,

14  inducement means that the indirect infringer actively encouraged a third party to directly infringe

15  a patent. Inducement requires that the patentee show the alleged inducer: (1) "is aware of the

16  patent"; (2) "knows or should have known that the encouraged acts constitute infringement of the

17  patent"; and (3) "has an intent to cause the encouraged acts." *Broadcom Corp. v. Qualcomm Inc.*,

18  543 F.3d 683, 698 (Fed. Cir. 2008). Genius's motion does not dispute the first prong (awareness

19  of the patents)[16] or the third prong (intent),[17] only the second prong (knows or should have known

20

21  [15] *See* D.I. 222-33, Barbastathis Dep. 144:4-14, 14:16-18, 16:3-8, 21:2-14, 142:23-143:13

22  ████████████; Ex. B, Genius 6th Supp. Resp. at 15-22 (Dec. 10, 2014) (only ████████).

23  Genius admits that Largan told Genius that Genius was infringing all of the Patents-in-Suit on April 2, 2013, and Genius newly admits that it '████████████████

24  ████████████████ (Ex. B, 6th Supp. Resp. at 25 (Dec. 10, 2014).)

25  While Genius's "Issues to Be Decided" summary mentions "knowledge *and intent*," (D.I. 215 at 2 (emphasis added)), Genius's actual argument section is focused entirely on "knowledge."

26  (*Id.* at 13-15.) As such, Genius should be precluded from introducing new arguments regarding "intent" in its reply. *Harrold v. Experian Info. Solutions, Inc.*, No. C 12-02987, 2012 WL

27  4097708, at *4 n.2 (N.D. Cal. Sept. 17, 2012) ("Sandbagging with a new legal theory in a reply brief will not be tolerated."). But even if considered, Genius had the requisite intent for the

28  reasons in Largan's motion for summary judgment of infringement. (*E.g.*, D.I. 214 at 23-25.)

09075-0006/LEGAL124430606.2     -16-     OPPOSITION TO MSJ RE NON-INFRINGEMENT CV-13-2502-JD

1   of the direct infringement).  In particular, Genius argues that there is no "allegation, let alone

2   proof, that Genius knows that these sales constitute patent infringement." (D.I. 215 at 14.)  It is

3   difficult to imagine Genius's basis for this assertion given that Genius admits Largan told Genius

4   about the infringement on April 2, 2013.

5                    **1.      Genius Knew Apple's and Motorola's Sales Directly Infringed.**

6          The Supreme Court has said that, "induced infringement under § 271(b) requires

7   knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v.*

8   *SEB S.A.*, 131 S. Ct. 2060, 2068 (2011).  Here, there can be no doubt that Genius knew of the

9   infringement because Largan told Genius on April 2, 2013, via letter and claim charts that Apple

10  products incorporating Genius's Accused Products infringed the Patents-in-Suit.  (Ex. E,

11  Infringement Letter; Ex. B, 6th Supp. Resp. at 25.)  Thus, at the latest, Genius has had knowledge

12  of infringement since at least April 2, 2013.

13         Genius also does not dispute that Apple and Motorola products incorporating Genius's

14  Accused Products meet each and every element of the asserted claims.  In fact, Genius's technical

15  expert did not even analyze Genius's technical documents, nor any documents from Apple or

16  Motorola, so he has admitted he has no basis to dispute that Apple and Motorola's products meet

17  every limitation of the asserted claims.  (D.I. 222-33, Barbastathis Dep. 152:4-13, 144:4-14,

18  14:16-18, 16:3-8, 21:2-14, 142:23-143:13.)  Accordingly, all the elements of inducement are met.

19                   **2.      Inducement Requires Knowledge Only that the *Induced* Act**
                             **Constitutes Direct Infringement.**
20

21         To the extent Genius is arguing that it did not know *its* acts constituted indirect

22  infringement, that is not required.  As the Supreme Court and Federal Circuit have said, what is

23  required is knowledge "that the ***induced*** acts constitute patent infringement." *Global-Tech*, 131

24  S. Ct. at 2068 (emphasis added); *Broadcom*, 543 F.3d at 698.  There is no requirement of

25  knowledge that the ***inducing*** act constitutes indirect infringement.  All that matters is Genius

26  knew that devices incorporating Genius's Accused Products directly infringed, and Largan told

27  Genius that on April 2, 2013.

28

OPPOSITION TO MSJ RE
NON-INFRINGEMENT
CV-13-2502-JD

**3.     Genius Knew or Should Have Known Apple or Motorola Products Containing Genius's Accused Products Were Sold in the U.S.**

Genius may be trying to argue that it did not know that Apple and Motorola products sold in the United States incorporated Genius lenses rather than Largan lenses.[18]  But that too fails as a matter of both fact and law.

There is no dispute that (1) the Apple and Motorola end products indicated in the chart above incorporate the Accused Products;[19] (2) those Apple and Motorola end products are sold in the U.S.;[20] and (3) Genius knows those Apple and Motorola end products are sold in the U.S.[21] Genius's sole dispute appears to be whether Genius knew or should have known at least one unit of those products sold in the U.S. contained a Genius lens rather than one from another supplier.

First, Genius was ████████████████████████████████████████████████████████████████████████. (*E.g.*, D.I. 222-32, GSEO 00088199; D.I. 222-46, MMLLC_Largan000390; *see also* D.I. 222-49, Ross Dep. 58:14-59:2.)  Because no other companies were supplying lenses to a product Genius admits was sold into the United States, Genius therefore necessarily knew or should have known units containing Genius's lenses were sold by Motorola and Apple in the United States.

Second, at best Genius was willfully blind.  Genius sold ████████████ of units of the Accused Products to the Apple and Motorola supply chains, and Genius admits to knowing the particular Apple and Motorola end devices at issue here were sold in the U.S.  Indeed, it would be difficult to argue that a sophisticated company such as Genius did not know that Apple's flagship products such as the ████████████ were sold in the U.S.  Thus, to the extent that Genius can even be believed that it had no knowledge that Apple and Motorola

---

[18] *See, e.g.*, D.I. 222-25, Genius RFA Resps. at 20-26; D.I. 222-54, 3rd Rog Resps. at 17-20.

[19] *E.g.*, Ex. B, Genius 6th Rog Responses, at 9-11.

[20] *E.g.*, D.I. 222-25, Genius RFA Responses, at 8-20; D.I. 222-47, MMLLC_Largan000391 (showing Motorola's U.S. sales for phones incorporating the GS-8627).

[21] *E.g.*, Ex. D, Mack-Mumford Dep. 244:16-245:7 (Oct. 21, 2014); D.I. 222-49, Ross Dep. 66:9-24, 139:24-140:5; D.I. 222-6, Whitehead Dep. 213:11-214:9.

1    products actually incorporating Genius lenses were sold in the United States, Genius "took

2    deliberate steps to avoid knowing that fact," and "therefore willfully blinded itself to the

3    infringing nature of" Apple and Motorola's sales. *Global-Tech*, 131 S. Ct. at 2072.

4         Genius's willful blindness is reinforced by the fact that Genius employees avoided

5    discussing this issue with Apple and Motorola, and never asked Apple and Motorola not to import

6    products incorporating Genius lenses into the United States, even after receiving Largan's notice

7    of infringement and even after Largan's Complaint was filed. (*See, e.g.*, D.I. 222-11, Mack-

8    Mumford Dep. 245:8-16 (█████████████████████████████████████████████████

9    ███████████████████████████████████████████████████████████████████████████

10   D.I. 222-6, Whitehead Dep. 215:11-22; 219:17-21 (██████████████████████████████████

11   ███████████████████████████████████████████████████████████████.).)[22]

12        Similarly, Genius admits to importing at least the GS-8648 and GS-8656 into the United

13   States **after** the Complaint was filed, (D.I. 222-31, Barbastathis Rebuttal Report at 16; D.I. 222-

14   27, GSEO 00024743), and recent evidence conclusively established the GS-8740 was imported

15   into the United States after the Complaint as well. (D.I. 222-28, GSEO 00059789.) Genius

16   assuming Apple would never use any of these units again constitutes willful blindness because

17   "use" is a basic form of direct infringement under § 271(a).

18              **4.    Genius's Only Case to the Contrary Is Distinguishable.**

19        Genius's only cited case on this point, *Nichia Corp. v. Seoul Semiconductor Co.*, No. C

20   06-0162 MMC, 2007 WL 2428040, at *4 (N.D. Cal. Aug. 22, 2007), has no relevance here. In

21   *Nichia*, the accused inducer (Seoul Semiconductor) sold the accused LEDs to a third party

22   (Samsung Electronics), but the accused inducer had no reason to know that Samsung Electronics

23   would later sell a *de minimis* total of 40 units to a U.S. subsidiary (Samsung SDI America). *Id.* at

24   ───────────────────

25   [22] *See, e.g.*, *Halo Elecs., Inc. v. Pulse Eng'g, Inc.*, 810 F. Supp. 2d 1173, 1209 (D. Nev. 2011),
     *aff'd*, 769 F.3d 1371 (Fed. Cir. 2014) ("Halo presented evidence that Pulse actively promotes its
26   accused products to end users in the United States who purchase products incorporating the
     accused products from Pulse's customers. Halo offers evidence that Pulse employees conduct
     site visits and give technical presentations to end users in the United States. Further, Halo
27   provides evidence that Pulse offers customer support to, and makes accommodations to the
     manufacturing process for, end users in the United States. Evidence of this nature has been
28   deemed sufficient to permit a reasonable jury to find inducement of infringement.").

1    *4.  Moreover, there was no evidence that the accused inducer ever had any contact with the U.S.

2    subsidiary nor that it even knew the products had been sold to the U.S. subsidiary.  *Id.*  Here, by

3    contrast, Genius is selling ████████ of units that find their way into the United States, and Genius

4    is working directly with Apple in Cupertino, California, and Motorola in Chicago, Illinois,

5    knowing full well that Apple and Motorola sell their products in the United States.

6           A more instructive case given the facts here is *MEMC*.  In that case, the Federal Circuit

7    reversed the district court's finding of no inducement and remanded due to (1) the inducer

8    provided "substantial technical support to [the U.S. direct infringer] in the form of e-mail

9    communications"; (2) the inducer "sent a shipment of certain wafers directly to" the U.S. direct

10   infringer; and (3) the inducer "made several on-site visits to [the U.S. direct infringer], during

11   which technical presentations on the [inducer's] wafers were made."  *MEMC Elec. Mats., Inc. v.*

12   *Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1379 (Fed. Cir. 2005).  For example, "the

13   series of e-mails between SUMCO [the accused inducer] and Samsung Austin [the U.S. direct

14   infringer] provide sufficient circumstantial evidence for a reasonable jury to conclude that

15   SUMCO was not only aware of the potentially infringing activities in the United States by

16   Samsung Austin, but also that SUMCO intended to encourage those activities."  *Id.* at 1380.

17          All three of the *MEMC* factors are present even more strongly in this case.  First, Genius

18   provides substantial support directly to U.S. employees of Apple and Motorola in the form of

19   email, phone calls, and meetings.  Michael Francis, Genius's technical sales representative for

20   Apple, alone ██████████████████████████████████████████████████████████████

21   ████████████ Ex. F, Francis Dep. 26:5-9.)  For example, ████████████████████████

22   ████████████████████████████████████████████████████████████████████████

23   ████████████████████████████████████████████ .  (*Id.* at 27:6-11, 158:1-20.)  ████

24   ████████████████████████████████████████████████████████████████████████

25   ████████████████████████████████████████████████████████████████████

26   ████████████████████████ ."  (Ex. D, Mack-Mumford Dep. 45:14-23, 56:4-17 (Oct. 21,

27   2014).)  ████████████████████████████████████████████████████████

28   ████████████████████████████████████████████████████████████████████

1   ██████████████████████████. (*Id.* at 262:24-263:3, 263:13-16.) ████████████████

2   ████████████████████████████████████████████████████████████████████████."

3   (*Id.* at 263:24-264:1.)  Jeffrey Ross, ██████████████████████████████████████████

4   ██████████████████████████. (Ex. G, Ross Dep. 23:18-24:9.) ████████████████████

5   ████████████████████████████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████████████████████████

8   ████████████████████████████████████████████████████████████. (*E.g.*, *id.* at

9   31:6-32:24, 35:2-36:22, 38:4-39:2, 42:4-6, 54:20-55:6.)

10         Second, the evidence shows Genius shipped to the U.S. not just once like in *MEMC* but

11   rather had a pattern of multiple shipments over multiple year totaling hundreds of units, and that

12   Genius attempted to conceal these shipments from Largan.  (*E.g.*, D.I. 222-31, Barbastathis

13   Rebuttal Report at 16; D.I. 222-27, GSEO 00024743; D.I. 222-28, GSEO 00059789.)

14         Third, whereas the Federal Circuit found even "several" on-site visits to the U.S. customer

15   could support inducement, here the evidence shows that Genius meets with Motorola in Chicago

16   every six weeks, and that ███████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████████████████████████

18   ████████  (Ex. G, Ross Dep. 23:18-24:9; Ex. F, Francis Dep. 27:6-11.)  Thus, the weight of the

19   evidence here is even more in favor of inducement than in *MEMC*.

20         As a result, Genius had the requisite knowledge, and the Court should deny Genius's

21   motion and instead grant summary judgment that Genius has induced direct infringement of

22   Motorola and Apple, their retailers and resellers, and their customers.

23         **F.    Genius Indirectly Infringes Because Apple and Motorola Products
              Incorporating the Accused Genius Lenses Directly Infringe.**

24

25         In its motion, Genius argues that it cannot indirectly infringe because Largan's expert

26   "Dr. Bentley has admitted that she has done no analysis, and has no knowledge, as to whether

27   Apple or Motorola directly infringe any of the asserted patents."  (D.I. 215 at 15.)  This assertion,

28   and Genius's quotation from Dr. Bentley's deposition, (*id.* at 4-5), grossly mischaracterize the

1    facts and the law.  The Ninth Circuit has expressly stated that "an expert witness cannot give an

2    opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law."  *Nationwide*, 523

3    F.3d at 1058.  Not surprisingly then, Dr. Bentley in her deposition declined to reach ultimate legal

4    conclusions regarding whether Apple or Motorola "infringed."  (D.I. 215 at 4-5.)  What Genius

5    fails to tell the Court is that Dr. Bentley did reach a ***technical*** conclusion that Apple and Motorola

6    devices incorporating Genius's Accused Products meet every limitation of the asserted claims:

7           Q. Those Accused Products get incorporated into Apple and Motorola
             devices; is that right?

8           A. They are.

9           Q. So would the Apple and Motorola products listed in the chart on page 20
             meet all of the claim elements for the asserted claims shown on page 20?

10          A. They would.

11   (Ex. H, Bentley Dep. 219:23-220:4 (objection omitted).)  Similarly, Dr. Bentley's report listed

12   each Apple and Motorola product incorporating Genius's Accused Product, and explained that

13   each lens model, "as used in products such as the ones listed above, meets every element" of the

14   asserted claims.  (D.I. 222-8, Bentley Infr. Rep. ¶¶ 75, 78, 82, 86, 90, 94, 98, 102, 106.)

15          Dr. Bentley's detailed analysis comparing Genius's Accused Products—and the Apple

16   and Motorola products incorporating them—to each and every claim limitation stands in sharp

17   contrast to Genius's expert Dr. Barbastathis, who admits to having never even reviewed Genius's

18   technical documents and not even knowing which Apple or Motorola products incorporate

19   Genius's Accused Products.  (D.I. 222-32, Barbastathis Dep. 144:4-14, 22:13-23:3.)

20          As discussed above, Genius itself does not dispute that (1) Apple end devices incorporate

21   the Accused Products; and (2) those Apple end devices are sold in the United States.  Instead,

22   Genius appears to argue that it cannot be certain ***how many*** units of Apple and Motorola's

23   devices incorporating Genius's lenses—as opposed to Largan's—are sold, offered for sale,

24   imported, or used in the United States, yet that argument goes to damages, not infringement.  *See,*

25   *e.g.*, *Lucent Techs.*, 580 F.3d at 1318–19 (finding circumstantial evidence "adequate to permit a

26   jury to find that at least one other person within the United States during the relevant time period,

27   other than the expert, had performed the claimed method").  For example, courts regularly find

28   indirect infringement based upon circumstantial evidence or statistical estimates of the

1   percentages of products containing a given component.  *E.g.*, *Semiconductor Energy Lab. Co. v.*

2   *Chi Mei Optoelecs. Corp.*, 531 F. Supp. 2d 1084, 1113 (N.D. Cal. 2007) ("SEL alleges that CMO

3   sells its products to customers who then import infringing end-products into the United States.

4   SEL need not identify every specific act of direct infringement…"); *Lucas Aerospace, Ltd. v.*

5   *Unison Indus., L.P.*, 899 F. Supp. 1268, 1286 (D. Del. 1995) (finding contributory infringement

6   where testimony established "Lucas supplies Pratt & Whitney Canada with 50 percent of its

7   ignition exciter requirements for the PW100 engine" and "55 to 60 percent of Pratt's PW100

8   engine output makes its way into the United States"); *Halo*, 810 F. Supp. 2d at 1209 ("While

9   Halo does not provide direct evidence about whether, and the number of, accused Pulse products

10  that end up in the United States, Pulse's corporate representative testified that he believed at least

11  some of the accused products end up in the United States.  This type of circumstantial evidence

12  has been held to be substantial evidence of indirect infringement.").  Here, Genius cannot

13  reasonably dispute that at least one unit of Apple and Motorola's devices containing the accused

14  Genius lenses ended up in the United States.

15      Moreover, regardless of whether looking at infringement or damages, "[i]t is hornbook

16  law that direct evidence of a fact is not necessary.  Circumstantial evidence is not only sufficient,

17  but may also be more certain, satisfying and persuasive than direct evidence."  *Metabolite Labs.,*

18  *Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1365 (Fed. Cir. 2004) (quotation omitted).

19  Here, Apple itself has said it "████████████████████████████████████████████

20  ██████████       (D.I. 222-24, Leopold Decl. ¶ 7.)  Genius witnesses ████████████

21  ████████████████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████████.  (*See,*

23  *e.g.*, D.I. 222-11, Mack-Mumford Dep. 245:8-16; D.I. 222-6, Whitehead Dep. 218:21-219:21,

24  213:20-214:9; D.I. 222-49, Ross Dep. 139:12-22.)  The only logical conclusion a reasonable juror

25  could reach from this evidence is that the percentage of Apple and Motorola products in the U.S.

26  containing a Genius lens is roughly the same as the percentage of those products worldwide

27  containing a Genius lens.  *See Semiconductor*, 531 F. Supp. 2d, at 1113 ("Although SEL

28  acknowledges an evidentiary void as to whether the sales of CMO products track the same

OPPOSITION TO MSJ RE
NON-INFRINGEMENT
CV-13-2502-JD

1    percentages as sales of products generally…SEL need not identify every specific act of direct

2    infringement (i.e., each individual importation) by each of CMO's numerous customers in order

3    to prove its claim."); *see also* (Ex. I, Swinehart Rep., Ex. 5 at 2 (showing Genius lenses for Apple

4    worldwide ranging from 6% to 100%)).  As a result, Genius cannot credibly argue that it did not

5    know—or should have known—that Apple and Motorola, their retailers and resellers, and their

6    customers have directly infringed through products incorporating Genius lenses that are sold,

7    offered for sale, imported, or used in the U.S.  Indeed, ███████████████████████

8    ██████████████████████████████████████████████████████████

9    ██████████████████████████████████████████████████████

10   ████████████████████████████████████████████. (*E.g.*, D.I.

11   222-32, GSEO 00088199; D.I. 222-46, MMLLC_Largan000390; *see also* D.I. 222-49, Ross Dep.

12   58:14-59:2.)

13          The few cases cited by Genius do not even make sense in this context because they

14   involved method claims where there was no evidence that anyone anywhere had ever met the

15   claimed method, whereas here the asserted claims are all apparatus claims and neither Genius nor

16   its expert dispute that *every* Apple and Motorola product incorporating Genius's Accused

17   Products meets *every* limitation of the asserted claims.  Genius only disputes the exact percentage

18   containing a Genius lens that made it into the U.S., i.e., an issue of damages, not infringement.

19          **G.     Genius Alleges the GS-8662 v.1 Has Not Been Sold During the Relevant Time.**

20          For the first time, Genius alleges that "Genius's last sale of the 8662 v.1 product occurred

21   months before the '768 Patent issued."  (D.I. 215 at 15.)  One wonders why Genius did not raise

22   this issue sooner.  Regardless, Largan does not wish to waste anyone's time on a product that has

23   not been sold during the relevant time period.  So long as the order is clear that Largan is free to

24   allege infringement should the GS-8662 v.1 ever go back into production and the order

25   distinguishes between the GS-8662 v.1 (which Genius says has not been sold) and the GS-8662

26   v.4 (which Genius admits has been sold during the relevant time periods), Largan does not oppose

27   the Court finding that the GS-8662 v.1 has not been sold during the relevant time period.[23]

28   ───────────────────────
     [23] The one point that Largan does want the Court to note is that Genius's *only* evidence of the GS-

09075-0006/LEGAL124430606.2                    -24-                    OPPOSITION TO MSJ RE
                                                                       NON-INFRINGEMENT
                                                                       CV-13-2502-JD

1

**H.      The Motion Should be Denied Due to Genius Failing to Provide Discovery.**

2

Federal Rule of Civil Procedure 56(d), formerly Rule 56(f), says a court may defer or

3

deny a motion for summary judgment, or issue any other appropriate order, when facts essential

4

to an opposition are missing.  For example, Rule 56(d) is appropriate when the discovery sought

5

is the principal opportunity to contradict declarations or other statements that a district court

6

would otherwise treat as truthful.  *Metro. Life Ins. Co. v. Bancorp Servs., L.L.C.*, 527 F.3d 1330,

7

1338 (Fed. Cir. 2008).  Denial of summary judgment under Rule 56(d) is especially appropriate

8

when the non-movant has not been able to obtain certain discovery or depose the movant's

9

witnesses about it.  *See Baron Servs., Inc. v. Media Weather Innovations LLC*, 717 F.3d 907, 914

10

(Fed. Cir. 2013) (vacating district court's summary judgment ruling where non-movant "had yet

11

to obtain" relevant discovery or depositions about that discovery, and where non-movant had

12

been forced to "resort[] to motions practice" to obtain it).

13

Here, Genius has made multiple assertions regarding the Accused Products it imports and

14

its knowledge regarding third party infringers in the U.S.  These exact issues are addressed by

15

70,000+ pages of shipment records, sales records, and emails which Genius produced after the

16

close of fact discovery.  Making matters worse, despite being ordered to produce improperly

17

withheld documents and provide three make-up depositions, Genius has failed to do so in advance

18

of this opposition.  (Engle Decl. ¶¶ 13-22; D.I. 207; Ex. K, Email fr. Connor to Engle (Dec. 13,

19

2014).)  Lacking this evidence has hampered Largan's efforts to oppose this motion, and

20

accordingly Genius should not be allowed to profit from its discovery misconduct.

21

**V.      CONCLUSION**

22

For the foregoing reasons, Largan respectfully requests that the Court deny Genius's

23

motion for summary judgment of non-infringement and instead grant Largan's motion for

24

summary judgment of infringement.

25

8662 v.1 not being sold during the relevant time period is a single financial spreadsheet that was

26

produced ***after*** the close of fact discovery.  (D.I. 215 at 8 (citing GSEO 00041309); Ex. J, Email
fr. Mullendore (showing production of GSEO 00041309 on November 7, 2014).)  Genius's

27

exclusive reliance on this document directly contradicts Genius's pending motion to strike Brian
Napper's expert report based on his use of a financial spreadsheet supposedly produced after the

28

close of fact discovery.  (D.I. 218.)  Genius has not and cannot explain why it can rely on
untimely information but Largan's expert should not rely on documents produced the same day.

OPPOSITION TO MSJ RE
NON-INFRINGEMENT
CV-13-2502-JD

1

2    DATED:  December 17, 2014                    Respectfully submitted,

3                                                 **PERKINS COIE** LLP

4                                                 By: /s/ *Michael J. Engle*

5                                                      John P. Schnurer, Bar No. 185725
                                                      JSchnurer@perkinscoie.com
6                                                      Joseph P. Reid, Bar No. 211082
                                                      JReid@perkinscoie.com
7                                                      Michael J. Engle, Bar No. 259476
                                                      MEngle@perkinscoie.com
8                                                      John D. Esterhay, Bar No. 282330
                                                      JEsterhay@perkinscoie.com
9                                                      11988 El Camino Real, Suite 350
                                                      San Diego, CA  92130-2594
10                                                     Telephone:  858.720.5700
                                                      Facsimile:  858.720.5799
11
                                                      *Attorneys for Plaintiff*
12                                                     *Largan Precision Co., Ltd.*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28