UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LARGAN PRECISION CO, LTD,

        Plaintiff,

    v.

GENIUS ELECTRONIC OPTICAL CO., LTD.,

        Defendant.

Case No.  13-cv-02502-JD

**ORDER RE MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Re: Dkt. No. 274

On December 16, 2014, Largan moved to compel production of certain documents that Genius withheld from production on the basis of the work product doctrine and attorney-client privilege, despite no attorney having been listed for the documents on Genius's privilege logs.  *See* Dkt. No. 274.  The Court ordered the parties to agree on a list of disputed documents and ordered Genius to lodge those documents with the Court for *in camera* review by the end of the day on December 17, 2014.  *See* Dkt. No. 276.  That was necessary because three long-delayed depositions of Genius employees are set to take place on December 22, 2014.  After reviewing the documents, the Court finds that Genius has abused the assertion of the privilege and doctrine, at times egregiously.  The Court orders Genius to conform to the following directions.

## DISCUSSION

The dispute that the parties initially brought to the Court was restricted to "dozens" of emails from a Genius employee named C.J. Lin, which Genius claimed were protected by the work product doctrine.  *See* Dkt. No. 274 at 2.  The set of disputed documents that Genius ultimately ended up providing to the Court, however, had ballooned to over three hundred documents involving claims of work product and the attorney-client privilege -- far too many for the Court to wade through.  The Court focused review on the 103 documents listed in Largan's

1  letter brief.  *See* Dkt. No. 274 at 2 nn.1-2.  But the Court provides instruction to Genius for re-

2  evaluating its privilege claims, which sweep far too broadly.

3         "The work-product doctrine protects 'from discovery documents and tangible things

4  prepared by a party or his representative in anticipation of litigation'" and "covers documents or

5  the compilation of materials prepared by agents of the attorney in preparation for litigation."

6  *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011) (citations omitted); *see also Hernandez*

7  *v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010) ("The work product doctrine is a 'qualified

8  privilege' that protects 'certain materials prepared by an attorney acting for his client in

9  anticipation of litigation.'").  Genius seeks to claim work product protection for its documents

10  based on three events:  a patent infringement notice letter from Largan in 2011, the assertion of

11  patents by Fujinon against a Genius customer, and the 2013 notice letter Largan sent to Genius.

12  (Genius also claims privilege over some documents relating to the prosecution of Genius patents.)

13  It appears that Genius claims work product over discussions regarding these patent assertions

14  (whether or not any lawyers are involved) starting immediately after each notice letter and

15  continuing months afterwards, even if no litigation ultimately transpired.  For example, document

16  19 from Genius's First Supplemental Redaction Log indicates that the 2011 notice letter was sent

17  on June 24, 2011, but Genius claims work product based on that notice letter over emails from

18  mid-January 2012.

19         But a standard patent infringement notice letter, on its own, generally does not cause its

20  recipient to reasonably anticipate litigation.  The whole purpose of sending a letter, rather than a

21  summons, is to allow for resolution outside the courthouse.  *See Indiana Mills & Mfg., Inc. v.*

22  *Dorel Indus.*, No. 1:04CV01102-LJM-WTL, 2006 WL 1749410, at *4 (S.D. Ind. 2006)

23  (concluding that defendant could not reasonably anticipate litigation after receiving a letter from

24  the patent holder which referred to infringement and the possibility of "other action" absent a

25  prompt response); *Minbea Co. v. Papst*, 355 F. Supp. 2d 526, 528-29 (D.D.C. 2005) (patent

26  "license negotiations are not, by definition, in anticipation of litigation"); *cf. Cache La Poudre*

27  *Feeds, LLC f. Land O'Lakes, Inc.*, 244 F.R.D. 614, 622 (D. Colo. 2007) (receiving

28  communications seeking business remedy insufficient for reasonable anticipation of litigation) .

1    Documents 95 and 93 from Genius's First Supplemental Redaction Log themselves show that

2    Genius believed options other than litigation were real possibilities even after receiving Largan's

3    2013 notice letter.

4        The fact that the discussions over which Genius claims work product protection involved

5    no attorneys is another good sign that they were not prepared in anticipation of litigation.  *See*

6    *United States v. ISS Marine Services, Inc.*, 905 F. Supp. 2d 121, 134 (D.D.C. 2012) (holding that

7    "attorneys are the ones who actually litigate cases, and whether or not a company

8    involves attorneys in creating a document is a telling indication about whether the document was

9    prepared in anticipation of litigation").  Genius cannot claim work product protection for emails

10   and documents between non-lawyers discussing what to do about Largan's or Fujinon's

11   allegations or analyses of those companies' patents simply because they followed claims of patent

12   infringement from those companies.  Invocation of the work product doctrine requires more.  And

13   Genius cannot claim attorney-client privilege for those discussions unless the emails and

14   documents show that they were, in fact, communications between attorney and client for the

15   purpose of obtaining legal advice.  If Genius intends to stand on the privilege, it must provide an

16   amended privilege log to Largan that specifies the identity of the attorney's involved and

17   represents that the communications were for legal advice.

18       In addition, although invention disclosures submitted to an attorney for the purpose of

19   potentially preparing a patent application are privileged, *see In re Spalding Sports Worldwide,*

20   *Inc.*, 203 F.3d 800, 806 (Fed. Cir. 2000), "the prosecution of patents is not generally protected by

21   the work product privilege" *Minbea*, 355 F. Supp. 2d at 529.  Accordingly, Genius emails between

22   non-lawyers relating to its plans for prosecuting certain patents are not necessarily privileged.

23       Genius's arguments further suffer from the fact that it seeks to suppress documents with no

24   conceivable claim to privilege -- like documents 108-112, 114-18, 120-24, which are copies of

25   public Largan patents that followed notice from Largan.  This is at best sloppy work by counsel, or

26   at worst an indicator of a serious misunderstanding of the law of privilege.  Genius needs to ensure

27   that no such obviously non-privileged documents are withheld.

28       The Court orders Genius to produce these documents immediately to Largan:  19-24, 38-

United States District Court
Northern District of California

3

40, 59-64, 66-67, 69-72, 74, 80-88, 91, 93-100, and 104-26 from Genius's First Supplemental

Redaction Log and 869 and 872-875 from Genius's First Supplemental Privilege Log.  Delivery to

Largan must be done in a way that does not impede or slow down the depositions that are

scheduled.  The Court makes no judgment as to documents 41-42, 45-49, 50-58, 65, 73, 101, and

232-233 from Genius's First Supplemental Redaction Log and documents 860-63, 865-68, and

871 from Genius's First Supplemental Privilege Log because they contain large portions in

Chinese whose meaning is not obvious from context.  Genius should review these documents and

the other disputed documents and produce those that are not privileged or work product in

accordance with the Court's guidance.

Although Genius's arguments here were weak, the Court recognizes the effort by the

younger attorneys and legal assistants on Genius's team who put together the documents for *in

camera* review on short notice in a format that allowed easy verification of Genius's privilege

claims.  The organization of the documents and privilege logs was useful to the Court.

**IT IS SO ORDERED**.

Dated: December 21, 2014

_____
JAMES DONATO
United States District Judge

United States District Court
Northern District of California