UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LARGAN PRECISION CO, LTD,

          Plaintiff,

    v.

GENIUS ELECTRONIC OPTICAL CO., LTD.,

          Defendant.

Case No.  13-cv-02502-JD

**ORDER DENYING MOTION FOR STAY OF ORDER GRANTING MOTION TO COMPEL**

Re: Dkt. No. 316

This order resolves a discovery dispute between the parties that has dragged on since October.  Defendant Genius seeks to withhold as attorney work product a number of emails and documents written and exchanged by non-attorneys at a time when no litigation was pending or reasonably threatened.  Genius contends that it is entitled to withhold the documents because they were created after it received one or both of the two letters plaintiff Largan sent it -- one in June 2011, which did not involve the patents-in-suit, and one in April 2013, which did -- accusing Genius of patent infringement and proposing that Genius take a license from Largan.  All of the documents Genius wants to withhold involved no attorneys or legal advice, were not labeled "work product" in any way, and bear no indication on their face that they were prepared for purposes of litigation, as opposed to negotiation.  Many were prepared months after receiving the purportedly relevant notice letter.  The Court has rejected this breathtakingly overbroad assertion of the work product doctrine on several occasions, most recently during a telephonic discovery conference held on December 30, 2014, and ordered Genius to produce all remaining documents withheld on that improper assertion.  This order provides additional explanation of the Court's holding with the goal of ending this dispute now and forever more in this case.

## BACKGROUND

This patent infringement case began on June 4, 2013, when Largan filed a complaint accusing Genius of infringing various patents relating to optical lens design. *See* Dkt. No. 1. The dispute that gave rise to this order erupted shortly before the close of fact discovery in October 2014, when Largan objected that Genius was improperly withholding or redacting documents and emails prepared by two Genius employees who are not attorneys, Arthur Berman and C. J. Lin. *See* Dkt. No. 154-3 at 1-2. Genius agreed to produce the documents created by Berman, *see* Dkt. No. 206, but claimed that the redacted portions of Lin's emails were work product, *see* Dkt. No. 166 at 2. Documents are only protected by the work product doctrine, of course, if they are prepared in anticipation of litigation, *see* Fed. R. Civ. Pro. 26(b)(3); *In re Grand Jury Subpoena*, 357 F.3d 900, 906 (9th Cir. 2003), and the sole basis Genius gave for anticipating litigation was its receipt of a notice letter from Largan on April 2, 2013. It did not provide any facts indicating that litigation was reasonably anticipated and did not allege that an attorney played any role whatsoever in the creation of the documents; in fact, according to Largan, the emails were sent before Genius hired litigation counsel. *See* Dkt. No. 154-3 at 2.

At a telephonic discovery conference on December 5, 2014, the Court ruled that the redacted Lin documents were not protected work product and ordered Genius to produce unredacted copies of the documents. *See* Dkt. No. 207. This ruling should have been the end of the matter but Genius then launched a series of rearguard actions that have unnecessarily dragged out this straightforward discovery issue. Genius's first action was to seek leave for "reconsideration" on December 15, 2014, on the purported ground that the Court had gotten it wrong in the December 5 order. *See* Dkt. No. 267. But Genius also said that it had, in fact, produced the documents that were the subject of the previous discovery dispute, and was filing a motion only because Largan had requested additional documents. *See* Dkt. No. 266 at 1.

In light of pending depositions set for December 18, 2014, involving at least one witness traveling from Taiwan, the Court turned to the request immediately and denied it as moot the same day based on Genius's representation that it had produced the disputed documents. *See* Dkt. No. 269. It advised Largan to file a motion to compel if it sought additional documents. *See id.*

1    Largan did so the next day, accusing Genius of failing to comply with the Court's order.  *See* Dkt.

2    No. 274.

3         To resolve what was fast becoming an unproductive exchange of arguments, the Court

4    ordered Genius to provide the disputed documents for *in camera* review.  *See* Dkt. No. 276.  On

5    December 17, 2014, Genius delivered a box of over 300 disputed documents and a short letter

6    stating that it was withholding the bulk of the documents based on work product because of the

7    2011 and 2013 notice letters.  A number of the emails were in Chinese, and Genius claimed it no

8    longer possessed translations it could provide to the Court.  Over the next several days, the Court

9    reviewed *in camera* over a hundred of the documents, and issued an order on December 21, 2014,

10   granting Largan's motion to compel in part, finding that the vast majority of documents Genius

11   sought to withhold were not prepared in anticipation of litigation.  *See* Dkt. No. 295.  The Court

12   expressly stated in the order that it made no judgment with respect to the emails in Chinese.  *Id.*

13        Only after this order, which directed Genius for a second time to produce the withheld

14   documents, did Genius provide translations of some of the Chinese language emails.  On

15   Christmas Eve, Genius asked again to delay production and submitted translations of two email

16   threads in Chinese claiming that they -- at last -- proved that the withheld documents truly were

17   protected work product.  *See* Dkt. No. 316.  One of the new documents was a set of emails

18   between Elmer Chang, Genius's Chief Technology Officer, and Largan, exchanged after Largan's

19   June 2011 notice letter, while the second was a copy of Largan's April 2013 notice letter and a

20   subsequent email from C. J. Lin, the Manager of Genius's IP Department to the President and

21   Chairman of Genius.  *See id.* at 4, 3.

22        These email strings are the subject of this order and the Court's telephonic ruling on

23   December 30, 2014.  The 2011 email chain begins with a June 24, 2011, email from Chia-Wen

24   Lee of Largan to Denis Mack-Mumford, the Vice President of Sales and Marketing at Genius,

25   stating: "Please find attached a copy of the notice letter for U.S. patent 7,957,079, sent to you by

26   express mail on June 24, 2011."  *See* Dkt. No. 316-3, Ex. B (submitted for *in camera* review).

27   The document shows Mack-Mumford forwarded the email to Chang, and Chang and Lee

28   exchanged emails to schedule in-person licensing discussions.  *See id.*  On July 21, 2011, Lee sent

United States District Court
Northern District of California

3

an email to Chang attaching a copy of a notice letter for another patent -- the '340 patent.  *See id.*

Finally, after the in-person meetings, Chang sent a letter to Lee on August 31, 2011, stating that

Genius had assessed the '079 and '340 patents, and concluded that: (1) its 4P lens complied with a

patent Genius obtained in 2004; (2) the patentability of Largan's patents was dubious; and (3) the

licensing price quoted by Largan was "way higher than the general standard of the industry."  *See*

*id.*  It went on to state that "[i]n order to continue with the negotiation in the name of 'avoiding

litigation,' your company needs to provide a more persuasive argument."  *Id.*  It also suggested

that Genius was still examining whether it would take a license to an additional Largan patent --

the '078 patent:  "As for the 078 case, our company is still holding internal discussions about

whether to license or not. It is expected that the result will not come out until the middle of

September."  *Id.*  The email is followed by a response by Lee from Largan, saying, "I'm sorry that

your company's reply simply repeated the discussions on August 15 without any actual or specific

explanation about the progress of the solution of the patent licensing issue between both parties."

*Id.*  It attempted to rebut Genius's arguments and suggested continuing negotiations with an

attorney.

   The April 2, 2013, notice letter, sent from Lee at Largan to C. J. Lin at Genius, states:

> Dear Mr. Lin:
>
> As you have known, Largan Precision Co., Ltd. ("Largan") has numerous issued and pending patent applications related to lens assemblies and the manufacture thereof. We write to determine if GSEO has interest in licensing Largan's patented technologies.
>
> Among numerous patents in the lens technology owned by Largan, the following chart lists several GSEO lens products incorporated in Apple products corresponding to Largan's patent claims:
>
> [Table of Apple products and Largan patents omitted.]
>
> Enclosed, please find, for GSEO's review, copies of the identified patents and the preliminary claim charts reading the patents onto GSEO's lens products used in Apple's products.  Please note that the evaluation is ongoing and Largan may identify more patents or products to GSEO.
>
> Sincerely,
>
> Chia-Wen Lee

United States District Court
Northern District of California

*See* Dkt. No. 316-2, Ex. B (submitted for *in camera* review).

The Court reviewed the newly-submitted documents, and told the parties at a telephonic discovery conference on December 30, 2014, that its conclusion that the documents were not work product remained unchanged.  This orders follows.

### DISCUSSION

Genius's objection to the Court's production orders is that the total absence of attorney involvement in the creation of the withheld documents is irrelevant to their status as work product and the Court should not have considered it.  The premise of this objection is a straw man.  As the December 21, 2014, order spelled out, many factors defeated application of the work product doctrine here, and the absence of attorney involvement was one of multiple indications that the doctrine does not apply to Genius's documents.  *See* Dkt. No. 295.  To the extent Genius seeks to portray the Court's ruling as based only on the absence of attorney involvement, it distorts the Court's orders and findings.

For that reason -- the fact that the basis of Genius's objection is a sham argument -- further consideration of Genius's objection is not necessary.  But for the sake of clarity, the Court addresses Genius's assertion that the total absence of attorney involvement is always a non-factor that should not be looked at in any way.  Genius is wrong on this point and the Court will explain why.  The Court emphasizes, however, that by addressing this specific point it is not taking the position that lack of attorney involvement alone is enough to rule on a work product assertion.  That limited issue was not, and is not, before the Court and the rulings here were driven by broader facts and considerations.

The starting point of the discussion is Federal Rule of Civil Procedure 26(b)(3), which states in relevant part:

> *Documents and Tangible Things.*  Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).  But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> (i) they are otherwise discoverable under Rule 26(b)(1); and

United States District Court
Northern District of California

5

     (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed. R. Civ. P. 26(b)(3)(A).  The rule extends protection to documents created "by or for" a party or its representative, including non-attorney representatives.  Consistent with Rule 26(b)(3), the Ninth Circuit's test for deciding whether documents qualify for work product protection does not require that an attorney must have personally created the document; it requires that  "(1) they must be 'prepared in anticipation of litigation or for trial,' and (2) they must be prepared 'by or for another party or by or for that other party's representative.'"  *In re Grand Jury Subpoena*, 357 F.3d at 900.

    Consequently, it is certainly true that a document need not be prepared personally by an attorney to qualify as work product.  But attorney involvement -- or the lack thereof -- is far from irrelevant, as Genius suggests.  The fact that the withheld documents do not involve any attorneys is a useful sign, in conjunction with other indicators, that they are not protected work product.

    The well-established case law on the attorney work product doctrine underscores this truth.  The Supreme Court articulated the doctrine in *Hickman v. Taylor*, 329 U.S. 495 (1947), where the Court recognized that "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel."  *Id.* at 510.  Throughout the opinion, the Court emphasizes the deleterious effects that disclosure subject only to the "relevance" standard would have on the *legal* profession:  "Were such materials open to opposing counsel on mere demand … [i]nefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing."  *Id.* at 511.

    In 1970, the Supreme Court adopted Federal Rule of Civil Procedure 26(b)(3), which codified the work product doctrine.  The current Rule, which for this order's purposes does not differ substantively from the 1970 version, states that work product protection potentially extends to documents "by or for [a] party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."  Fed. R. Civ. P. 26(b)(3).  It is clear that the 1970 amendments to Rule 26(b)(3) were intended to reflect cases that had extended work product

protection to preparatory materials that were not prepared by an attorney -- "though not necessarily to the same extent" as for attorney-prepared materials.  *See* Fed. R. Civ. P. 26, advisory committee's note to 1970 amendment.  In the cases that the advisory committee cited as standing for that proposition, however, attorneys were involved in the preparation of the documents.  *See  Alltmont v. United States*, 177 F.2d 971, 976 (3d Cir. 1949) (cited for the proposition that "*Hickman* applied to statements obtained by FBI agents on theory it should apply to 'all statements of prospective witnesses which a party has obtained for his trial counsel's use.'"); *Hanke v. Milwaukee Elec. Ry. & Transport Co.*, 7 F.R.D. 540, 542-43 (E.D. Wis. 1947) (suggesting that work product may apply to signed witness statements obtained by a general claims agent who was also an attorney); *Snyder v. United States*, 20 F.R.D. 7, 8-9 (E.D.N.Y. 1956) (extending work product to documents prepared by investigator for U.S. Attorney); *Burns v. Mulder*, 20 F.R.D. 605, 605-06 (E.D. Pa. 1957) (declining to compel production of statement made by defendant to insurance company "for the specific use of counsel in anticipation of litigation").  The advisory committee thus clearly had in mind cases that involved documents prepared for an attorney, though not by one.  *Cf. United States v. Vonn,* 535 U.S. 55, 64 n.6 (2002) ("In the absence of clear legislative mandate, the Advisory Committee Notes provide a reliable source of insight into the meaning of a Rule, especially when, as here, the rule was enacted precisely as the Advisory Committee proposed.")

Nothing in the rule or the advisory committee's notes suggests that the absence of attorney involvement in the preparation of a document is irrelevant to whether the document is work product.  *Hickman* itself emphasized that underlying the work product doctrine was a policy of protecting an attorney's preparation for litigation, and following the 1970 amendments, the Supreme Court explained that that "'strong public policy' underlying the work-product doctrine … has been substantially incorporated in Federal Rule of Civil Procedure 26(b)(3)."  *Upjohn Co. v. United States*, 449 U.S. 383, 398 (1981); *see also* 8 Charles Alan Wright et al., *Federal Practice and Procedure* § 2023 (3d ed. 2008) ("The adoption of the rule was not intended to cause any drastic change in practice in the federal courts.  Instead, it was designed as a largely accurate codification of the doctrine announced in the *Hickman* case and developed in later cases in the

United States District Court
Northern District of California

1   lower courts.").

2          Five years after *Hickman*, the Supreme Court underscored the relevance of attorney

3   involvement in evaluating work product protection, holding in *United States v. Nobles* (which, as a

4   criminal case, interpreted the judicially-created work product doctrine rather than the text of Rule

5   26(b)(3)) that it was necessary that work product doctrine "protect material prepared by agents for

6   the attorney as well as those prepared by the attorney himself."  422 U.S. 225, 238-39 (1975).  The

7   qualification that the *Hickman*-derived work product doctrine extended to "agents of the attorney"

8   would be superfluous if, as Genius suggests, entitlement to withhold documents as work product

9   were entirely untethered from the need to protect attorney preparation for litigation.

10          Our court of appeals has often emphasized the relevance of attorney involvement in

11  evaluating work product claims in cases since the articulation of the two-part test for work product

12  protection that Genius cites.  *See Republic of Ecuador v. Mackay*, 742 F.3d 860, 867 (9th Cir.

13  2014) ("The work product doctrine is a 'qualified immunity from discovery' that attempts to

14  balance 'the necessity of protecting an attorney's preparation under the adversary system, and the

15  policy of full and open discovery underlying the' rules."); *United States v. Richey*, 632 F.3d 559,

16  567 (9th Cir. 2011) ("The work-product doctrine covers documents or the compilation of materials

17  prepared by agents of the attorney in preparation for litigation."); *Hernandez v. Tanninen*, 604

18  F.3d 1095, 1100 (9th Cir. 2010) ("The work product doctrine is a 'qualified privilege' that protects

19  'certain materials prepared by an attorney acting for his client in anticipation of litigation.'"); *see*

20  *also Pacific Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008) (referring to Fed.

21  R. Civ. P. 26(b)(3) as creating an "attorney work-product privilege").

22          What, then, of the fact that Rule 26(b)(3) and the two-part Ninth Circuit test for asserting

23  work product include no explicit requirement that an attorney be involved?  The answer, in the

24  Court's view, is that the involvement of attorneys should be considered as part of the "anticipation

25  of litigation" prong of the tests.  As another district court has persuasively held:

26                  [A]lthough materials prepared by non-attorneys supervised by
                    attorneys are capable of enjoying work-product protection, the
27                  degree to which counsel is involved in creating the document bears
                    directly on whether the document was prepared in anticipation of
28                  litigation. This relationship can be thought of as a sliding scale,

8

> whereby a party's burden to demonstrate a document's litigious purpose increases -- all other things being equal -- as attorney involvement in creating the document decreases. This simple principle recognizes the reality that attorneys are the ones who actually litigate cases, and whether or not a company involves attorneys in creating a document is a telling indication about whether the document was prepared in anticipation of litigation.

*United States v. ISS Marine Servs., Inc.*, 905 F. Supp. 2d 121, 134-35 & n.8 (D.D.C. 2012) (collecting authorities); *see also Oracle America, Inc. v. Google Inc.*, No. C 10-03561 WHA, 2011 WL 5024457, at *6-7 (N.D. Cal. Oct. 20, 2011) (upholding magistrate judge order that found no work product protection for email in part based on prominence of non-attorneys among those involved in email); *Visa U.S.A., Inc. v. First Data Corp.*, No. C-02-1786JSW(EMC), 2004 WL 1878209, at *7 (N.D. Cal. Aug. 23, 2004) (holding that the Court's conclusion that third-party consultant's analyses were not prepared "because of impending litigation" was "underscored" by the fact that consultant was not retained by counsel).  The absence of attorneys involved in the documents Genius seeks to withhold is thus a strong signal that they were not created because of the prospect of litigation.

As the Court has repeatedly found in this case, there are several reasons for the Court's finding that the documents in question were not created because of the prospect of litigation, in addition to the absence of attorneys.  An important factor is that the documents strongly appear to have been created largely, and almost certainly exclusively, for non-litigation purposes.  In evaluating whether documents that were created for non-litigation purposes as well as litigation-related ones qualify for work product protection, the Ninth Circuit applies the "because of" standard.  *In re Grand Jury Subpoena*, 357 F.3d at 908.  "The 'because of' standard does not consider whether litigation was a primary or secondary motive behind the creation of a document. Rather, it considers the totality of the circumstances and affords protection when it can fairly be said that the 'document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation[.]'" *Id.* (citation omitted).

The emails provided by Genius themselves indicate that after receiving the notice letters, the parties were focused on a business resolution of the dispute, rather than litigation.  With

1    respect to the emails following the 2011 notice letter, an August 31, 2011, email from Genius's

2    Elmer Chang to Largan following face-to-face meetings between the companies indicates that

3    Largan had said that it wanted to "continue with the negotiation in the name of 'avoiding

4    litigation.'"  *See* Dkt. No. 316-3, Ex. B (submitted for *in camera* review).  Similarly, a September

5    6, 2011, email from Chia-Wen Lee of Largan to Genius refers to "facilitat[ing] the progress of the

6    discussion about the patent licensing issue."  *See id.*  The 2013 notice letter from Largan itself

7    stated, "We write to determine if GSEO has interest in licensing Largan's patented technologies."

8    *See* Dkt. No. 316-2, Ex. B (submitted for *in camera* review).  And a subsequent letter from C. J.

9    Lin to Genius's President and Chairman referred to Largan's letter as a "notice about license

10   inquiry" and suggested that "we don't refuse license" and "we just need to learn the license terms"

11   and then "request your decision about whether we should refuse the Largan Precision license

12   inquiry."  *Id.*

13        In this stream of communications, only two passing mentions of possible litigation

14   appears.  In a paragraph at the end of Lin's letter to his company president that begins with

15   "Possible risk" Lin makes the aside that "[t]here may be lawsuits happening."  *Id.*  And in

16   Largan's September 6, 2011, response to Genius, it states that "[w]hen necessary, our company

17   will choose other legal measures to maintain our intellectual property rights."  *See* Dkt. No. 316-3,

18   Ex. B (submitted for *in camera* review).  Such casual and ambiguous statements, without more,

19   cannot be treated as a sign of reasonably anticipated litigation.  *See, e.g., C&C Jewelry Mfg. v.

20   West*, No. C09–01303 JF (HRL), 2010 WL 3943673, at *1 (N.D. Cal. Oct. 7, 2010) ("Although

21   litigation need not have commenced in order for the work product doctrine to apply, 'there must

22   be more than a remote possibility of litigation.'").

23        The fact that Largan still has not filed suit on the patents named in the 2011 notice letter

24   provides further evidence that if Genius in fact prepared the withheld emails because it anticipated

25   litigation -- a claim the Court seriously doubts -- the anticipation of litigation was unreasonable.

26   *See Indiana Mills & Mfg., Inc. v. Dorel Indus.*, No. 1:04CV01102-LJM-WTL, 2006 WL 1749410,

27   at *4 (S.D. Ind. 2006) (holding that a notice letter alone does not create reasonable anticipation of

28   litigation); *Minbea Co. v. Papst*, 355 F. Supp. 2d 526, 528-29 (D.D.C. 2005) (patent "license

United States District Court
Northern District of California

10

1    negotiations are not, by definition, in anticipation of litigation and are not, without more, protected

2    by the work product privilege").  Holding otherwise would essentially give Genius open-ended

3    and unilateral power to suppress documents discussing matters relevant to this case starting from

4    the date of the notice letter and stretching into the indefinite future.  (The possibility is hardly

5    theoretical:  Some of the documents Genius seeks to shield based on the 2011 letter were created

6    nearly seven months afterwards, like document numbers 204-8, 213, 222, and 224 from its First

7    Supplemental Privilege Log.)

**CONCLUSION**

8

9        This issue and Genius's objections have dragged out for too long in this case.  The Court

10   declines to stay its order at docket number 295 directing Genius to produce documents it had

11   withheld as work product, and Genius is ordered to conform to that if it has not done so already.

12       **IT IS SO ORDERED**.

13   Dated:  January 8, 2015

14   _____

15   JAMES DONATO
     United States District Judge

United States District Court
Northern District of California