UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARGAN PRECISION CO, LTD,<br><br>   Plaintiff,<br><br>   v.<br><br>GENIUS ELECTRONIC OPTICAL CO., LTD.,<br><br>   Defendant. | Case No. 13-cv-02502-JD<br><br>**ORDER DENYING MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION**<br><br>Re: Dkt. No. 430 |

This is a patent infringement case in which the Court granted summary judgment of noninfringement with respect to the vast majority of accused products. *See* Dkt. No. 422. Almost a month later, after the Court had already directed entry of final judgment of noninfringement pursuant to Federal Rule of Civil Procedure 54(b), *see* Dkt. No. 429, plaintiff Largan filed a motion for leave to file a motion for reconsideration, *see* Dkt. No. 430. Because Largan has not met the standard for seeking reconsideration of the Court's grant of summary judgment of noninfringement, the Court denies the motion.

**LEGAL STANDARD**

Where the court's ruling has resulted in a final judgment, a motion for reconsideration may be based either on Rule 59(e) (motion to alter or amend judgment) or Rule 60(b) (motion for relief from judgment) of the Federal Rules of Civil Procedure. *Am. Ironworks & Erectors v. N. Am. Constr. Corp.*, 248 F.3d 892, 898-99 (9th Cir. 2001). In either case, this district's local rules only permit a motion for reconsideration if the party bringing the motion showed "reasonable diligence in bringing the motion" and one of the following factors:

> (1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought.

> The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or
>
> (2) The emergence of new material facts or a change of law occurring after the time of such order; or
>
> (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

Civil L.R. 7-9(b).

## DISCUSSION

### I. LEAVE TO MOVE FOR RECONSIDERATION

Largan seeks leave to move for reconsideration on two issues. First, it seeks summary judgment of induced infringement with respect to a small number of samples that defendant Genius shipped into the U.S., for which the Court already granted summary judgment of direct infringement. It also asks the Court to reverse its grant of summary judgment of noninfringement, based in part on documents that it claims were produced after the oppositions and replies to the parties' cross-motions for summary judgment on infringement.

With respect to the first issue, it was not clear from Largan's initial motion for summary judgment of infringement that it sought summary judgment of induced infringement for the lens samples Genius sent to the U.S. even if it prevailed on direct infringement, and neither party briefed the elements of induced infringement with respect to the samples. Because the Court has stayed resolution of all infringement-related issues, including willfulness and injunctive relief, until the parties' settlement conference is complete, the Court will order briefing on the issue of induced infringement of the samples when it lifts the stay.

With respect to the second issue, Largan does not specify which of the Civil Local Rule 7-9 grounds for reconsideration justifies its request -- even if waiting more than four weeks to file a motion for reconsideration constituted "reasonable diligence in bringing the motion," which it does not. Civil L.R. 7-9(b). It cannot be that the discovery Largan obtained following the Court's orders in December 2014 constituted a "material difference in fact" that can justify reconsideration, because that ground requires showing that "the party applying for reconsideration did not know such fact or law at the time of the interlocutory order." Civil L.R. 7-9(b)(1). But

2

Largan admits that Genius produced the discovery by December 30, 2014, three months before the Court's March 31, 2015, summary judgment order. Largan did not bring up the evidence that purportedly justifies reconsideration at the March 18, 2015, hearing, or ask to file supplemental briefing including any of the evidence during this three-month period. Since Largan did know of these facts "at the time of the interlocutory order," they cannot justify reconsideration under Civil Local Rule 7-9(b)(1).[1] Largan's motion also points to no "new material facts or a change of law" that would justify granting reconsideration under Civil Local Rule 7-9(b)(2). Finally, reconsideration is also not warranted due to a "manifest failure by the Court to consider material facts or dispositive legal arguments," as required by Civil Local Rule 7-9(b)(3). As set forth in the following section, the Court does not find the arguments in Largan's proposed motion for reconsideration convincing.

## II.  MOTION FOR RECONSIDERATION

Even if the Court were to allow Largan to file a motion for reconsideration, the motion would have to be denied on the merits.

### A.  Knowledge/Subjective Prong of Willful Blindness

Largan makes two arguments in support of reconsideration of the Court's determination that Genius neither knew that the accused lenses sold into Apple's and Motorola's supply chains arrived in the United States nor "subjectively believe[d] that there is a high probability" that they did, as required to show willful blindness. *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2070 (2011). Only one of these is based on facts that were not presented in its prior briefing, but the Court addresses both for completeness.

Largan's first argument -- the only one based on previously-unbriefed evidence -- is that the fact that Genius investigated whether its lenses met the elements of Largan's U.S. patents after receiving notice of them shows that it suspected that some of its lenses might end up in the United

---

[1] The same is true of the Rule 56(d) statement Largan included in the last page of its opposition to Genius's summary judgment brief. *See* Dkt. No. 289 at 25. This request was long since moot by the time of the Court's summary judgment order, because the Court may dispose of a Rule 56(d) request by "defer[ring] considering the motion" or "allow[ing] time to obtain . . . to take discovery," both of which the Court did before ruling on the parties' cross-motions. Fed. R. Civ. P. 56(d).

3

1  States, where they would infringe those patents. But the Court's order never suggested otherwise:
2  it granted summary judgment of infringement with respect to lenses that Genius sent directly into
3  the United States. In other words, there is no dispute that Genius knew that at least some of its
4  lenses would end up in the U.S. and potentially subject to U.S. patent laws, and it therefore is
5  unsurprising that Genius attempted to investigate whether its products met the limitations of the
6  claims. But the fact that Genius compared its lenses to Largan's U.S. patents is not evidence that
7  it believed that there was a high probability that the lenses it sold abroad into the Apple and
8  Motorola supply chains would end up in the U.S. through operation of those supply chains.

9  Largan's second argument is based on a long chain of inferences that it asserts a jury could
10 draw. It argues as an initial matter that a reasonable jury might accept Largan's interpretation of
11 certain ambiguous documents and conclude that Genius knew that it was the sole supplier for
12 certain Genius lenses during limited time periods. From that, the jury could reasonably infer that
13 Genius might have been able to figure out that the Apple and Motorola products those lenses were
14 meant for were sold in the United States during those time periods, and would therefore probably
15 have contained Genius lenses. (Because these first two inferences are potentially reasonable, the
16 Court denied summary judgment with respect to those lenses during the time periods in question.)
17 Next, Largan argues that because Genius could have figured out that certain lens models during
18 certain time periods might have made it into the United States, Genius would be aware that there
19 was a possibility that all of its other lens models might have entered the United States as well.
20 And finally, in the denouement to this meandering string of inferences, Largan asserts that a jury
21 could reasonably have inferred that because Genius might have been aware of a possibility that all
22 its lens models entered the U.S., Genius would subjectively have believed not just that it was
23 possible -- or even more likely than not -- that other lenses entered the U.S., but that there was a
24 high probability that they did.

25 As a preliminary matter, while the non-movant is entitled on summary judgment to all
26 reasonable inferences from the evidence it has presented, it is not entitled all possible inferences.
27 *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 n.10 (9th Cir. 2002). The Court
28 doubts that a reasonable jury could pile inference upon inference, as Largan urges. *See Nelson v.*

4

*Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir.1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment."); *Houchens v. Am. Home Assurance Co.*, 927 F.2d 163, 167 (4th Cir. 1991) (rejecting attempt to defeat summary judgment by "pil[ing] inferences on inferences").

But even if it could, the chain of inferences Largan argues is flawed. The Court certainly has not held that direct evidence of intent must be shown for each accused product individually in order to allow a claim of induced infringement to go to the jury. But the situation here is different, because summary judgment was denied solely with respect to lenses sold in a specific, abnormal situation: the GS-8615 and GS-8627 lenses sold during certain exceptional periods when Apple and Motorola were not dual-sourcing their lenses, contrary to their normal policy. *See* Leopold Rough Dep. Tr. 107:25-108:10, Dkt. No. 403-4; Napper Expert Report at 22, Dkt. No. 210-5; Mack-Mumford Dep. Tr. 109:15-110:6, Dkt. No. 222-11; Whitehead Dep. Tr. 318:20-25, Dkt. No. 222-6. The fact that an accused infringer may know that lenses sold under certain unusual circumstances eventually enter the U.S. does not bear on whether other lenses, sold under distinctly different circumstances, do so as well. Just as the fact that Genius imports some lenses into the U.S. does not make it any more likely that the lenses it sells abroad make it into the U.S., the fact that under certain exceptional circumstances a lens design may be sole-sourced to Genius does not necessarily indicate whether Genius lenses make it into the U.S. (or whether Genius believes it's highly likely they do so) in the normal case when Apple's and Motorola's standard dual-sourcing policy is in effect.

The inference from the exceptional case to the normal only holds given additional assumptions about the choices made by the module and system integrators in Apple and Motorola supply chains: for example, that the integrators treat all lenses from a given manufacturer the same, or that lenses are sent around the world randomly, or that the integrators ensure that all products destined for the U.S. include at least some products from each lens manufacturer. Largan did not have to show these assumptions through direct evidence: for instance, it could have taken discovery of the module and system integrators, or presented a witness with knowledge of supply chains in the optical lens business who could declare that module and system integrators generally

5

distribute lenses from all manufacturers around the world randomly.  Such evidence could well have permitted the inference that Genius was able to deduce that it was highly likely that each of its lens models end up in the U.S.  But Largan presented zero evidence about how any optical lens supply chains, much less Apple's and Motorola's, actually work.  There is no indication that it even sought discovery from the system and module integrators.  Instead, it asks the Court to take facts necessary to its argument on faith.  The Court declines to do so.

### B. Deliberate Action to Avoid Learning of Infringement

Largan also fails to show that Genius took deliberate action to avoid learning that the products it sold into Apple's and Motorola's supply chains reached the United States.  Contrary to Largan's claims, the Court did not suggest that willful blindness requires direct evidence that the accused infringer made a deliberate decision to avoid learning about infringement.  But there must be *some* evidence showing that such a deliberate decision was made.  In *Global-Tech*, for example, the accused infringer's CEO affirmatively asked an attorney for a right-to-use opinion while withholding perhaps the most probative piece of information the attorney would need:  the fact that his company copied the design of the accused product from the patentee.  *See Global-Tech*, 131 S. Ct. at 2071.  The Supreme Court made the common-sense observation that the only conceivable reason to have made such an obviously compromised request would have been to avoid an unfavorable response from the lawyer.[2]  *See id.*  Similarly, in *Info Hold, Inc. v. Muzak LLC*, there was a dispute of material fact regarding the "deliberate action" prong because the accused infringer's general counsel told the patentee that he would look into whether their products infringed the asserted patent, but did not do so.  *Info Hold, Inc. v. Muzak LLC*, No. 2014-1167, 2015 WL 1865685, at *8 (Fed. Cir. Apr. 24, 2015).  His having committed to investigate further and then reneging on his promise, despite a reminder from the patentee, made it possible to

---

[2] The Supreme Court also pointed out that willful blindness could be inferred from the fact that the accused infringer copied an overseas model of the patentee's product, since its CEO was the named inventor of numerous patents and "was well aware that products made for overseas markets usually do not bear U.S. patent markings." *Global-Tech*, 131 S. Ct. at 2071.  By contrast, Genius had no in-house or outside counsel during most of the pre-suit period.  Assuming that it would naturally investigate to what extent its products entered the U.S. when it was accused of infringement is therefore less reasonable.

6

infer that he might have deliberately chosen not to do so to avoid finding out that the products infringed.

By contrast, Largan attempts to transform the "deliberate actions to avoid learning of infringement" standard into an affirmative duty to investigate all potential bases for infringement after receiving notice, no matter how difficult it may be to do so.  Genius (unlike the accused infringers in *Global-Tech* and *Info Hold*) did not affirmatively enter into any obligation to find out whether its products infringed simply because it compared some of its products to the claims of some of Largan's patents.  Not having taken it upon itself to make such an investigation, the fact that it did not do so is not evidence that it took deliberate actions to avoid learning the answer.  *See Vasudevan Software, Inc. v. TIBCO Software Inc.*, No. C 11-06638 RS, 2012 WL 1831543, at *5-6 (N.D. Cal. May 18, 2012) (holding that awareness of parent and application of asserted patent insufficient to show willful blindness as to asserted patent itself because patentee "neglected to identify any affirmative actions taken by [defendant] to avoid gaining actual knowledge of the [asserted patent]").

Moreover, to find out whether the lenses it sold were incorporated into U.S.-sold products, Genius would likely have had to buy up and disassemble Apple and Motorola phones and tablets in the U.S.  It would not have been able to just ask the downstream sellers:  there is no evidence that Apple and Motorola would have known or told Genius whether its lenses entered the U.S., and indeed, the parties agreed that the evidence showed Apple did not track this information.  Joint Pretrial Statement at 6:18-19, Dkt. No. 403-11; Leopold Decl. ¶ 7, Dkt. No. 386-1.  And contrary to the suggestions in Largan's motion for reconsideration, there is no evidence that Genius "avoided" asking Apple whether its lenses entered the United States.  Rather, the only evidence in the record was that Genius's employees did not even discuss internally where its lenses that were incorporated into Apple products ended up.  Whitehead Dep. Tr. 217:15-218:218:16.  Allowing Largan to pursue an induced infringement theory for failing to investigate further under these circumstances would render the "deliberate action to avoid learning of infringement" standard indistinguishable from the now-superseded "deliberate indifference to a known risk" standard, or even pure recklessness.  *Global-Tech*, 131 S. Ct. at 2070-71.

## CONCLUSION

For the reasons given above, Largan's motion for leave to move for reconsideration is denied.

**IT IS SO ORDERED.**

Dated: May 4, 2015

_____
JAMES DONATO
United States District Judge